**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE TIMOTHY C. STANCEU, JUDGE**

| | |
|---|---|
| **CELIK HALAT VE TEL SANAYI A.S.**<br><br>                    **Plaintiff,**<br><br>  **v.**<br><br>**UNITED STATES,**<br><br>                    **Defendant.**<br><br>**and**<br><br>**INSTEEL WIRE PRODUCTS COMPANY, SUMIDEN WIRE PRODUCTS CORPORATION, AND WIRE MESH CORP.**<br><br>                    **Defendant-Intervenors.** | **Court No. 21-00050**<br><br>**PUBLIC MEMORANDUM ATTACHED** |

<u>**PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**</u>

Pursuant to Rule 56.2 of the United States Court of International Trade, and for the reasons set forth in the accompanying memorandum in support of Plaintiff's Motion for Judgment on the Agency Record, Plaintiff Celik Halat ve Tel Sanayi A.S. hereby submits its motion for judgment on the agency record with regard to certain aspects of the final determination of the United States Department of Commerce ("Commerce") in the final determination and order. *Prestressed Concrete Steel Wire Strand From the Republic of Turkey; Final Affirmative Countervailing Duty Determination and Final Negative Critical Circumstances Determination*, 85 Fed. Reg. 80005 (Dep't Commerce Dec. 11, 2020) ("Final Determination") and accompanying Issues and Decision Memorandum ("Decision Memo");

*Prestressed Concrete Steel Wire Strand From the Republic of Turkey: Countervailing Duty Order*, 86 Fed. Reg. 7990 (Dep't Commerce Feb. 3, 2021).

Plaintiff respectfully requests that this Court remand the case to Commerce with instructions to reconsider aspects of its determination in accordance with this Court's decision.

Respectfully submitted,

/s/ Irene H. Chen_____

Irene H. Chen
**Chen Law Group LLC**
200-a Monroe Street, Suite 100
Rockville, MD 20850
(301) 760-7393
irene@chenlawgroup.com

Dated:  May 28, 2021                         Counsel to Plaintiff

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY C. STANCEU, JUDGE

| | |
|---|---|
| **CELIK HALAT VE TEL SANAYI A.S.**<br><br>           **Plaintiff,**<br><br>   v.<br><br>**UNITED STATES,**<br><br>          **Defendant.**<br><br>**and**<br><br>**INSTEEL WIRE PRODUCTS COMPANY, SUMIDEN WIRE PRODUCTS CORPORATION, AND WIRE MESH CORP.**<br><br>     **Defendant-Intervenors.** | **Court No. 21-00050**<br><br>**PUBLIC VERSION**<br>(confidential information deleted on pp. 2-3, 8-12, 16, 32-34) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Irene H. Chen
CHEN LAW GROUP, LLC.
200-A Monroe St., Ste. 100
Rockville, MD 20850
Tel (301) 760-7393

May 28, 2021                    *Counsel to Plaintiff Celik Halat ve Tel Sanayi A.S.*

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

I.    INTRODUCTION ...................................................................................... 1

II.   SUMMARY OF THE ARGUMENT ......................................................... 1

III.  JURISDICTION ........................................................................................ 5

IV.   PLAINTIFF'S RULE 56.2 STATEMENT ................................................. 6

    A.    Administrative Determination to be Reviewed ................................... 6

    B.    Issues Presented for Review ................................................................ 6

V.    STATEMENT OF FACTS ........................................................................ 6

VI.   STANDARD OF REVIEW ...................................................................... 13

VII.  ARGUMENT ........................................................................................... 15

    A.    Commerce's Imposition of A Bright-Line Rule Rejecting Celik Halat's Entire Section III Response Is A Severe Abuse of Discretion ................................ 15

        1.    Controlling Judicial Precedent Precludes Commerce from Applying a Bright-Line Rule under the Countervailing Duty Statute .................................. 17

        2.    Acceptance of Celik Halat's Sections III Questionnaire Response Would Have Imposed No Burden Whatsoever on Commerce's Conduct of the Investigation ............ 22

        3.    Acceptance of the Section III Questionnaire Response Would Have Resulted in the Calculation of an Accurate CVD Margin for Celik Halat ................................ 24

    B.    Commerce Failed to Provide Celik Halat The Opportunity to Remedy The Deficiency Under 19 U.S.C. § 1677m(D). ........................................................ 25

    C.    Commerce's Stated Rationale Is Unreasonable ............................................. 27

        1.    Commerce's Adverse Facts Available Finding is Unsupported by Substantial Evidence ................................................................................. 28

        2.    Commerce's Conclusion That Counsel's Medical Emergency Did Not Constitute "Extraordinary Circumstances" Is An Abuse Of Discretion ............................. 31

        3.    Commerce Failed to Sufficiently Explain Its Deviation From Its Practice of Granting Retroactive Extensions In Similar Or Less Severe Circumstances ....................... 34

        4.    Commerce's Inconsistent Application of The *Extension Of Time Limits* Final Rule Extends to Petitioners' Extension Requests ....................................... 38

        5.    Commerce's Attempt to Distinguish Past Judicial Decisions Is Unavailing ............ 42

        6.    Commerce Erred in Failing to Address Celik Halat's Argument That It Can Use The Government Of Turkey's Response As Facts Available Information ................... 44

    VIII. CONCLUSION .......................................................................................... 45

# TABLE OF AUTHORITIES

## CASES

*Artisan Mfg. Corp. v. United States*, 978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014) ... 20, 21, 23, 42, 43

*Bosun Tools Co. v. United States*, 405 F. Supp. 3d 1359 (Ct. Int'l Trade 2019)…........…....22, 33

*China Kingdom Imp. & Exp. Co. v. United States*, 31 C.I.T. 1329, 507 F. Supp. 2d 1337 (Ct' Int'l Trade 2007) ......................................................................................................... 26

*China Steel Corp. v. United States*, 264 F. Supp. 2d 1339 (Ct. Int'l Trade 2003) ...................... 25

*Chisholm v. Def. Logistics Agency*, 656 F.2d 42 (3d Cir. 1981) ........................................... 39, 40

*DAK Americas LLC v. United States*, 456 F. Supp. 3d 1340 (Ct. Int'l Trade 2020)................... 39

*Dongtai Peak Honey Indus. Co. v. United States*, 971 F. Supp. 2d 1234 (Ct. Intl. Trade 2014) . 15

*Dupont Teijin Films v. United States*, 931 F. Supp. 2d 1297 (August 21, 2013) .................. 16, 19

*Echjay Forgings Private Ltd. v. United States*, 475 F. Supp. 3d 1350 (Ct. Int'l Trade 2020)...... 40

*Fine Furniture (Shanghai) Ltd. v. United States*, 865 F. Supp. 2d 1254 (Ct. Int'l Trade 2012) .. 19

*Foshan Shunde Yongjian Housewares & Hardwares Co. v. United States*, 896 F. Supp. 2d 1313 (Ct. Int'l Trade 2013) ..................................................................................................... 14, 37

*Green Country Mobilephone, Inc. v. FCC*, 765 F.2d 235, 246 U.S. App. D.C. 366 (D.C. Cir. 1985) ............................................................................................................................. 37

*Grobest & I-Mei Industrial (Vietnam) Co., Ltd. v. United States*, 815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012)...................................................................................... 18, 21, 23, 43

*Hontex Enters. v. United States*, 27 Ct. Int'l Trade 272, 248 F. Supp. 2d 1323 (Ct. Int'l Trade 2003) ............................................................................................................................. 14

*Hyundai Heavy Indus. Co., Ltd. v. United States,* 393 F. Supp. 3d 1293 (Ct. Int'l Trade 2019).. 30

*Hyundai Steel Co. v. United States*, No. 19-00099, 2021 Ct. Intl. Trade LEXIS 60, at *3 n.3 (Ct. Int'l Trade Apr. 27, 2021) ........................................................................................... 29

*Jiangsu Jiasheng Photovoltaic Tech. Co., Ltd. v. United States*, 28 F. Supp. 3d 1317 (Ct. Int'l Trade 2014)................................................................................................................. 15

*Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983)..................................................................................... 14, 37

*Nakornthai Strip Mill Pub. Co. v. United States*, 32 CIT 1272, 587 F. Supp. 2d 1303 (2008).... 37

*Nippon Steel & Sumitomo Metal Corp. v. United States*, 483 F. Supp. 3d 1214 (Ct. Int'l Trade 2020) ............................................................................................................................. 29

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003)....................................... 30

*Nippon Steel Corp. v. United States*, 458 F.3d 1345 (Fed. Cir. 2006)....................................... 14

*NMB Sing. Ltd. v. United States*, 557 F.3d 1316 (Fed. Cir. 2009) ........................................... 14

*NTN Bearing Corp. v. United States*, 74 F. 3d 1204 (Fed. Cir. 1995)...................... 16, 18, 19, 20

*Pro-Team Coil Nail Enter. v. United States*, 419 F. Supp. 3d 1319 (Ct. Int'l Trade 2019) ... 19, 20, 24

*Save Domestic Oil, Inc. v. United States*, 357 F.3d 1278 (Fed. Cir. 2004) ................................ 14

*Shelter Forest Int'l Acquisition, Inc. v. United States*, 2021 Ct. Int'l Trade Lexis at *23, 497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021) ............................................................... 18, 26

*SKF USA Inc. v. United States*, 263 F.3d 1369 (Fed. Cir. 2001)........................................... 15, 40

*Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 124 (1944) .............................. 39
*Star Fruits S.N.C. v. United States*, 393 F.3d 1277 (Fed. Cir. 2005)........................................... 15
*Sterling Fed. Sys., Inc. v. Goldin*, 16 F.3d 1177 (Fed. Cir. 1994) ............................................... 16
*Timken U.S. Corp. v. United States*, 434 F.3d 1345 (Fed. Cir. 2006) ........................................ 20
*Transactive Corp. v. United States*, 91 F.3d 232, 319 U.S. App. D.C. 428 (D.C. Cir. 1996) ...... 37
*U.K. Carbon & Graphite Co. v. United States*, 931 F. Supp. 2d 1322 (Ct. Int'l Trade 2013)...... 14
*U.S. Magnesium LLC v. United States*, 895 F. Supp. 2d 1319 (Ct. Int'l Trade 2013)................. 19
*Unisor Sacilor v. United States*, 872 F. Supp. 1000 (Ct., Int'l Trade 1994)................................ 19
*WelCom Prods., Inc. v. United States*, 36 CIT 1366, 865 F. Supp. 2d 1340 (2012) ................... 15
*Wheatland Tube Co. v. United States*, 161 F.3d 1365 (Fed. Cir. 1998) ...................................... 14
*Wuhu Fenglian Co., Ltd. v. United States*, 836 F. Supp. 2d 1398 (Ct. Int'l Trade 2012)  16, 19, 20
*Xiping Opeck Food Co., Ltd. v. United States*, 34 F. Supp. 3d 1331 (Ct. Int'l Trade 2014).. 14, 15


## STATUTES

19 U.S.C. § 1516a(a)(2)(B)(iii)..................................................................................................... 5
19 U.S.C. § 1516a(b)(1)(B) ........................................................................................................ 13
19 U.S.C. § 1671d(a)(1)............................................................................................................. 16
19 U.S.C. § 1677e .............................................................................................. 25, 26, 28, 29, 44
19 U.S.C. § 1677f(i)(3)(A) ......................................................................................................... 14
19 U.S.C. § 1677m(d)........................................................................................................... 25, 26
28 U.S.C. § 1581(c) ..................................................................................................................... 5


## ADMINISTRATIVE DECISIONS

*Extension of Time Limits*, 78 Fed. Reg. 57790 (Sept. 20, 2013) ................................ 35, 40, 46, 47
*Federal Register* on December 11, 2020. *Prestressed Concrete Steel Wire Strand From the
    Republic of Turkey; Final Affirmative Countervailing Duty Determination and Final Negative
    Critical Circumstances Determination*, 85 Fed. Reg. 80005 (Dep't Commerce Dec. 11, 2020)6
*Prestressed Concrete Steel Wire From the Republic of Turkey: Preliminary Affirmative
    Countervailing Duty Determination, Preliminary Affirmative Critical Circumstances
    Determination, In Part*, 85 Fed. Reg. 59287 (Dep't Commerce Sept. 21, 2020)............... 12, 13
*Prestressed Concrete Steel Wire Strand From the Republic of Turkey: Countervailing Duty
    Order*, 86 Fed. Reg. 7990 (Dep't Commerce Feb. 3, 2021) ................................................. 6, 14
*Prestressed Concrete Steel Wire Strand From the Republic of Turkey: Initiation of
    Countervailing Duty Investigation*, 85 Fed. Reg. 28610 (May 13, 2020) ................................. 7


## ADMINISTRATIVE REGULATIONS

19 C.F.R. § 351.302 ...................................................................................... 11, 31, 34, 35
19 C.F.R. § 351.301(b) .......................................................................................................... 17

PUBLIC VERSION

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

## I.     INTRODUCTION

Plaintiff Celik Halat Ve Tel Sanayi A.S. ("Celik Halat") initiated this appeal to review the final determination issued by the Department of Commerce ("Commerce") in the countervailing duty investigation of prestressed concrete steel wire strand from the Republic of Turkey. This appeal challenges Commerce's decision to apply total adverse facts available to Celik Halat on the basis that it untimely filed the final BPI and public versions of its Section III questionnaire response 87 minutes after the 5:00 p.m. ET filing deadline on the response due date.[1]

## II.     SUMMARY OF THE ARGUMENT

While cases involving adverse facts available are a frequent occurrence before the Court, Commerce's actions and the basis for its application of adverse facts available against Celik Halat for one minor compliance error have set an astonishing new level of overreach by the agency and abuse of its discretion. Celik Halat's late filing of its public and final BPI questionnaire response, 87 minutes after the 5:00 p.m. E.T. deadline, was a minor error that did not warrant the grossly disproportionate application of adverse facts available by Commerce. Further, the record evidence, which Commerce failed to address, demonstrates that the late filing was due to counsel's medical emergency and compelled a retroactive extension under Commerce's own regulations and its statutory obligations. Commerce severely abused its discretion under these facts.

---

1  Public documents in the administrative record are designated as "PR." "CR" refers to confidential documents in the administrative record.

The pertinent facts are as follows:

- Celik Halat's Section III questionnaire response was due by 5:00 p.m. ET on August 7, 2021.

- On July 29, 2020, Celik Halat's counsel was admitted to the hospital for emergency surgery [



  ].

- On August 1, 2020, Celik Halat's counsel was released from the hospital. Due to [

  ], counsel was [


  ].

- On August 4, 2020, citing counsel's emergency surgery, Celik Halat filed an extension request requesting additional time to file its Sections III response, but it was denied by Commerce that same day.

- Counsel returned to [

  ].

- However, [

  ], counsel's activities were limited and work had to be condensed into one or two sessions of one hour each day.

- Celik Halat's counsel, still [

  ], timely filed the BPI version of the Section III response by 5:00 p.m. ET on the due date of August 7, 2020. However,

2

because it was not possible to prepare the public version of the response by
August 7, 2020, counsel designated the filing as a "one-day lag" BPI version, to
have additional time to prepare the final BPI and public versions over the
weekend.

- Counsel managed to work on finalizing the final BPI and public submission,
  spread out over several short work sessions, [

  ].

- The [



  ].

- The final BPI and public versions of the Section III questionnaire response were
  due the following business day, i.e., August 10, 2020.

- To ensure a timely filing of the final BPI and public versions, counsel set two
  alarms to alert him and if necessary, awaken him at 4:00 p.m. in order to file the
  submissions before the 5:00 p.m. deadline on August 10, 2020.

- When the alarms sounded at 4:00 p.m., counsel who was asleep at the time,
  awoke to file the documents via ACCESS. Counsel confirmed receipt of the
  ACCESS notice evidencing a successful submission received at 4:27 p.m.

- However, because of the [

  ], counsel, who was recuperating at his home in Salt Lake
  City, Utah, Mountain Time (MT), inadvertently set his alarms at 4:00 p.m. MT,
  which was 6:00 p.m., Eastern Time (ET).

3

- What appeared to be a timely filing at 4:27 p.m. in Salt Lake City, Utah, was a late filing at 6:27 p.m. ET in Washington, D.C., 87 minutes after the 5:00 p.m. ET deadline.

- On August 19, 2020, Commerce rejected and removed from the record Celik Halat's entire Section III questionnaire response, including the timely filed August 7, 2020 one-day lag BPI version.

- On August 20, 2020, Celik Halat filed a Request for Reconsideration, explaining the reasons for the late filing, i.e., counsel's emergency surgery and post-surgery recuperation. Commerce denied Celik Halat's request.

- In its Memorandum rejecting Celik Halat's request for reconsideration, Commerce cited counsel's wrong setting of his alarm clock as the cause for the late filing, not counsel's medical emergency or medical situation.

Based on an 87-minute filing delay, Commerce rejected Celik Halat's entire Section III response. Commerce then assigned Celik Halat total adverse facts available even though (1) Commerce had the complete set of Celik Halat's filings in hand on the due date, and only 87 minutes after business hours; (2) Celik Halat's one-day lag BPI Section III response was timely filed on August 7, 2020; (3) Commerce had the same number of days, (i.e., 36 days) until the issuance of the Preliminary Determination and another 85 days until the issuance of the Final Determination. No burden would have been suffered by Commerce had it accepted the filings. It is also undisputed that using Celik Halat's responses instead of AFA would have resulted in more accurate margins. Commerce applied an impermissible bright line rule in rejecting the Section III filing in its entirety, without evaluating the particular circumstances. Commerce also defied its own practice of granting post-deadline extensions for "extraordinary circumstances"

such as medical emergencies. Commerce's attribution of the late filing to the wrong setting of the alarm clock makes no sense, given the record evidence regarding counsel's emergency surgery and post-surgery physical effects. Commerce's actions are an abuse of discretion.

Commerce also violated the statute by failing to provide Celik Halat an opportunity to remedy or correct any submission deemed deficient. In imposing total adverse facts available, Commerce improperly equated Celik Halat's 87-minute delay with a failure to cooperate to the best of its ability. Commerce did not support its conclusion that Celik Halat failed to put forth a maximum effort in the investigation. Commerce's imposition of adverse facts available was grossly disproportionate and unreasonable, given the minor filing delay and counsel's medical emergency.

Commerce's unlawful actions have provided Petitioners an unjust windfall and caused Celik Halat significant harm. Accordingly, the Court should remand this case back to Commerce with instructions to reopen the CVD investigation, accept for filing and place on the record Celik Halat's Section III questionnaire response and calculate a CVD rate for Celik Halat.

Celik Halat respectfully requests an expedited disposition of its challenge to Commerce's *Final Determination*. Every day that passes, Celik Halat is laboring under a punitive and grossly inaccurate cash deposit rate that has materially affected its ability to remain in the U.S. market as a supplier.

### III.    JURISDICTION

This action is brought pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii). This action challenges certain determinations relevant to Commerce's final determination in the countervailing duty investigation of prestressed concrete steel wire strand from the Republic of Turkey. This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c).

## IV.   PLAINTIFF'S RULE 56.2 STATEMENT

### A.  Administrative Determination to be Reviewed

Plaintiff Celik Halat contests the final determination of the United States Department of Commerce ("Commerce") in the countervailing duty investigation, published in the *Federal Register* on December 11, 2020. *Prestressed Concrete Steel Wire Strand From the Republic of Turkey; Final Affirmative Countervailing Duty Determination and Final Negative Critical Circumstances Determination*, 85 Fed. Reg. 80005 (Dep't Commerce Dec. 11, 2020) ("Final Determination") (PR 376) and accompanying Issues and Decision Memorandum ("Decision Memo") (PR 370-372 / CR 256 - 258). Commerce's countervailing duty order was published in the *Federal Register* on February 3, 2021. *See Prestressed Concrete Steel Wire Strand From the Republic of Turkey: Countervailing Duty Order*, 86 Fed. Reg. 7990 (Dep't Commerce Feb. 3, 2021) (PR 381).

### B.  Issues Presented for Review

1. **Issue 1:**   Whether Commerce's application of a bright-line rule to reject Celik Halat's Section III questionnaire response based on an 87 minute filing delay, regardless of any particular circumstances was arbitrary and capricious, constituted an abuse of discretion not in accordance with law, and was unsupported by substantial evidence.

2. **Issue 2:**   Whether Commerce's decision to apply adverse facts available based on Celik Halat's submission of the final BPI and public version of its Section III questionnaire response 87 minutes after the filing deadline was an abuse of discretion, unsupported by substantial evidence and not in accordance with law.

### V.   STATEMENT OF FACTS

This appeal arises from the countervailing duty ("CVD") investigation of prestressed concrete steel wire strand ("PC Strand") from the Republic of Turkey. *Final Determination* (PR 376).

On April 16, 2020, Commerce received a countervailing duty petition concerning imports of prestressed concrete steel wire ("PC strand") from the Republic of Turkey, filed by Insteel Wire Products ("Insteel"), Sumiden Wire Products Corporation ("Sumiden"), and Wire Mesh Corp. ("WMC") ("Petitioners"). In response to the petition, Commerce initiated a countervailing duty investigation of prestressed concrete steel wire strand ("PC Strand") from the Republic of Turkey and published notice of the initiation in the *Federal Register* on May 6, 2020. *See Prestressed Concrete Steel Wire Strand From the Republic of Turkey: Initiation of Countervailing Duty Investigation*, 85 Fed. Reg. 28610 (May 13, 2020) (the "Initiation Notice") (PR 28).

On June 9, 2020, Commerce issued the initial CVD questionnaire. *Commerce's Countervailing Duty Questionnaire to Investigation of Prestressed Concrete Steel Wire from the Republic of Turkey* (June 9, 2020) (PR 49). On June 25, 2020, Commerce selected Plaintiff Celik Halat ve Tel San A.S. ("Celik Halat") as a mandatory respondent. *See Commerce's Memorandum Re:* Countervailing Duty Investigation of Prestressed Concrete Steel Wire Strand from the Republic of Turkey: Respondent Selection (June 25, 2020) (PR 58). The next day, Commerce issued a letter to the Government of Turkey regarding its revised selection of Celik Halat as a mandatory respondent and requiring Celik Halat to respond to the initial CVD questionnaire by the listed deadlines. *See Commerce's Letter: "Investigation of Prestressed Concrete Steel Wire from the Republic of Turkey: Countervailing Duty Respondent Selection."* (June 26, 2020) (PR 60). The deadline set forth for responses to Sections II and III of the Questionnaire was 5:00 p.m. ET ("Eastern Time") on August 3, 2020. *Id.*

On July 24, 2020, Celik Halat timely filed the response to the "affiliated companies" section of Commerce's questionnaire. *Celik Halat's Response to Affiliation Questionnaire* (July

24, 2020) (PR 87). On July 27, 2020, Celik Halat submitted a letter to Commerce requesting an

extension of the Section III CVD questionnaire deadline by three weeks, describing the delays in

compiling the response, due to the Covid-19 lockdown, the difficulties in retrieving documents

due to the office closure, and inadequate remote working arrangements for staff. *See Letter from*

*Global Consulting Economic & Legal Consulting Services LLC to Commerce* (July 27, 2020)

(PR 88). On the same day, Commerce partially granted Celik Halat's extension request,

extending the deadline for Celik Halat to file its response to the Section III questionnaire by four

days, from August 3, 2020 to August 7, 2020, at 5 p.m. ET. *See Letter from Commerce to Global*

*Consulting Economic & Legal Consulting Services: Pertaining to Celik Halat Grants Partial*

*Extension* (July 27, 2020) (PR 121).

   On July 29, 2020, Celik Halat's counsel in the underlying investigation ("Counsel") was

admitted to the hospital for emergency surgery [




                                                                        ]. *Celik Halat*

*Request for Reconsideration of Rejection of CVD Response dated August 20, 2020*

("Reconsideration Request") at 2 (PR 202/CR 127). After Counsel was discharged from the

hospital on August 1, 2020, he was prescribed a post-surgery treatment plan of [

]. *Reconsideration Request* at 2-3, n.1, and Confidential Health Records Attachment (PR 202/CR 127).

On or about August 4, 2020, due in part to Counsel's medical situation, Celik Halat filed a Request for a one-week extension of the filing deadline from August 7, 2020 to August 14, 2020 to respond to Section III of Commerce's CVD questionnaire. *See Celik Halat Letter to Commerce: Extension Request of Celik Halat ve Tel Sanayi A.S. ("Celik Halat") for Section III Response in the CVD Investigation* (August 4, 2020) (PR 176). However, on the same day (i.e., August 4, 2020) (PR 176), Commerce denied Celik Halat's extension request. *See Letter from Commerce: Investigation of Prestressed Concrete Steel Wire from the Republic of Turkey: Denial of Extension for Initial Questionnaire Response* (August 4, 2020) (PR 177). Despite a difficult recovery period, [                                                  ], Counsel continued to work on Celik Halat's questionnaire responses to meet Commerce's deadlines. *Reconsideration Request* at 3 (CR 127/PR 202). Counsel managed to work on finalizing the final BPI and public submission, spread out over several short work sessions, [

                                                  ].
*Id.* at 3 (CR 127/ PR 202). The [


                                                  ]. *Id.* at 3 (CR 127/ PR 202).

On August 7, 2020, Celik Halat timely filed the one-day lag BPI version of its response to the Section III CVD Questionnaire. Per Commerce's regulations, the final BPI and Public versions of the Section III CVD Questionnaire Response, which contain only bracketing changes

and redactions of BPI, respectively, were due one business day later on Monday, August 10, 2020. *Id.* at 3 (CR 127/PR 202).

On the day of the August 10, 2020 filing, [

], Counsel took special care to set two alarms to awaken in time by 4:00 p.m. to make the filing on time by the 5:00 p.m. filing deadline. *Id.* at 4 (CR 127/ PR 202). Counsel in fact did wake up and file the final BPI and public versions of Celik Halat's CVD questionnaire response by 5:00 p.m. The date stamped copy of the ACCESS email to counsel showed that the filing was completed at 4:27 p.m. *Id.* at 4-5 (CR 127/PR 202).

On around August 19, 2020, when routinely checking the IA ACCESS docket for updates, Counsel discovered that Commerce had rejected the final BPI and public versions of Celik Halat's Section III questionnaire response filed on August 10, 2020 (PR 190), and had completely removed the timely filed August 7, 2020 BPI one day lag version of Celik Halat's Section III questionnaire response from the record. *Reconsideration Request* at 2 (CR 127/ PR 202).

Counsel immediately contacted Commerce's analyst and learned that the August 10, 2020 filings were late because the filing was actually submitted at 6:27 p.m. ET, not 4:27 p.m. ET, as counsel had thought. *Reconsideration Request* at 2 (CR 127/ PR 202). Counsel was at his home in Salt Lake City, Utah when he filed the August 10, 2020 questionnaire responses. Due to the effects of the [                                    ], Counsel overlooked the fact that Mountain Time was two hours behind Eastern Time. *Reconsideration Request* at 4 (CR 127/ PR 202). On August 20, 2020, one day after Counsel discovered the late filing issue, Counsel immediately filed a Request for Reconsideration of the Department's Rejection of the CVD Response of Celik Halat. *Reconsideration Request* (CR 127/ PR 202).

In the Reconsideration Request, Counsel requested that Commerce reconsider its rejection of Celik Halat's CVD questionnaire response. *Id.* Counsel cited extraordinary circumstances for the late filing, namely his emergency surgery and post-surgery recovery period. Counsel provided details of his surgery and post-surgery recuperation period, including [


]. *Id.* (CR 127/ PR 202).

On September 4, 2020, despite Counsel's detailed explanation regarding his medical situation, and the fact that Counsel had filed the one-day lag BPI version of the CVD questionnaire response on time on August 7, 2020, Commerce nonetheless continued to reject Plaintiff's August 7 and August 10, 2020 filings of the business proprietary and public versions of Celik Halat's CVD questionnaire response. *See Commerce's Letter to Celik Halat: Rejection of Reconsideration Request* (September 4, 2020) (PR 245/ CR 160).

In the September 4, 2020 letter denying Celik Halat's request for reconsideration, Commerce asserted that Counsel had failed to show that an "extraordinary circumstance" for granting an untimely filed extension request for an untimely filing under 19 § C.F.R. 351.302 existed. *See id.* (PR 245/ CR 160). Commerce further concluded that Counsel could have set the alarm at an earlier time to remind himself of the filing deadline or filed the response at an earlier time during the day, and that "the cause of the late filing was not a medical emergency or counsel's medical situation." *See id.* at 2 (PR 245/ CR 160).

On September 9, 2020, Celik Halat filed a response to Petitioners' Pre-preliminary Comments, requesting that Commerce reject Petitioners' calls for adverse facts available against Celik Halat and reconsider its rejection of Celik Halat's Section III questionnaire response. *Celik Halat's Response to Petitioners' Pre-Preliminary Comments* (September 9, 2020) (PR 251).

On September 21, 2020, Commerce published a Federal Register notice of its preliminary determination in the countervailing duty investigation of Prestressed Concrete Steel Wire from the Republic of Turkey. *Prestressed Concrete Steel Wire From the Republic of Turkey: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Critical Circumstances Determination, In Part,* 85 Fed. Reg. 59287 (Dep't Commerce Sept. 21, 2020) ("*Preliminary Determination*") (PR 252).

In the *Preliminary Determination*, Commerce assigned Celik Halat a countervailing duty rate of 135.06 percent based on adverse facts available. *Id.* Commerce determined that by not timely filing its CVD questionnaire response, Celik Halat "withheld information that had been requested" and "significantly impeded this proceeding." *See Commerce's Decision Memorandum for the Preliminary Determination of the Countervailing Duty Investigation of Prestressed Concrete Steel Wire from the Republic of Turkey* ("*Preliminary Decision Memo*") at 9 (September 14, 2020) (PR 253). Commerce also directed the Customs and Border Protection (CBP) to suspend liquidation of all entries of Prestressed Concrete Steel Wire from the Republic of Turkey and to collect cash deposits of 135.06 percent on entries of PC Strand exported by Celik Halat. *Preliminary Determination* at 4 (PR 252). Commerce calculated CVD rates of 14.44 percent for the other respondent, Guney Celik Hasir ve Demir and for the all-others rate. *Id.*

On November 23, 2020, Celik Halat filed a case brief containing, *inter alia*, its arguments that Commerce should reverse its decision and accept Celik Halat's CVD questionnaire response because (1) Commerce's rejection of Celik Halat's entire Section III response was too harsh in light of the minor delay, counsel's reasonable measures to submit a timely filing, and the circumstances of the late filing, i.e., counsel's emergency surgery, [

                                    ] ; (2) Commerce's practice has been to allow an emergency

12

extension for such circumstances as well as clerical errors by counsel; (3) there is no basis for adverse facts available because Celik Halat fully cooperated to the best of its ability; (4) Commerce can calculate a non-adverse margin based on Celik Halat's submitted responses; (5) in the alternative, Commerce can calculate a lower adverse margin with the Government of Turkey's responses. *See Case Brief to Commerce Pertaining to Celik Halat* ("Celik Halat Case Brief") (November 23, 2020) (PR 358/ CR 253-254).

On December 11, 2020, Commerce published in the Federal Register the Final Determination in the countervailing duty investigation. *Final Determination* (PR 376) and *Decision Memo* (PR 370-372/ CR 256-258). In the Final Determination, Commerce found no basis to alter its preliminary determination that Celik Halat had "failed to cooperate to the best of its ability to comply with Commerce's request for information." Commerce continued to apply adverse facts available to Celik Halat, increasing the preliminary margin of 135.06 percent to a final countervailing duty margin of 158.44 percent. *Final Determination* at 80006 (PR 376). Commerce assigned countervailing duty rates of 30.78 percent to the other mandatory respondent, Guney Celik Hasir ve Demir; and the rate of 94.61 percent for the all-others rate. *Id.* (PR 376).

On February 3, 2021, Commerce published in the *Federal Register* the countervailing duty order covering subject merchandise in the underlying countervailing duty investigation. *Prestressed Concrete Steel Wire Strand From the Republic of Turkey: Countervailing Duty Order*, 86 Fed. Reg. 7990 (Dep't Commerce Feb. 3, 2021) (PR 381).

## VI.    STANDARD OF REVIEW

This Court evaluates whether Commerce's decisions are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B).

13

Compliance with both statute and regulation is required for an agency action to be "in

accordance with law." *See, e.g.*, *Hontex Enters. v. United States*, 27 Ct. Int'l Trade 272, 293, 248

F. Supp. 2d 1323, 1340 (Ct. Int'l Trade 2003). Further, su1677bstantial evidence review requires

that the court assess whether the agency action is reasonable given the record as a whole. *Nippon*

*Steel Corp. v. United States*, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006).

The Court will find that a decision is not arbitrary or capricious if, *inter alia*, it reflects a

"logically reasoned and well-researched approach." *Save Domestic Oil, Inc. v. United States*, 357

F.3d 1278, 1289 (Fed. Cir. 2004). Thus, "Courts 'look for a reasoned analysis or explanation for

an agency's decision as a way to determine whether a particular decision is arbitrary, capricious,

or an abuse of discretion.'" *U.K. Carbon & Graphite Co. v. United States*, 931 F. Supp. 2d 1322,

1328 (Ct. Int'l Trade 2013) (*quoting Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369

(Fed. Cir. 1998)). Further, "{a}n 'agency action is arbitrary when the agency offers{s}

insufficient reasons for treating similar situations differently.'" *Foshan Shunde Yongjian*

*Housewares & Hardwares Co. v. United States*, 896 F. Supp. 2d 1313, 1325 (Ct. Int'l Trade

2013) (*quoting Transactive Corp. v. United States*, 91 F.3d 232, 237, 319 U.S. App. D.C. 428

(D.C. Cir. 1996) (*citing Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mutual Auto. Ins. Co.*, 463

U.S. 29, 57, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983))).

By statute, each "determination by Commerce must include an explanation of the basis

for its determination." *See NMB Sing. Ltd. v. United States*, 557 F.3d 1316, 1320 (Fed. Cir.

2009) (quoting 19 U.S.C. § 1677f(i)(3)(A)).  Thus, "{w}here the Department has reached

important conclusions that are not fully explained with reference to record evidence {and

relevant statutes or regulations}, remand is appropriate for Commerce to explain its rationale . . .

such that a court may follow and review its line of analysis, its reasonable assumptions, and other

relevant considerations." *Xiping Opeck Food Co., Ltd. v. United States*, 34 F. Supp. 3d 1331, 1343-1344 (Ct. Int'l Trade 2014).

Where the agency is vested with discretion to set the procedures by which it administers its governing statute, the court reviews such decisions for abuse of discretion. *Jiangsu Jiasheng Photovoltaic Tech. Co., Ltd. v. United States*, 28 F. Supp. 3d 1317, 1323 (Ct. Int'l Trade 2014) (*See, e.g., Dongtai Peak Honey Indus. Co. v. United States*,971 F. Supp. 2d 1234, 1239 (Ct. Intl. Trade 2014). "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represent an unreasonable judgment in weighing relevant factors." *Id.* (quoting *WelCom Prods., Inc. v. United States*, 36 CIT 1366, 1340, 865 F. Supp. 2d 1340, 1344 (2012) (citing *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005))). In abuse of discretion review, "an agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently." *See SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001).

## VII.   ARGUMENT

### A.  Commerce's Imposition of A Bright-Line Rule Rejecting Celik Halat's Entire Section III Response Is A Severe Abuse of Discretion

Commerce abused its discretion through its use of a bright-line rule to reject Celik Halat's Section III questionnaire response, without evaluating the specific factual circumstances of the late submission. Commerce must weigh accuracy and fairness in its administration of proceedings against the interests of finality and agency burden. Based on this factual record, the interests of accuracy and fairness far outweighed any burden or the interests of finality in this case. However, Commerce never addressed those factors in its decision to reject Celik Halat's Section III questionnaire response.

While the countervailing duty statute sets forth certain deadlines for the completion of certain actions, e.g., 19 U.S.C. § 1671d(a)(1) for issuance of a final countervailing duty determination, the statute does not set deadlines for specific submissions by respondents. Instead, Commerce has the authority to set deadlines in a proceeding, so that Commerce can meet the statutorily prescribed deadlines for completing an administrative investigation. However, the Court has confirmed in prior decisions that Commerce's discretion is not unlimited, and that Commerce nonetheless must exercise its discretion in a reasonable and fair manner. *See Dupont Teijin Films v. United States*, 931 F. Supp. 2d 1297, 1305 (August 21, 2013) ("Commerce's exercise of its discretion, however, must be reasonable in light of Commerce's statutory obligations"), *citing Sterling Fed. Sys., Inc. v. Goldin*, 16 F.3d 1177, 1182 (Fed. Cir. 1994) (noting the agency abuses its discretion when its decision is "clearly unreasonable, arbitrary, or fanciful"). As this Court has previously stated, "while Commerce clearly has the discretion to regulate administrative filings, that discretion is bounded at the outer limits by the obligation to carry out its statutory duty of determining dumping margins as accurately as possible." *Wuhu Fenglian Co., Ltd. v. United States*, 836 F. Supp. 2d 1398, 1403 (Ct. Int'l Trade 2012), *quoting NTN Bearing Corp. v. United States*, 74 F. 3d 1204, 1208 (Fed. Cir. 1995).

Commerce's rejection of Celik Halat's Section III questionnaire response was unreasonable and a severe abuse of discretion. The record is clear that Celik Halat's administrative counsel ("Counsel") underwent unexpected emergency surgery less than two weeks prior to the August 10, 2020 due date, and that he [

                                  ]. Limited by [                                   ], counsel exerted heroic efforts to timely file Celik Halat's Section III questionnaire responses by the August 7, 2020

deadline. Counsel also took all reasonable precautions to file the final BPI and public versions by 5:00 p.m. ET on August 10, 2020.   However, due to counsel's medical situation, the filing was late by 87 minutes. Despite the minimal delay and counsel's medical emergency, Commerce unreasonably rejected Celik Halat's entire questionnaire response, including all narratives, exhibits, and public and both the one-day lag and final BPI versions. Commerce then deemed Celik Halat uncooperative and imposed a highly punitive final adverse facts available ("AFA") rate of 158.44 percent. Had Commerce accepted the Section III questionnaire response, Celik Halat would have had the opportunity to demonstrate that its actual CVD subsidy rate was zero or de minimis. *Reconsideration Request* at 11 (CR 127/ PR 202). Commerce's actions amount to an outrageous abuse of discretion.

### 1. Controlling Judicial Precedent Precludes Commerce from Applying a Bright-Line Rule under the Countervailing Duty Statute

Commerce abused its discretion through its use of a bright-line rule to reject Plaintiff's Section III questionnaire response. As established by court precedent, the countervailing duty statute prohibits Commerce from taking an inflexible approach to all submissions for deadlines that are not dictated by the statute.

Deadlines for the submission of the Section III questionnaire response are not set forth in the statute. Commerce's regulations contain deadlines for certain submissions, such as the submission of new factual information under Section 351.301(b) of the Department's regulations. 19 C.F.R. §351.301(b). However, Commerce routinely sets different deadlines for separate sections of the CVD questionnaire beyond the initial 30 days.[2] While Commerce has

---

2  Commerce issued the initial questionnaire to the Government of Turkey on June 9, 2020. (PR 49). Commerce subsequently reselected respondents to include Celik Halat on June 26, 2020.

discretion both to set deadlines and to enforce those deadlines, Commerce is obligated to determine whether to waive those deadlines in appropriate circumstances.[3] *See Shelter Forest Int'l Acquisition, Inc. v. United States*, 2021 Ct. Int'l Trade Lexis at *23, 497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021) (while Commerce has some discretion to consider its resources and limit an investigation, it abused this discretion by precluding Shelter Forest's submission when acceptance of submission would yield a more accurate result). In such cases, Commerce is prohibited from imposing a rigid bright-line deadline for such submissions.

Commerce must evaluate the specific circumstances and context of an untimely filed submission before determining whether to reject that submission. Commerce's inquiry must be specific to the facts of the case, and guided by certain general principles. In particular, Commerce must analyze "whether the interests of accuracy and fairness outweigh the burden placed on the Department and the interest in finality." *Grobest & I-Mei Industrial (Vietnam) Co., Ltd. v. United States*, 815 F. Supp. 2d 1342, 1365 (Ct. Int'l Trade 2012) ("Grobest"). This Court has repeatedly recognized this standard:

> Essentially, when deciding whether Commerce abused its
> discretion in rejecting the information submitted after the deadline,

---

(PR 60). Commerce's due date for Celik Halat's response to Sections III Identifying Affiliated Companies was July 17, 2020 and its responses to Sections II and III was August 3, 2020. (PR 60). However, Commerce subsequently granted extensions for Celik Halat's responses to Section II – Affiliation (PR 81) to July 24, 2020, and Celik Halat's response to Section III, which was extended to August 7, 2020. (PR 121).

3  A regulation which is not required by statute may, in appropriate circumstances, be waived and must be waived where failure to do so would amount to an abuse of discretion. *See Tehnoimportexport v. United States*, 15 C.I.T. 250, 766 F. Supp. 1169, 1178 (Ct. Int'l Trade 1991) (analyzing price regulation which provided for correction of errors in a party's submission if received in time to permit proper analysis and verification). *NTN Bearing Corp.*,74 F.3d at 1207; *see also Fischer S.A. v. United States*, 34 C.I.T. 334, 700 F. Supp. 2d 1364, 1375-77 (2010).

> the court considers the interests of accuracy and fairness, and the
> burden imposed upon the agency by accepting the late submission.

*Unisor Sacilor v. United States*, 872 F. Supp. 1000, 1008 (Ct., Int'l Trade 1994). This Court has

unequivocally rejected the position that deadlines not required by statute are inflexible. *Id.; see*

*U.S. Magnesium LLC v. United States*, 895 F. Supp. 2d 1319, 1325 (Ct. Int'l Trade 2013) ("In

determining whether Commerce's rejection of an untimely submission amounts to an abuse of

discretion, this Court considers whether the interests of accuracy and fairness outweigh the

burden placed on {Commerce} and the interest in finality."); *Pro-Team Coil Nail Enter. v.*

*United States*, 419 F. Supp. 3d 1319, 1332 (Ct. Int'l Trade 2019); *Wuhu Fenglian Co., Ltd.,* 936

F. Supp. 2d at 1404-05; *Fine Furniture (Shanghai) Ltd. v. United States*, 865 F. Supp. 2d 1254,

1267 (Ct. Int'l Trade 2012); *Dupont Teijin Films v. United States*, 931 F. Supp. 2d 1297, 1306

(Ct. Int'l Trade 2013). Rather, Commerce must evaluate the circumstances of the untimely

submission on a case-by-case basis. The statute does not allow Commerce to impose an

unbending and rigid rule in these instances. *NTN Bearing Corp.*, 74 F. 3d at 1207.

    In *NTN Bearing Corp. v. United States*, the Federal Circuit rejected Commerce's

inflexible approach in rejecting respondent's attempt to submit clerical errors after the deadline.

The Federal Circuit reiterated that it is Commerce's duty to calculate dumping margins "as

accurately as possible" and that "the antidumping laws are remedial not punitive." *Id.* at 1208.

The Federal Circuit concluded the correction of the clerical errors "would neither have required

beginning anew nor have delayed making the final determination" and all that was required was

a "straightforward mathematical adjustment." *Id.* The Federal Circuit held that Commerce's rigid

application of its deadlines "resulted in the imposition of many millions of dollars in duties not

justified under the statute." *NTN Bearing Corp.,* 74 F.3d at 1208. The Federal Circuit noted that

in some cases, there exists a tension between finality and correctness, but found that in this instance, there was no issue regarding finality because NTN had requested the correction well in advance of the final determination. *Id.* at 1208. The Federal Circuit subsequently held that the holding in *NTN Bearing* was not limited to the correction of clerical errors. *Timken U.S. Corp. v. United States*, 434 F.3d 1345, 1351-52 (Fed. Cir. 2006).

In *Pro-Team Coil Nail Enter.*, the Court rejected Commerce's inflexible approach in rejecting a revised Q&V Schedule because the respondent had submitted the information seven days after the deadline for its second supplemental questionnaire response. 419 F. Supp. 3d at 1330-31. The Court noted that "it is well-settled that a deadline-setting regulation that "is not required by statute may, in appropriate circumstances, be waived and must be waived where failure to do so would amount to an abuse of discretion." *Id.* (citing *NTN Bearing*, 74 F.3d at 1207). The Court also found that Commerce erred in disregarding *NTN Bearing* and *Timken* based on the agency's conclusion that Pro-Team had not made a clerical error. *Id.*

The Court of Appeals for the Federal Circuit has opined on Commerce's interest in finality, explaining that "preliminary determinations are preliminary precisely because they are subject to change,' and that at the preliminary results stage, 'the tension between finality and correctness simply {does} not exist.'" *Wuhu Fenglian Co., Ltd.*, 836 F. Supp. 2d at 1404 (*quoting NTN Bearing Corp.*, 74 F. 3d at 1208). Therefore, Commerce faces an even higher burden when it rejects a submission made before the preliminary determination, as it did in this case.

This court has also held that AFA is far too harsh for a minor filing delay due to counsel error and when the AFA rate and the actual rate diverged widely. In *Artisan Mfg. Corp. v. United*

*States*, 978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014) ("*Artisan*"), the Court found that Commerce

abused its discretion in assigning an exporter of stainless steel sinks the 76.53 percent China-

wide adverse antidumping duty rate because the exporter's response to Commerce's quantity and

value request was filed the morning after the due date due to neglect of counsel. *Id.* at 1340.

Notably, the exporter had timely filed its separate-rate application, which Commerce had also

removed from the record. *Id.* at 1339. The Court concluded that the delay was inconsequential,

as it only took place during non-business hours, i.e., Q&V information was only unavailable

between 5:00 pm close of business on the due date, to the beginning of the next business day. *Id.*

at 1345. The Court also found that, by contrast the consequences of the unexcused late filing was

"particularly severe," subjecting the respondent to the PRC-wide rate, "more than twice as high

as the rate assigned to cooperating, non-investigated exporters." *Id.* at 1347. Noting that the

record demonstrated that the mistake was "committed innocently and inadvertently by plaintiffs'

counsel," the Court concluded that "Commerce attached a consequence that was grossly

disproportionate to the mistake that was made." *Id.*

This Court has remanded cases back to Commerce in cases where the where the delay in

submitting the response in question was far longer than here. In *Grobest & I-Mei Industrial*

*(Vietnam) Co., Ltd.,* this Court weighed the interests of "accuracy and fairness" against the

burden on Commerce where the exporter submitted its separate rate certification 95 days after

the deadline. Commerce assigned the exporter the country-wide rate based on application of

adverse facts available. 815 F. Supp. 2d at 1365. The court criticized Commerce's decision and

remanded the case, requiring Commerce to assign a separate rate to the exporter. *Id.* at 1365-66.

The court concluded that the interest of fairness outweighed the burden placed on Commerce,

relying primarily on three facts: (1) the Vietnam-wide rate of 25.76% assigned to the separate

rate respondent, Amanda Foods, was "in stark contrast to the 4.27% rate assigned to the other separate-rate respondents;" (2) the burden of reviewing this particular type of submission is not great, (3) although untimely submitted, the submission was still made more than seven months before the preliminary determination, and (4) the exporter made every effort to correct the error as soon as it became aware of the omission. *Id.*

In *Bosun Tools Co. v. United States,* the Court found that Commerce abused its discretion by rejecting the respondent Chengdu's attempt to re-file the redacted version of its response two days after it previously attempted to file on time but which, for reasons unclear on this record, only uploaded in part. Chengdu's counsel had timely filed the complete unredacted version of the submission on ACCESS. *Bosun Tools Co. v. United States*, 405 F. Supp. 3d 1359, 1365-66 (Ct. Int'l Trade 2019). The Court found Commerce's removal of Chengdu's entire submission from the record to be an abuse of discretion because it would "likely undermine the accuracy of the dumping margins" in the case. *Id.* The Court also noted that Commerce had not explained why it would be burdensome to "incorporate the late filed information."   *Id.*

Court precedent has conclusively established that Commerce may not apply a rigid and unbending approach when considering untimely filed submissions, no matter the length of the delay. Commerce must consider its statutory obligation to calculate countervailing duty margins as accurately as possible against issues of finality and agency burden. Here, Commerce never addressed those factors or offered any explanation why its rejection of Celik Halat's response was reasonable.

## 2. Acceptance of Celik Halat's Section III Questionnaire Response Would Have Imposed No Burden Whatsoever on Commerce's Conduct of the Investigation

Acceptance of Celik Halat's Section III questionnaire response would have imposed no

burden whatsoever on Commerce's conduct of the investigation. Celik Halat's final BPI and public version of its Section III questionnaire response was unavailable to Commerce only between 5:00 p.m. ET and 6:27 p.m. ET on the deadline date. This brief period could not have impacted or delayed the investigation in any material way. Commerce also did not offer any explanation in the *Final Determination* about any specific impact on its investigation as a result of the 87 minute filing delay.

In prior cases, the court has found Commerce to have abused its discretion in cases involving far longer delays by the plaintiff in filing a submission (e.g., 16 hours in *Artisan*; 95 days in *Grobest*). In *Artisan*, the Court concluded that Commerce abused its discretion in assigning Kehuaxing the adverse facts available PRC-wide rate. The Court surmised that acceptance of Kehuaxing's one business day late filing would have been inconsequential to Commerce's conduct of the investigation. *Artisan Mfg. Corp.,* 978 F. Supp. 2d at 1345. The Court explained:

> Kehuaxing's Q& information was unavailable to Commerce only between the 5:00 p.m. close of business on the due date, April 11, 2012, and a time at or near the beginning of the next business day…[s]uch a brief period could not have delayed the investigation in any meaningful way. Nor is it apparent from the record how acceptance of the filing could have interfered in any other way with the Department's ability to conduct the investigation.

*Artisan Mfg. Corp.*, 978 F. Supp. at 1345.

Here, the delay was far briefer than in *Artisan*. The untimely submitted final BPI and public version was unavailable to Commerce for a total of 87 minutes, after business hours. Moreover, Celik Halat's substantive Section III response, i.e., the one-day lag BPI version, was already timely filed on August 7, 2020. Celik Halat's final BPI version and final public version would have only contained BPI bracketing changes and redactions of BPI, which are non-

substantive changes.

There are no finality concerns because the late filing was over one month before the

Preliminary Determination and no days were lost by Commerce in preparing the Preliminary

Determination. *See Pro-Team Coil Nail Enter.*, 419 F. Supp. 3d at 1332 (holding that finality

concerns not implicated because plaintiff had submitted the Q&V Schedule before Commerce

issued *Preliminary Results*). Commerce never addressed the fact that its schedule was not

impacted by the late filing. There is nothing on the record indicating any disruption in

Commerce's investigation or any burden in accepting the filing. Commerce abused its discretion

in rejecting the Section III response.

### 3. Acceptance of the Section III Questionnaire Response Would Have Resulted in the Calculation of an Accurate CVD Margin for Celik Halat

In addition to lack of burden and no finality issues, the interests of fairness and accuracy

weighed heavily in favor of accepting Celik Halat's Sections III questionnaire response.

Commerce's rejection of Celik Halat's response is both unfair and resulted in a grossly

inaccurate CVD margin. *See Pro-Team Coil Nail Enter.* 419 F. Supp. 3d at1332 (holding that

accuracy concerns favor accepting the Q&V Schedule rejected by Commerce on untimely

grounds for the purpose of determining Pro-Team's antidumping duty rate).

Based on Celik Halat's actual information, as set forth in its Section III questionnaire

response, Celik Halat's calculated CVD rate would have been zero or de minimis.

*Reconsideration Request* at 11 (CR 127/ PR 202). That is compared with a grossly punitive and

inaccurate AFA rate of 158.44 percent assigned to Celik Halat. By refusing to accept Celik

Halat's Section III questionnaire response, and imposing a total adverse facts available rate,

Commerce has imposed significant CVD duties on Celik Halat's entries that are not allowed by

the statute and have further distorted the market. Celik Halat is effectively locked out of the U.S.

market for two years, until the first administrative review is completed. *Celik Halat Case Brief* at

7 (PR 358/ CR 253-254).

**B.  Commerce Failed to Provide Celik Halat The Opportunity to Remedy The Deficiency Under 19 U.S.C. § 1677m(d).**

Commerce applied total adverse facts available in assigning a countervailing duty rate to

Plaintiff.   In doing so, Commerce adopted an interpretation of Section 782(d) that is contrary to

the plain language of Section 782(d). Commerce's conclusion is not reasonable or consistent

with the statute.

Before resorting to adverse facts available, the Department must first make a series of

determinations under the statute. In particular, the Department's ability to apply adverse facts

available is subject to 19 U.S.C. § 1677m(d) which requires that the Department first inform the

respondent of any deficiency and provide that person an opportunity to remedy or explain the

deficiency in light of the time limits established for completion of the investigation. 19 U.S.C. §

1677e(a) (2015), 1677m(d) (2015). *China Steel Corp. v. United States*, 264 F. Supp. 2d 1339,

1355 (Ct. Int'l Trade 2003) ("Before resorting to facts available, however, the Department is

required to comply with the notice and remedial requirements of §1677m(d)."). Section 782(d)

of the Act, codified as 19 U.S.C. §1677m(d), provides as follows:

> If…a response to a request for information…does not comply with
> the request, the administering authority…shall promptly inform the
> person submitting the response the nature of the deficiency and
> shall, to the extent practicable, provide that person with an
> opportunity to remedy or explain the deficiency…"

19 U.S.C. § 1677m(d) (emphasis added).

The plain language of the statute makes clear that Commerce cannot automatically resort

to adverse facts available because of an untimely filed submission. The use of facts otherwise

available as a substitute for the untimely submitted information is expressly qualified

by § 1677m(d). *See* 19 U.S.C. § 1677e(a) (stating that "… the administering authority . . .

shall, *subject to section 1677m(d) of this title,* use the facts otherwise available in reaching the

applicable determination under this subtitle") (emphasis added). *China Kingdom Imp. & Exp.*

*Co. v. United States*, 31 C.I.T. 1329, 1344, 507 F. Supp. 2d 1337, 1352 (Ct' Int'l Trade 2007).

Instead, Commerce must first provide a party with the opportunity to correct a deficiency. *Id.*

("shall…provide that person with the opportunity…"). This requirement is subject to the

condition that doing so must be "practicable."

　　　　These requirements apply equally to a submission that is not timely filed as it does to a

submission that does not contain complete information. In *Shelter Forest Int'l Acquisition, Inc.*,

the Court concluded that Commerce abused its discretion by rejecting Shelter Forest's

submission as untimely when it had not provided notice to Shelter Forest regarding deficiencies,

as required by 19 U.S.C. § 1677m(d). 497 F. Supp. 3d 1388, 2021 Ct. Int'l Trade Lexis at *20. In

*China Kingdom Import & Export Co., Ltd. v. United States*, this Court explained that "the use of

facts otherwise available as a substitute for the untimely submitted information is expressly

qualified by § 1677m(d)." 507 F. Supp. 2d 1337, 1352 (Ct. Int'l Trade 2007). After concluding

that there was "no ambiguity or silence in § 1677m(d) that would justify resort to the second step

in a *Chevron* analysis" under the circumstances, the court considered the specific facts of the

case and whether it would have been practicable for Commerce to allow a remedy of the

deficiency. *Id.* at 1354. The court explained that the information in question was submitted to

Commerce 53 days before the preliminary determination and "more than eight months" before

the final results were due. The court concluded that Commerce committed legal error for failing

to make a finding that it would not be practicable to allow the respondent to remedy the deficiency. *Id.* at 1358.

Commerce acted contrary to the plain language of Section 782(d) of the Act when it applied adverse facts available in assigning Plaintiff a countervailing duty margin without first providing Plaintiff with an opportunity to remedy the deficiency. The only deficiency at issue was Plaintiff's submission of the final BPI and public version of the Section III questionnaire response, after the 5:00 p.m. ET deadline. This resulted in Commerce's rejection of both the timely filed one-day lag version and the untimely filed final BPI and public versions of its Section III questionnaire responses, and the application of adverse facts available to Plaintiff. However, Commerce never provided Plaintiff with the required opportunity to remedy the deficiency, nor did Commerce address whether it was not practicable to do so.

In fact, Plaintiff remedied the deficiency on its own by filing the final BPI and public versions of the Section III response at 6:27 p.m. ET on the due date. It was practicable for Commerce to accept and utilize Celik Halat's filings in light of the fact that it already had the one-day lag version filed on August 7, 2020, and the untimely filed final BPI and public versions were filed 87 minutes after the 5:00 p.m.ET deadline, after work hours, and before commencement of the following workday. Without permitting Celik Halat an opportunity to correct the deficiency or accept Celik Halat's correction of the deficiency, Commerce's decision to reject the Section III responses in full was contrary to the statute.

## C. Commerce's Stated Rationale Is Unreasonable

Commerce's proffered rationale in the *Final Determination* regarding its rejection of Celik Halat's responses and its imposition of AFA is unreasonable. Commerce cites Celik Halat's untimely filing as justification for its conclusion that Celik Halat failed to cooperate to

the best of its ability. However, Commerce's assertion is conclusory and fails to cite any record evidence or provide a reasoned explanation for its AFA decision. Commerce also fails to explain why it has treated Celik Halat differently than other cases in refusing a post-deadline extension. Commerce's rationale in the *Final Determination* should be rejected in its entirely.

1. **Commerce's Adverse Facts Available Finding is Unsupported by Substantial Evidence.**

In the *Final Determination*, Commerce adopted its AFA finding from the *Preliminary Determination*, concluding that "because Celik Halat failed to submit its response to section III of the questionnaire by the established deadline, Celik Halat failed to cooperate to the best of its ability to comply with Commerce's request for information." *Decision Memo* at 34 (PR 370). Commerce determined "to use an adverse inference when selecting from among facts otherwise available to assign subsidy rates to Celik Halat." *Id*. Commerce's explanation for its AFA finding consists of its characterization of Celik Halat's untimely filing of its final Section III BPI and public responses. Commerce's AFA finding is conclusory in nature, with no record support or a reasoned explanation.

Commerce is only authorized to apply adverse facts available, after it undertakes a two-step analysis: First, Commerce must find that use of "facts available" is needed because "necessary information is not available on the record," or "an interested party or any other person . . . withholds information that has been requested by {Commerce} . . . {or} significantly impedes a proceeding." 19 U.S.C. § 1677e. Second, Commerce must find "that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information." *Id.* § 1677e(b)(1). Only at that point may Commerce use an adverse inference "in selecting from among the facts otherwise available." *Id.* § 1677e(b)(1)(A). *Hyundai Steel Co. v.*

*United States*, No. 19-00099, 2021 Ct. Intl. Trade LEXIS 60, at *3 n.3 (Ct. Int'l Trade Apr. 27, 2021).

> In the *Preliminary Determination*, Commerce concluded the following:

>> Celik Halat filed an untimely response to Commerce's initial CVD questionnaire. Therefore, we preliminarily find that, by not timely responding to Commerce's questionnaire, Celik Halat withheld information that had been requested and failed to provide information within the deadlines established. By not responding to the initial CVD questionnaire, Celik Halat significantly impeded this proceeding.

> *Preliminary Decision Memorandum* at 9 (September 14, 2020) (PR 253).

Commerce goes on to conclude that an adverse inference is warranted, because "by not timely responding to the initial CVD questionnaire, Celik Halat failed to cooperate to the best of its ability to comply with the requests for information in this investigation." *Id.* at 9. In the *Final Determination*, Commerce found "no basis to alter {its} use of AFA" with regard to Celik Halat in the Preliminary Determination. *Decision Memo* at 35 (PR 370).

Commerce's conclusion to apply AFA is not supported by substantial evidence and is contrary to the statute. Commerce did not explain why the record evidence here supports a lack of cooperation by Celik Halat, in light of counsel's medical emergency and the circumstances leading up to the 87 minute filing delay. *Nippon Steel & Sumitomo Metal Corp. v. United States*, 483 F. Supp. 3d 1214, 1223 (Ct. Int'l Trade 2020) (before applying AFA, Commerce is required under the statute to evaluate whether any failure to fully respond is due to lack of cooperation).

Commerce's explanation also does not support its conclusion that Celik Halat failed to put forth maximum effort. Commerce merely equated Celik Halat's untimely filing with a failure to cooperate, without evaluating the circumstances of the untimely filing. Commerce cannot merely rely on Celik Halat's untimely filing of its final Section III BPI and public responses.

"An adverse inference may not be drawn merely from a failure to respond." *Hyundai Heavy Indus. Co., Ltd. v. United States,* 393 F. Supp. 3d 1293, 1303-04 (Ct. Int'l Trade 2019). Commerce may apply an adverse inference "under circumstances in which it is reasonable for Commerce to expect that more forthcoming responses should have been made." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1383 (Fed. Cir. 2003).

Further, the record evidence does not support Commerce's conclusions. Celik Halat fully cooperated and prepared responses to Commerce's Section III questionnaire, which were ready to be filed on the due date. Due to counsel's medical emergency and in spite of reasonable precautions taken, the final BPI and public responses were unavoidably filed 87 minutes late. Contrary to Commerce's conclusion, Celik Halat exerted its maximum efforts to file the responses on time.

Commerce further concluded that "the late filing could have been prevented if reasonable measures had been taken" such as setting the alarm at the correct time or planning to file the final bracketing version earlier in the day." *Decision* Memo at 36 (PR 370). This conclusion is not supported by the record.   In particular, Commerce failed to account for counsel's medical situation and its impact on the incorrect setting of the alarm clock as well as counsel's ability to work for only brief periods of time. Based on this record, it was unreasonable for Commerce to conclude that Celik Halat failed to cooperate to the best of its ability.

Commerce's imposition of adverse facts available is contrary to the statute and grossly disproportionate to the innocent and minor error at issue. There is no record evidence of non-cooperation or withholding of information by Celik Halat. In light of Commerce's silence and the overwhelming record evidence, Commerce's finding of adverse facts available is unsupported by substantial evidence and should be reversed.

**2. Commerce's Conclusion That Counsel's Medical Emergency Did Not Constitute "Extraordinary Circumstances" Is An Abuse Of Discretion**

In the *Final Determination,* Commerce concluded that its rejection of Celik Halat's Section III response was proper because "the circumstances in this case are not extraordinary circumstances within the meaning of 19 CFR 351.302(c)(2)." *Decision Memo* at 35 (PR 370).

Section 351.302(a) of Commerce's regulations defines an "extraordinary circumstance" as follows:

> An extraordinary circumstance is an unexpected event that:
>
> (i)      Could not have been prevented if reasonable measures had been taken, and
>
> (ii)      Precludes a party or its representative from timely filing an extension request through all reasonable means.
>
> *Id.* (PR 370).

Examples that Commerce cites of extraordinary circumstances include "a natural disaster, riot, war, force majeure, or medical emergency." *Id.* (PR 370). According to Commerce, "{e}xamples that are unlikely to be considered extraordinary circumstances include insufficient resources, inattentiveness, or the inability of a party's representative to access the Internet on the day on which the submission was due." *Id.* (PR 370).

However, even under Commerce's "examples" of what constitutes "extraordinary circumstances, its reasoning for rejecting Celik Halat's post-deadline extension request is flawed and should be rejected in its entirety.

Commerce concluded the following:

> In this situation, the cause of the late filing was not a medical emergency or counsel's medical situation. Rather, Celik Halat's counsel set an alarm reminding him to file a submission to Commerce, but the alarm was set at the wrong time – after the deadline had already expired.

*Decision Memo* at 36 (PR 370).

Commerce's explanation is flawed and illogical. The undisputed record evidence is that counsel had undergone emergency surgery, and was on [

] immediately prior to and at the time of the filing deadline. As a result, counsel had to [

]. While counsel took reasonable precautions by setting two alarm clocks to awaken him in time for the filing on August 10, 2020, the [

] caused counsel to set the alarm clocks at the wrong time. Despite all this evidence, Commerce assets conclusorily that "the cause of the late filing was not a medical emergency or counsel's medical situation." *Decision Memo* at 36 (PR 370).

Commerce's attribution of the late filing to inattentiveness by counsel due to setting of the alarm at the wrong time is not supported by the record. Commerce did not reasonably address the material record evidence at issue – counsel's medical condition that in turn caused him to set the alarm clocks at the wrong time.

Moreover, it is clear that these circumstances satisfy the criteria for what constitutes an "extraordinary circumstance." One, the late filing could not have been prevented even if reasonable measures were taken because counsel already took reasonable measures by setting two alarm clocks to alert him at 4:00 pm to make the filing. However, as counsel explained in detail, his physical condition, i.e., recovering from emergency surgery that had only taken place days before, under [                                    ], caused him to overlook the fact that his location was in the Mountain Time zone, and that filing the response at 4:27 p.m. was really 6:27

32

p.m. ET. Counsel made herculean efforts to try and file the submissions on time, despite the fact

that he was only days out from emergency surgery and [                    ]. The record

evidence is clear that the cause was not inattentiveness and there is no evidence to support

Commerce's finding in this respect.

Two, Celik Halat satisfied the second prong, i.e., that it was precluded from timely filing

an extension request through all reasonable means. On August 4, 2020, Celik Halat submitted an

extension request, citing counsel's recent surgery, and requested a one-week extension to August

14, 2020. *See Celik Halat Letter to Commerce: Extension Request of Celik Halat ve Tel Sanayi*

*A.S. ("Celik Halat") for Section III Response in the CVD Investigation* (August 4, 2020) (PR

176). However, Commerce denied Celik Halat's extension request, citing statutory deadlines.

*See Letter from Commerce: Investigation of Prestressed Concrete Steel Wire from the Republic*

*of Turkey: Denial of Extension for Initial Questionnaire Response* (August 4, 2020) (PR 177). In

its Memo denying Celik Halat's Request Commerce cites Celik Halat's failure to file timely

extension request. *See Commerce's Letter to Celik Halat: Rejection of Reconsideration Request*

(September 4, 2020) (PR 245/ CR 160). However, this assertion makes no sense. Celik Halat's

counsel, due to his medical situation, was unaware that he had even missed the deadline when he

inadvertently filed the response at 6:27 p.m. ET.    Further, Celik Halat had timely filed the

unredacted one-day lag BPI version on August 7, 2020.    No extension request was required

because the filing of the final BPI and public version on August 10, 2020, related back to the

original timely August 7, 2020 filing. *Bosun Tools Co. v. United States*, 405 F. Supp. 3d 1359,

1367 (Ct. Int'l Trade 2019) (rejecting Commerce's argument that extension request was required

because the unredacted submission was provided by the deadline and the updated version of the

submission, filed two-days late, related back to the original, timely filing).

33

Commerce claims that the "late filing could have been prevented if reasonable measures had been taken – for example, setting the alarm at the correct time or planning to file the final bracketing version of documents earlier in the day on the due date. It is counsel's responsibility to put in place backup systems to ensure that submissions are timely or request for an extension of the deadline." *Decision Memo* at 36 (PR 370). Commerce's conclusions are disconnected from the actual record evidence. Counsel made every attempt to put reasonable back-up measures in place, but the untimely filing could not be prevented due to his emergency surgery and related circumstances. As for Commerce's claim that counsel could have filed the response earlier in the day, counsel already explained at length that he was only able to work in short blocks of time, i.e., 1-2 times a day, [                                         ]. Counsel's explanation that he did not file the questionnaire response until later in the day is reasonable, considering his physical condition and the time and energy, time and effort that it takes to submit documents through the ACCESS document system.

Commerce asserts that "the instant situation does not constitute the sort of extraordinary circumstances envisioned by Commerce when it promulgated the time limit regulations under 19 CFR 351.302." *Decision Memo* at 36 (PR 370). However, Commerce does not explain why that is the case. If these set of circumstances – an emergency surgery just days ago, and a difficult post-surgery recovery and heavy medication does not qualify as "extraordinary circumstances," then Commerce's regulation is essentially meaningless.

### 3. Commerce Failed to Sufficiently Explain Its Deviation From Its Practice of Granting Retroactive Extensions In Similar Or Less Severe Circumstances

In the *Final Determination*, Commerce concluded that "the circumstances in this case are not extraordinary circumstances within the meaning of 19 CFR 351.302(c)(2)." *Decision Memo*

at 35 (PR 370). Commerce rejected Celik Halat's references to other administrative proceedings where Commerce had previously granted out-of-time extensions for minor clerical errors, concluding that "the instant situation does not constitute the sort of extraordinary circumstances envisioned by Commerce when it promulgated the time limit regulations under 19 CFR 351.302." *Id.* Commerce's deviation from its usual practice of granting extensions for minor delays was arbitrary and capricious. A remand is warranted because Commerce failed to explain why it has treated this case and other similar circumstances differently.

Commerce modified Section 302 of its regulations in September 2013. 19 C.F.R. § 351.302.[4]  In the *Final Determination*, citing its *Extension of Time Limits*, Commerce contends that "insufficient resources, inattentiveness, or the inability of a party's representative to access the Internet on the day on which the submission was due" are "unlikely examples of an extraordinary circumstance." *Decision Memo* at 35 (PR 370). According to Commerce, extraordinary circumstances examples include "a natural disaster, riot, war, *force majeure*, or medical emergency." *Id.*

Since Commerce's *Extension of Time Limits* was issued in 2013, it has been Department's practice, however, to allow respondents to file submissions out of time, without a timely extension request, for reasons ranging from routine mistakes and clerical errors by counsel to medical circumstances similar to the instant case.

- Counsel's printer jam[5]

---

4  *See Extension of Time Limits*, 78 Fed. Reg. 57790 (Sept. 20, 2013).

5  Nucor Corporation Extension Request dated August 25, 2017(ACCESS Barcode: 3611722-01) in *Carbon and Certain Alloy Steel Wire Rod from Mexico* (A-201-830) and DOC Letter dated August 25, 2017 to Wiley Rein, LLP, counsel for Nucor Corporation granting Nucor's Extension

- Counsel's inadvertent missing of deadline due to limited staff during holidays;[6]

- Counsel's inadvertent omission in requesting extensions for Sections B and C, but not Section D.[7]

- Counsel's failure to correctly note the filing deadline.[8]

- Counsel's concern about EU privacy laws[9]

- Counsel's medical conditions[10]

Commerce's actions are arbitrary and should be reversed. *See, e.g., Green Country*

---

Request. (ACCESS Barcode: 3611780-01).

[6] Hyundai Steel Company Extension Request dated January 5, 2016 in *Certain Cold-Rolled Steel Flat Products from Korea: Extension Request for Supplemental Section D Questionnaire Response* (A-580-881) (ACCESS Barcode: 3429991-01) and DOC Memorandum to the File Dated January 11, 2016 re: DOC meeting granting Hyundai's extension request. (ACCESS Barcode: 3431804-01).

[7] Roung Shu Extension Request dated February 18, 2015 in *Narrow Woven Ribbons with Woven Selvedge from Taiwan* (A-583-844) (ACCESS Code: 3260204-01) and DOC Letter dated February 27, 2015 to Akin Gump Strauss Hauer & Feld LLP granting Extension Request. (ACCESS Barcode: 3261940-01).

[8] British Steel Post-Deadline Extension Request dated July 7, 2017, *Carbon and Certain Alloy Steel Wire Rod from the United Kingdom* (A-412-826) (ACCESS Barcode: 3590026-01) and DOC Letter dated July 10, 2017 to Steptoe & Johnson LLP granting British Steel's Extension Request. (ACCESS Barcode: 3591490-01).

[9] Forgital Italy SpA February 22, 2019 request for 1 day out of time extension to file Section A response (ACCESS Barcode: 3796694-01) in *Finished Carbon Steel Flanges from Italy* (A-475-835) arising from prior counsel's failure to file due to concerns re: EU privacy laws and DOC Letter dated March 5, 2019 granting Forgital's extension request. (ACCESS Barcode: 3800014-01).

[10] Sapa Profiles (Shanghai) Co. Extension Requests dated September 8, 2014 (ACCESS Barcode: 3227011-01) and September 17, 2014 (ACCESS Barcode: 3228665-01), in *Aluminum Extrusions from the People's Republic of China* (C-570-968), and DOC Letter dated September 22, 2014 (ACCESS Barcode: 3230428-01) to Sidley Austin LLP, counsel for Sapa, granting Sapa's 4-day extension request because of "medical issues" involving the company's counsel.

*Mobilephone, Inc. v. FCC*, 765 F.2d 235, 237, 246 U.S. App. D.C. 366 (D.C. Cir. 1985) ("We reverse the {agency} not because the strict rule it applied is inherently invalid, but rather because the {agency} has invoked the rule inconsistently. We find the {agency} has not treated similar cases similarly."); *Nakornthai Strip Mill Pub. Co. v. United States*, 32 CIT 1272, 587 F. Supp. 2d 1303, 1307 (2008) ("Agencies have a responsibility to administer their statutorily accorded powers fairly and rationally, which includes not treating similar situations in dissimilar ways." (quotation and alteration marks and citation omitted)). "{A}n 'agency action is arbitrary when the agency offers{s} insufficient reasons for treating similar situations differently.'" *Foshan Shunde Yongjian Housewares & Hardwares Co.*, 896 F. Supp. 2d at 1325 (*quoting Transactive Corp.*, 91 F.3d at 237(*citing Motor Vehicle Mfrs. Ass'n, Inc.* 463 U.S. at 57)).

Commerce's decision here is also inconsistent with its prior practice of granting post-deadline extensions where counsel has experienced a recent medical emergency. In an administrative review of *Aluminum Extrusions from the People's Republic of China*, Commerce granted counsel's retroactive request for an extension of the deadline to file a Q&V questionnaire. In its retroactive extension request, filed four days after the deadline for Q&V questionnaire responses, respondent Sapa Profiles explained that its attorney "recently experienced serious and unexpected medical issues which required hospitalization and an extended recuperation period during which he was unable to work consistently." The respondent further explained that "{e}ven as {counsel} has returned to work in recent weeks, his schedule has been uncertain and part-time." The respondent goes on to explain that due to "these medical issues, {counsel} was unable to timely file an extension request or delegate this responsibility to

37

another attorney."[11]  Sapa Profiles had filed its untimely Q&V questionnaire response

concurrently with its Request for Extension. Commerce granted Sapa Profiles' retroactive

Request for a four-day extension of time, citing "the extraordinary circumstances" in Sapa

Profiles' letter.[12]  These facts are similar to those of Celik Halat's counsel, who was also

hospitalized days before the missed deadline and had an extended recuperation period.

However, Commerce has treated the instant case inconsistently, without explanation of why it

deviated from its granting of an extension in a case with similar facts and an even longer filing

delay (i.e., 4 days verses. 87 minutes).

**4.  Commerce's Inconsistent Application of The *Extension Of Time Limits* Final Rule
Extends to Petitioners' Extension Requests**

In contrast to the overly-rigid and unjustified standard that Commerce applied to

respondent Celik Halat, Commerce failed to apply the same rigid standard to petitioners when

they encountered ACCESS issues when filing a document in the instant case. This inconsistent

treatment confirms the arbitrary and capricious nature of Commerce's actions against Celik

Halat.

Petitioners had attempted to file their new subsidy allegations which were due on August

---

11  Request for Extension of Time to Respond to the Quantity and Value Questionnaire Dated
September 8, 2014 filed by Sapa Profiles (ACCESS Barcode 3227001) *Aluminum Extrusions
from the People's Republic of China* (C-570-968). In a double-bracketed submission dated
September 17, 2014, Sapa Profiles' counsel provided further details of the medical issues that
caused the late filing (ACCESS Barcode 3228665-01).

12  DOC Letter dated September 22, 2014 to Sapa Profiles (Shanghai) Co., Ltd. re: Extension of
Time to Provide a Response to the Department's Quantity and Value Questionnaire (ACCESS
Barcode 3230428-01); *2013 Administrative Review of the Countervailing Duty Order on
Aluminum Extrusions from the People's Republic of China* (C-570-968).

5. 2020. *See DOC Memorandum Re: Phone Call with Counsel for the Petitioner* (August 7,

2020) (PR 181). However, Petitioners' counsel received an email at 4:55 p.m. ET from ACCESS

rejecting the BPI and public versions of their August 5, 2020 new subsidy allegations due to a

"typographical error in the header of the document."[13]  *See id*. Despite receiving the rejection

email prior to 5:00 p.m. on the deadline date, Petitioners waited until the following day, August

6, 2020, to call Commerce regarding the ACCESS rejection. Petitioners did not file a written

extension request or explain the specific circumstances of ACCESS's rejection of their filing.

Commerce then granted Petitioners a retroactive extension to Friday, August 7, 2020 at 10:00

a.m. ET to refile the final business proprietary and public versions of their new subsidy

allegations. *Id.* In granting the retroactive deadline extension, Commerce did not require

Petitioners to demonstrate "extraordinary circumstances."

　　"{C}onsistency has long been a core interest of administrative law, and inconsistent

treatment is inherently significant." *DAK Americas LLC v. United States*, 456 F. Supp. 3d 1340,

1355 (Ct. Int'l Trade 2020) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89

L. Ed. 124 (1944); *Chisholm v. Def. Logistics Agency*, 656 F.2d 42, 47 (3d Cir. 1981)). "[W]here

an agency departs from prior determinations, it is appropriate to compel the agency to explain

whether: (1) good reasons prompt that departure; or (2) the prior determinations are inapposite

such that it is not in fact a departure at all." *Id.* at 20. Though Commerce may enjoy wide latitude

in its application of the AD and CVD statute and prior determinations are not legally binding in

same way as case law through stare decisis, *DAK Americas LLC*, 456 F. Supp. 3d at 1355, nn. 9-

---

13  August 6, 2020 Memorandum for the File re: *Countervailing Duty Investigation of
Prestressed Concrete Steel Wire from the Republic of Turkey: Phone Call with Counsel for the
Petitioner* (C-489-843) (Barcode 4013270-01).

10 (citations omitted), its discretion is limited by the need to provide an adequate explanation for any deviation from its past practice and interpretations. *SKF USA Inc.*, 263 F.3d at1382 ("{A}n agency action is arbitrary whenthe agency offer[s] insufficient reasons for treating similar situations differently."). *Echjay Forgings Private Ltd. v. United States*, 475 F. Supp. 3d 1350, 1375 (Ct. Int'l Trade 2020).

In another example of inconsistent treatment, in the recent antidumping duty investigation of *Metal Lockers and Parts Thereof from the People's Republic of China*, Petitioners in that case filed an untimely extension request regarding its submission of Surrogate Country and Surrogate Value Comments. Petitioners filed their Extension Request at 4:56 p.m., ET of the due date, which was in violation of Commerce's Final Rule on the *Extension of Time Limits*, which states that an extension request for submissions that are due from multiple parties "will be considered untimely if it is not filed by 10:00 a.m. on the due date." 78 Fed. Reg. 57790, 57992 (Sept. 20, 2013). This Rule applies to submissions due by a certain deadline by multiple parties, including "factual information to value factors under section 351.408(c)." 78 Fed. Reg. at 57792. According to Commerce, this rule was designed to avoid the situation that occurs "if one party requests a last-minute extension of the time limit," with the result that "it may obtain an advantage by reviewing other parties' submissions before the party files its own submission." *Id.* By a memorandum dated November 2, 2020 in the *Metal Lockers* investigation, Commerce set the deadline for "all interested parties" to submit "surrogate country and surrogate values comments "by no later than 5:00 p.m. ET on November 16, 2020.[14]

---

14  DOC Memorandum dated November 2, 2020 re: Extension of Deadline to File Comments on Surrogate Countries and Surrogate Values and Treatment of Production Component Names. *Antidumping Duty Investigation for Certain Metal Lockers and Parts Thereof from China* (A-

Despite this clear deadline, and Commerce's Final Rule, Petitioners filed their Extension

Request for submission of their Comments on Surrogate Country and Surrogate Values untimely

at 4:56 p.m. ET on November 16, 2020. Petitioners requested one additional business day for an

extension, citing "technical difficulties in uploading the large electronic attachment to

Petitioners' Comments" and that "the electronic file will not upload through the Department's

system."[15]  The following day, respondents filed a letter requesting that Commerce reject

Petitioners' untimely extension request to submit surrogate country and surrogate value

comments.[16]  However, Commerce nonetheless granted Petitioners' out-of-time extension

request, despite the lack of any claim by Petitioners of "extraordinary circumstances."[17]  Instead

of addressing respondent's arguments regarding Petitioners' untimely extension request,

Commerce granted Petitioners' request "based on the circumstances discussed in its letter." *Id.*

Commerce's actions are arbitrary and capricious because it has held Celik Halat to a different

standard with regard to formatting requirements than Petitioners in *Metal Lockers.* Commerce

---

570-133) (ACCESS Barcode: 4047619-01).

15  Letter dated November 16, 2020 from Kelley Drye & Warren to the Honorable Wilbur L.
Ross, Jr., Secretary of Commerce (ACCESS Barcode 4053947-01) *Antidumping Duty
Investigation of Certain Metal Lockers and Parts Thereof from the People's Republic of China*
(A-570-133).

16  Letter dated November 17, 2020 from Fox Rothschild LLP to the Honorable Wilbur L. Ross,
Jr., Secretary of Commerce (ACCESS Barcode 4054197-01) *Antidumping Duty Investigation of
Certain Metal Lockers and Parts Thereof from the People's Republic of China* (A-570-133).

17  DOC Memo to the File re: Extension of Deadline to File Comments on Surrogate Countries
and Surrogate Values and Treatment of Production Component Names (ACCESS Barcode:
4054032-01) *Antidumping Duty Investigation of Certain Metal Lockers and Parts Thereof from
the People's Republic of China* (A-570-133).

was particularly lenient on Petitioners, considering that their extension request mentions a "large electronic attachment to Petitioners' Comments" that they had difficulties uploading through ACCESS. Even assuming that the electronic attachment was not being accepted by ACCESS, Petitioners should at least have been able to submit their written comments in pdf format through ACCESS by the designated deadline. In their untimely extension request, Petitioners provided no details about their attempts to file through ACCESS. Respondents had filed their Comments on time, while Petitioners gained an extra day to view Respondents' comments before filing their own. Commerce appeared willing to bend its stringent rules for Petitioners in the *Metal Lockers* case. This is an improper double standard.

### 5.   Commerce's Attempt to Distinguish Past Judicial Decisions Is Unavailing

Commerce's attempt to distinguish the Court's holding in *Artisan* is also unavailing. In the Final Determination, Commerce claims that *Artisan* is distinguishable because in that case, Commerce "was ambiguous in stating its policy on time extensions for the information at issue and that its determination was based on '*the particular circumstances of this investigation.*'" *Artisan Mfg. Corp.* 978 F. Supp. 2d at 1344. Contrary to Commerce's contention, the facts in *Artisan* and the Court's holding are directly point in this case. The Court found Commerce's rejection of the respondent's untimely filed Q&V response and the timely filed SRA be an abuse of discretion.   The Court found Commerce's rationale that it needed to complete the investigation within the statutory deadline to be unconvincing. The Court concluded that the brief period when the Q&V questionnaire was unavailable between 5:00 p.m. close of business on the due date and the time at or near the beginning of the next business day acceptance of the late filed Q&V response "could not have delayed the investigation in any meaningful way" or "interfered in any other way with" the Department's ability to conduct its investigation. *Artisan*

*Mfg. Corp.* 978 F. Supp. 2d at 1345.

Here, while Commerce also suggests in its *Final Determination* that the late filing somehow interfered with its investigation, those conclusions are disconnected from the facts here, i.e., that the delay was even briefer, at 87 minutes, during non-business hours, and but for counsel's medical emergency, the deadline would have been met. With regard to the application of AFA, Commerce has failed to sufficiently explain why Celik Halat's late filing, in light of all of the record evidence, nonetheless merited an adverse facts finding, and why its finding satisfies the statutory objective.

As for Commerce's conclusion that *Grobest* is not applicable because it pre-dates Commerce's revision of its rules on enforcement of deadlines and Federal Circuit precedent, *Grobest* is still good law. Commerce also missed the point with regard to the applicability of *Grobest.* The *Grobest* Court rejected Commerce's claims that the burden in accepting Amanda Foods' separate rate certification, albeit 95 days late, would outweigh considerations of fairness and accuracy. The Court also cited two other reasons why Commerce erred: (1) that Amanda Foods' late submission arrived early in the proceeding more than seven months before the preliminary results; and (2) Amanda Foods was diligent in correcting the omission, once it discovered it. *Grobest & I-Mei Indus. (Vietnam) Co.,* 815 F. Supp. 2d at 1367. The *Grobest* court cited concerns that the margin assigned to Amanda Foods was inaccurate and disproportionate, there was little concern about finality because the submission was filed early in the proceeding, and the burden on Commerce to accept the late filing was minimal. *Id.* None of the foregoing statutory principles that Commerce must take into account regarding the conduct of its proceedings, including principles of accuracy and fairness, have changed.

**6.   Commerce Erred in Failing to Address Celik Halat's Argument That It Can Use The Government Of Turkey's Response As Facts Available Information**

Assuming arguendo that Commerce was not required to provide Celik Halat an opportunity to remedy the untimely filing, or that Commerce properly rejected Celik Halat's untimely filing, there was sufficient record information for Commerce to reach a neutral available facts determination.   Under 19 U.S.C. § 1677e, the Department may make determinations using facts otherwise available if the necessary information is not available on the record or an interested party withholds information requested by the Department, fails to provide information by deadlines, significantly impedes a proceeding or provides information that cannot be verified. Here, there was sufficient information for Commerce to calculate Celik Halat's CVD margin using information provided by the Government of Turkey.

Commerce asked the Government of Turkey virtually the same questions about Celik Halat's use of the various programs considered in the investigation. *See Response of the Government of Turkey Initial Questionnaire* (CR118-125/ PR182-189). The GOT's response contains details about which programs Celik Halat participated in and how much benefit Celik Halat received under those programs. *Id.* As Celik Halat established in its case brief, if Commerce had used the GOT's information, the maximum facts available rate or even adverse facts available date that should be assigned to Celik Halat is no more than 18.48 percent. *Celik Halat Case Brief* at 13, Exhibit 1 (CR 253/ PR 358). In fact, Exhibit 1 to Celik Halat's case brief contains portions where adverse facts available was applied where information was missing due to the rejected response. *Id.* at Exhibit 1 (CR 253/ PR 358). Applying the GOT's response would have allowed a much more reasonable and record supported rate.

However, Commerce did not address Celik Halat's case brief arguments in the *Final Determination*, stating conclusorily that "we also disagree with Celik Halat that it is appropriate to use information from the GOT." *Decision Memo* at 37 (PR 370). Commerce states that in the "absence of necessary information from cooperative respondents, {it} is seeking to find a rate that is a relevant indicator of how much the government of the country under investigation is likely to subsidize the industry at issue…" Commerce improperly disregarded the GOT record information in the investigation. *Preliminary Decision Memo* at 12 (PR 253). The GOT's responses could have served as a reasonable proxy for Celik Halat's CVD margin.

### VIII.    CONCLUSION

For the foregoing reasons, Celik Halat respectfully requests this Court to grant Plaintiff's Motion for Judgment, set aside the *Final Determination* with respect to Celik Halat, and remand the *Final Determination* back to Commerce for a new decision that is supported by substantial evidence and in accordance with law.    Specifically, this Court should direct Commerce to reopen the CVD investigation with regard to Celik Halat, accept for filing and place on the record Plaintiff Celik Halat's Section III questionnaire responses; and calculate a new CVD rate for Celik Halat.

Respectfully submitted,

/s/Irene H. Chen
Irene H. Chen
CHEN LAW GROUP, LLC.
200-A Monroe St., Ste. 100
Rockville, MD 20850
Tel: (301) 760-7393
Email: irene@chenlawgroup.com

Date: May 28, 2021                    *Counsel to Plaintiff Celik Halat ve Tel Sanayi A.S.*

PUBLIC VERSION

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the guidelines set forth in the Standard Chambers Procedures. The brief contains **13,515** words on numbered pages (that is, excluding only the Cover Page, the Table of Contents, and the Table of Authorities, the signature block, and the present certificate).

2. This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 12-point font.


Dated: May 28, 2021                          /s/ Irene H. Chen
                                             Irene H. Chen

                                             *Counsel to Plaintiff Celik Halat ve Tel Sanayi A.S.*