**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE**

| | |
|---|---|
| **CELIK HALAT VE TEL SANAYI A.S.** | |
| **Plaintiff,** | |
| **v.** | |
| **UNITED STATES,** | |
| **Defendant.** | **Court No. 21-00050** |
| **and** | **PUBLIC VERSION** <br> (confidential information deleted on pp. 1, 12-13, and 16) |
| **INSTEEL WIRE PRODUCTS COMPANY, SUMIDEN WIRE PRODUCTS CORPORATION, AND WIRE MESH CORP.** | |
| **Defendant-Intervenors.** | |

**REPLY BRIEF OF PLAINTIFF CELIK HALAT VE TEL SANAYI A.S.**

Irene H. Chen
CHEN LAW GROUP, LLC.
200-A Monroe St., Ste. 100
Rockville, MD 20850
Tel (301) 760-7393

August 24, 2021                    *Counsel to Plaintiff Celik Halat ve Tel Sanayi A.S.*

i

PUBLIC VERSION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................... 1

II.   ARGUMENT ...................................................................................................................... 3

   A.   COMMERCE ABUSED ITS DISCRETION IN REJECTING CELIK HALAT'S QUESTIONNAIRE RESPONSE BASED ON AN 87-MINUTE FILING DELAY OF THE FINAL BPI AND REDACTED VERSIONS ............................................................................... 3

     1.   Judicial Precedent Does Not Support Commerce's Position that it has Discretion to Reject Any Untimely Filing, Regardless of the Length of the Delay .................................... 5

     2.   Commerce's Decision to Reject Celik Halat Section III Questionnaire Response was Not Supported by Substantial Evidence and was Arbitrary and Capricious ........................ 12

     3.   Commerce's Inconsistent Treatment of Celik Halat's Untimely Filing When it Has Granted Extensions for Other Minor Errors is Arbitrary and Capricious ............................ 13

   B.   COMMERCE'S APPLICATION OF TOTAL ADVERSE FACTS AVAILABLE AGAINST CELIK HALAT IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE OR IN ACCORDANCE WITH LAW ............................................................................................... 16

     1.   Commerce is Engaged in Impermissible Post-Hoc Rationalizations ........................... 19

     2.   Commerce failed to Provide Celik Halat a Statutorily Required Opportunity to Remedy the Untimely Filed Exhibit ............................................................................................... 20

     3.   Celik Halat Did Exhaust Its Administrative Remedies ................................................ 21

III.  CONCLUSION ................................................................................................................. 23

PUBLIC VERSION

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Al Tech Specialty Steel Corp. v. United States*, 20 Ct. Int'l Trade 1344, 947 F. Supp. 510 (1996) ........................................................................................................................................... 20

*ArcelorMittal USA LLC v. United States*, 399 F. Supp. 3d 1271 (Ct. Int'l Trade 2019) ............... 7

*Artisan Mfg. Corp. v. United States*, 978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014) ..................... 11

*Bebitz Flanges Works Private Ltd. v. United States*, 433 F. Supp. 3d 1297 (Ct. Int'l Trade 2020) ..................................................................................................................................... 18, 19

*BMW of N. Am. LLC v. United States*, 926 F.3d 1291 (Fed. Cir. 2019) ...................................... 18

*Bosun Tools Co. v. United States*, 405 F. Supp. 3d 1359 (Ct. Int'l Trade 2019) .......................... 6

*Celik Halat ve Tel Sanayi A.S. v. United States*, 483 F. Supp. 3d 1370 (Ct. Int'l Trade 2020) 4, 15

*China Kingdom Import & Export Co., Ltd. v. United States*, 507 F. Supp. 2d 1337 (Ct. Int'l Trade 2007) ..................................................................................................................... 21

*Diamond Sawblades Mfrs. Coalition v. United States*, 986 F.3d 1351 (Fed. Cir. 2021) ............. 21

*Dongtai Peak Honey Indus. v. United States*, 777 F.3d 1343 (Fed. Cir. 2015) ........................ 8, 9

*Ferrostaal Metals Gmbh v. United States*, No. 20-00018, 2021 Ct. Int'l. Trade LEXIS 54 (Ct. Int'l Trade May 4, 2021) ............................................................................................. 21

*Fine Furniture (Shanghai) Ltd. v. United States*, 865 F. Supp. 2d 1254 (Ct. Int'l Trade 2012) .. 11

*Hiep Thanh Seafood Joint Stock Co. v. United States*, 34 Ct. Int'l Trade 1428, 752 F. Supp. 2d 1330 (2010) .................................................................................................................... 19

*Hyosung Corp. v. United States*, 35 Ct. Int'l Trade 343 (Ct. Int'l Trade 2011) ........................... 8

*Itochu Building Products v. United States*, 733 F. 3d 1140 (Fed. Cir. 2013) .............................. 22

*MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ...................... 4

*Mannesmannrohren-Werke AG & Mannesmann Pipe & Steep Corp. v. United States*, 77 F. Supp. 2d 1302 (Ct. Int'l Trade 1999) ........................................................................................ 17

*Maui Pineapple Co. v. United States*, 27 Ct. Int'l Trade 580, 264 F. Supp. 2d 1244 (2003) ........ 9

*Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375 (Fed. Cir. 2008) ......................... 22

*Nippon Steel Corp. v. United States*, 24 Ct. Int'l Trade 1158, 118 F. Supp. 2d 1366 (2000) 17, 18

*NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995) .......................................... 11

*Pro-Team Coil Nail Enterprise, Inc. v. United States*, 419 F. Supp. 3d 1319 (Ct. Int'l Trade 2019) ................................................................................................................................ 10, 11

*PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751 (Fed. Cir. 2012) .......................... 6, 7

*Seah Steel Vina Corp. v. United States*, 182 F. Supp. 3d 1316 (Ct. Int'l Trade 2016) ............... 15

*Shelter Forest Int'l Acquisition, Inc. v. United States*, 497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021) ............................................................................................................................... 9, 21

*Stupp Corp. v. United States*, Ct No. 2020-1857, 2021 U.S. App. LEXIS 20984 (Fed. Cir. July 15, 2021) ............................................................................................................................. 7

*Timken Co. v. United States*, 894 F.2d 385 (1990) .................................................................. 7, 19

*U.S. Magnesium LLC v. United States*, 895 F. Supp. 2d 1319 (Ct. Int'l Trade 2013) ................. 11

*Yantai Timken Co. v. United States*, 31 Ct. Int'l Trade 1741, 521 F. Supp. 2d 1356 (2007) ........ 7

**Statutes**

19 U.S.C. § 1677m(e) ........................................................................................................... 20, 21

19 U.S.C. §1677m(d) ............................................................................................................. passim

PUBLIC VERSION

**Administrative Decisions**

*Certain Hot-Rolled Carbon Steel Flat Products from Ukraine*, 66 Fed. Reg. 50,401 (Dep't of
    Commerce Oct. 3, 2001).......................................................................................... 14

*Prestressed Concrete Steel Wire Strand From the Republic of Turkey: Final Affirmative
    Countervailing Duty Determination and Final Negative Critical Circumstances
    Determination*, 85 Fed. Reg. 80005 (Dec. 11, 2020)................................................ 2

*Wooden Bedroom Furniture from the People's Republic of China*, 69 Fed. Reg. 67,313 (Dep't of
Commerce Nov. 17, 2004).......................................................................................... 15

**Administrative Regulations**

19 C.F.R. § 351.301.................................................................................................. 8, 10
19 C.F.R. § 351.302.................................................................................................... 10

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Celik Halat ve Tel Sanayi A.S. ("Celik Halat") respectfully submits this reply brief to the briefs in opposition filed by Defendant, the United States, ("Defendant" or "Commerce") and Defendant-Intervenors, Insteel Wire Products Company, Sumiden Wire Products Corporation, and Wire Mesh Corp. ("Defendant-Intervenors") regarding the final determination of the United States Department of Commerce ("Commerce") in the countervailing duty investigation of Prestressed Concrete Steel Wire Strand from the Republic of Turkey.

This case is about the circumstances where counsel timely filed a complete BPI response, had emergency medical procedures, and [                                          ] when the time came for filing the final BPI and public versions of the Section III response. In the [                                          ], counsel set alarms to wake him to file the final BPI and public versions – but counsel inadvertently did not account for the different time zones. Commerce severely abused its discretion by rejecting the filing when it should have acknowledged the timely BPI filing and simply been understanding of counsel's medical emergency, as it has done with past cases. While it may have been indifferent to counsel's medical circumstances, Commerce's callous approach is not permitted under the law, and Defendant should be rebuked for this miscarriage of justice.

Commerce and Defendant-Intervenors' arguments in opposition are unfounded and should be rejected. Plaintiff is not contending that Commerce has no discretion to set and enforce deadlines. What Plaintiff challenges is Commerce's position that it may reject any untimely submission, regardless of the length of the delay. The Courts have prohibited Commerce's imposition of a rigid rule with regard to deadlines that are not prescribed by statute, instead

PUBLIC VERSION

requiring Commerce to balance the interests of accuracy and fairness over burden to the agency and finality.

The balancing of interests establish that Commerce should have accepted Celik Halat's Section III response. The facts show that the unredacted version of Celik Halat's questionnaire response was timely filed the previous business day, the delay in filing the final BPI and public version was only 87 minutes after working hours, and Commerce lost no working time in the investigation. The facts also demonstrate that the delay was excusable due to counsel's medical circumstances. Compared with the complete lack of burden to Commerce in accepting the filing, the consequences of the rejection were severe, resulting in a 158.44 percent adverse facts available rate assigned to Celik Halat.

Commerce does not deny its obligation to balance interests. But Commerce does not acknowledge that those interests were never addressed in the Final Determination. Commerce and Defendant-Intervenors also avoid any direct discussion of the 87-minute delay in filing the final redacted version or that Celik Halat had timely filed the unredacted version by the August 7, 2020 deadline. Their silence is telling because there is no conceivable way that an 87-minute delay in the filing of the final redacted version after business hours could have impeded Commerce's ability to comply with its statutory obligations in any way. Nor did Commerce identify any such harm in the *Final Determination. See Prestressed Concrete Steel Wire Strand From the Republic of Turkey: Final Affirmative Countervailing Duty Determination and Final Negative Critical Circumstances Determination*, 85 Fed. Reg. 80005 (Dec. 11, 2020) ("*Final Determination*") (PR 376) and accompanying Issues and Decision Memorandum ("*Decision Memo*") (PR 370-372 / CR 256-258).

Contrary to erroneous assumption, Celik Halat timely filed the unredacted version on

August 7, 2020 and Commerce had all of the substantive information available to it on time. Commerce and Defendant-Intervenors' attempts to portray Celik Halat's filing as a wholesale failure to file the entire response on time is not accurate.

Commerce's actions in rejecting Celik Halat's Section III response based on lack of extraordinary circumstances was arbitrary and capricious. Commerce contends that Celik Halat did not demonstrate "extraordinary circumstances." But in the *Final Determination,* Commerce failed to address the specific cases cited by Celik Halat where it granted other respondents out of time extensions for similar medical circumstances as well as minor errors of counsel. Commerce also has no explanation for why it has treated Celik Halat differently and more harshly than petitioners and other respondents that have made untimely filings of entire responses due to minor errors.

Finally, Commerce's application of adverse facts available is not supported by substantial evidence or in accordance with law. Contrary to Commerce's arguments, it is required to provide Plaintiff with the opportunity to remedy the deficiency prior to application of adverse facts available. Commerce failed to reasonably explain, based on the medical circumstances of counsel and the 87-minute delay in filing the final redacted responses, how Celik Halat failed to cooperate to the best of its ability in this case and why AFA was warranted.

## II.   ARGUMENT

### A. COMMERCE ABUSED ITS DISCRETION IN REJECTING CELIK HALAT'S QUESTIONNAIRE RESPONSE BASED ON AN 87-MINUTE FILING DELAY OF THE FINAL BPI AND REDACTED VERSIONS

Commerce abused its discretion in rejecting Celik Halat's Section III questionnaire response based on an 87-minute delay in the filing of the final BPI and public responses. Commerce contends that its decision to reject Celik Halat's Section III questionnaire response

was not an abuse of discretion because it was supported by reasoned explanation. However, Commerce's explanation is not reasoned because it did not address why burden and finality issues in accepting a response based on an 87-minute delay outweighed fairness and accuracy issues in this case.

Defendant-Intervenors argue that accepting Celik Halat's 87-minute late filing would have created a burden on Commerce. *Def-Int. Br.* at 27-28. The Court should reject Defendant-Intervenors' arguments as impermissible *post hoc* rationalization, given that Commerce never stated as such in the *Final Determination*, and that such a conclusion is unreasonable given the facts in the case.

According to Commerce, it has "broad discretion" to enforce its deadlines and that it must be able to enforce those deadlines in order to fulfill its mandate to administer the CVD laws. *DOC Br.* at 6. Commerce contends that it may strictly enforce time limits and other requirements if it provides a "reasoned explanation for its decision." *DOC Br.* at 7. Defendant-Intervenors contend that Commerce's regulation requires that all untimely submissions be rejected except in extraordinary circumstances. *Def-Int. Br.* at 13.

Commerce and Defendant-Intervenors are incorrect that the agency's discretion is unfettered. The courts have repeatedly held that Commerce must consider accuracy and burden concerns in weighing whether to reject untimely filings. *See e.g. Celik Halat ve Tel Sanayi A.S. v. United States*, 483 F. Supp. 3d 1370, 1379 (Ct. Int'l Trade 2020) ("Commerce abuses its discretion when it rejects information that would not be burdensome to incorporate and which would increase the accuracy of the calculated subsidy rate"); *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355-56 (Ct. Int'l Trade 2015) ("Commerce's discretion "is bounded at the outer limits by obligation to carry out its statutory duty of 'determining

4

dumping margins "as accurately as possible"'"").

Moreover, Commerce did not provide a reasoned explanation in the *Final Determination*. The facts show that the interests of accuracy and fairness weighed heavily in Plaintiff's favor. Here, the difference between the Petition AFA rate assigned to Celik Halat, *i.e.,* 158.44 percent, and the *de minimis* rate it was denied the opportunity to establish as the actual CVD rate was substantial. This is compared with the lack of any burden on Commerce in accepting the final BPI and public questionnaire response, filed 87 minutes late after working hours, when it already had the timely filed business proprietary version. Commerce lost no time and incurred no burden.

Instead of addressing the balancing of interests and despite the record evidence regarding counsel's emergency medical circumstances, Commerce devoted its discussion to its claim that Celik Halat did not demonstrate "extraordinary circumstances." *Decision Memo* at 34-36 (PR 370). While Commerce may insist on perfection from respondents, judicial precedent does not. In light of the minimal delay, lack of burden, and the disproportionate impact to Celik Halat, Commerce's actions were an unreasonable judgment and abuse of discretion.

## 1. Judicial Precedent Does Not Support Commerce's Position that it has Discretion to Reject Any Untimely Filing, Regardless of the Length of the Delay

Judicial precedent does not support Commerce's decision to reject Celik Halat's Section III questionnaire response. Case law firmly supports Celik Halat's arguments that Commerce is prohibited from taking an inflexible approach to untimely submissions with deadlines that are not dictated by statute.

Commerce contends in conclusory fashion that "reasonableness and fairness considerations do not require Commerce to accept Celik Halat's late response." *DOC Br.* at 12. Commerce cites a number of cases that it contends supports its decision to reject Celik Halat's

entire Section III questionnaire response based on the 87-minute delay in filing the final BPI and public response. But all of the cases cited by Commerce are factually inapposite, involving far lengthier delays, agency burden, and finality issues. These cases hold that Commerce must weigh the interests of accuracy and fairness over finality and burden, which the agency did not do in this case.

Celik Halat cited *Bosun Tools Co. v. United States*, 405 F. Supp. 3d 1359, 1367 (Ct. Int'l Trade 2019) for the proposition that Commerce abused its discretion when it removed a timely filed unredacted response, based on the respondent's attempt to refile a redacted response two days after the deadline. Commerce erroneously argues that *Bosun Tools* is factually distinguishable. In fact, *Bosun Tools* is directly on point. *DOC Br.* at 12. In *Bosun Tools,* this Court found that Commerce abused its discretion by rejecting Chengdu's attempt to re-file the redacted version of a document two days after it previously attempted to file on time but only uploaded in part. *Bosun Tools Co.*, 405 F. Supp. 3d at 1365. The Court in *Bosun Tools* held that Commerce had not explained how it would be burdensome to incorporate the information proffered and that there was no indication that Commerce's review would be infringed in any meaningful way. *Id.* Defendant-Intervenors are simply wrong in contending that this case is distinguishable because Celik Halat did not attempt to file the response by 5:00 p.m. and it was "precisely respondent's actions that caused the delay." *Def-Int Br.* at 17-18. Celik Halat did attempt to file by 5:00 p.m. but due to medical circumstances mistakenly filed the redacted version 87 minutes late.

Commerce's reliance on *PSC VSMPO* for the proposition that reasonableness and fairness considerations do not require it to accept Celik Halat's response is also misplaced. In *PSC VSMPO,* the facts involved a late filed affidavit that was due September 17, 2007, per the

6

Department's new factual information deadlines, but was actually filed by the respondent on June 11, 2008, *i.e.*, 268 days late. *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 757-758 (Fed. Cir. 2012). That does not compare with the delay in this case, *i.e.*, 87 minutes.

The case of *ArcelorMittal USA LLC v. United* States, which Commerce relied on for the proposition that strict enforcement of time limits is acceptable is also factually distinguishable. *DOC Br.* at 16. In *ArcelorMittal,* Commerce had only about two weeks after the deadline for comments on the remand results before it was required to file the *Remand Redetermination* with this court. *ArcelorMittal USA LLC v. United States*, 399 F. Supp. 3d 1271, 1282 (Ct. Int'l Trade 2019). NLMK did not submit timely comments, instead submitting one week late an untimely request for an extension of time to submit draft remand comments, which consumed one (1) week of the two weeks that Commerce had to prepare the remand. *Id.* at 1275. By contrast, despite the 87 minute late filing, Commerce had the same number of days (i.e. 36 days) prior to the Preliminary Determination

Contrary to Commerce's claims, *Yantai Timken Co. v. United States* does not excuse its rejection of an 87-minute late filing. 31 Ct. Int'l Trade 1741, 521 F. Supp. 2d 1356 (2007); *DOC Br.* at 7. In *Yantai Timken,* the deadline for submitting new factual information was October 18, 2004. *Id.* at 1371. Plaintiffs, however, sought to submit new factual information nine months after the deadline, i.e., in August 2005. *Id.* at 1361. The Court noted the deadline to submit new factual information had long passed, the verification had taken place and the *Preliminary Results* had been issued. *Id.* at 1372. Moreover, Yantai had already submitted submit responses to Commerce's original questionnaire and to Commerce's six supplemental questionnaires. *Id.*

The case of *Stupp Corp. v. United States*, Ct No. 2020-1857, 2021 U.S. App. LEXIS 20984 (Fed. Cir. July 15, 2021), which Commerce relied on in arguing that it has broad

PUBLIC VERSION

discretion to enforce deadlines, is also factually inapposite. *DOC Br.* at 7. In *Stupp*, the respondent SeAH submitted its case brief which contained untimely factual information on September 1, 2015, more than three months after the Department issued its Preliminary Determination. *Id.* at *10-11. By contrast, Celik Halat's response was submitted 36 days prior to the preliminary determination.

Commerce cited *Hyosung Corp. v. United States*, 35 Ct. Int'l Trade 343 (Ct. Int'l Trade 2011) for its incorrect argument that reasonableness and accuracy do not require it to accept Celik Halat's response. *DOC Br.* at 12. In *Hyosung,* the Court upheld Commerce's rejection of Hyosung's untimely submission because Hyosung submitted its response on October 1, 2009, "more than four months after the May 18, 2009 deadline, more than two months after the regulatory deadline (July 18, 2009) for respondents to submit new factual information in an administrative review for purposes of issuing the final results in accordance with 19 C.F.R. § 351.301(b)(2), and a week after the publication of the *Preliminary Results.*" *Id.* at 347. In contrast, here Celik Halat submitted the final response 87 minutes after the deadline.

Contrary to Commerce's claims, the case of *Dongtai Peak Honey Indus. Co. v. United States* supports Celik Halat's argument that Commerce did not provide a reasoned explanation for its rejection of an 87-minute late response in this case. *DOC Br.* at 15-16 (citing *Dongtai Peak Honey Indus. v. United States*, 777 F.3d 1343 (Fed. Cir. 2015) ("*Dongtai II*"). Dongtai Peak failed to submit its response to a supplemental questionnaire by the April 17, 2012 deadline, instead filing two untimely extension requests to extend the deadline, citing an overlapping deadline to file other responses, a national holiday, and other issues. *Id.* at 1347. On April 27, 2012, Dongtai Peak submitted its Supplemental Questionnaire response without Commerce having granted the two extension requests. *Id.* On May 22, 2012, Commerce denied

Dongtai Peak's extension requests because it found no good cause and it noted that Dongtai Peak had previously been cautioned regarding late extension requests. *Id.* The Court upheld Commerce's rejection because Commerce had explained that the deadline was significant due to Dongtai Peak's non-bona fide U.S. sales in prior reviews, and the need for a full analysis of the information in the Supplemental Questionnaire. *Id*. at 1352. By contrast, here Commerce provided no explanation of why the deadline was significant or why an 87-minute delay would impose a burden on the agency.

Commerce cites *Maui Pineapple* for the proposition that in order "to fulfill its mandate to administer the CVD laws, the agency must be permitted to enforce its deadlines." *See DOC Br.* at 7. However, in *Maui Pineapple*, Commerce decided to accept respondent's minor corrections after the filing deadline, which plaintiff subsequently challenged in an appeal. *Maui Pineapple Co. v. United States*, 27 Ct. Int'l Trade 580, 600, 264 F. Supp. 2d 1244, 1261 (2003). The Court rejected Plaintiff's arguments and held that by accepting the corrections, Commerce avoided the use of a high and inaccurate dumping margin. *Id.* at 1261. *Maui* supports Celik Halat's argument that accuracy favors Commerce's acceptance of its Section III response.

Celik Halat demonstrated in its opening brief that per the Court's ruling in *Shelter Forest*, Commerce was obligated to waive its deadline in appropriate circumstances. *Shelter Forest Int'l Acquisition, Inc. v. United States*, 497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021). Commerce argues that *Shelter Forest* is distinguishable because the untimely submission at issue was the result of Commerce's failure to notify respondent of the deficiencies in its original, timely submissions. *DOC Br.* at 9. However, Commerce misses the point. The Court concluded that Commerce abused its discretion in rejecting Shelter Forest's submission regarding glue content because it had not provided the respondent with the required notice of deficiency regarding its glue

PUBLIC VERSION

evidence. The Court held that Commerce could not use the extension regulation (19 C.F.R. § 351.301 and § 351.302) "to discharge Commerce of its obligation to notify respondents of deficiencies in submissions under §1677m(d) and then allow Commerce to claim attempts to correct those deficiencies are untimely." *Id.* at 1401. Citing the importance of the rejected information, the Court held that any burden imposed on Commerce in reviewing the submission was minimal and its decision to reject it was an abuse of discretion, likely with "an inaccurate and punitive result." *Id.* at 1402.

Celik Halat pointed to *Pro-Team Coil Nail Enter. V. United States*, 419 F. Supp. 3d 1319, 1331 (Ct. Int'l Trade 2019), for the proposition that Commerce may not apply an inflexible approach to untimely filings. Commerce claims that *Pro-Team* is distinguishable because Commerce had not rejected Pro-Team's Q&V schedule on the basis that it contained untimely filed factual information. *DOC Br.* at 11. Commerce fails to address that it had disregarded Pro-Team's Q&V Schedule because it was submitted seven days after the deadline for its second supplemental questionnaire response and was not submitted in the form and manner requested. *Id.* at 1331. The Court held that there were no finality concerns because the Q&V schedule was submitted before the Preliminary Results and accuracy concerns favor accepting the Q&V Schedule for the purpose of determining Pro-Team's antidumping duty rate. *Id.* at 1332-1333. Moreover, the Court stated that Commerce's reliance on the untimeliness of Pro-Team's filing to disregard the information contained therein was an abuse of discretion and that the statute does not require perfection and recognizes that mistakes sometimes occur. *Id.* at 1333.

Defendant-Intervenors' contention that other cases Celik Halat cites to demonstrate that Commerce cannot apply a rigid rule to all untimely submissions not applicable because they involve the correction of "narrow, *corrective* information" misses the point. *Def. Int. Br.* at 17.

The cases of *U.S. Magnesium LLC v. United States*, 895 F. Supp. 2d 1319 (Ct. Int'l Trade 2013), *Pro-Team Coil Nail Enterprise, Inc. v. United States*, 419 F. Supp. 3d 1319 (Ct. Int'l Trade 2019), *Fine Furniture (Shanghai) Ltd. v. United States*, 865 F. Supp. 2d 1254 (Ct. Int'l Trade 2012), and *NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995), all stand for the proposition that Commerce's discretion in rejecting untimely submissions is not absolute. There is no language in any of these cases that grants Commerce absolute discretion in the case of late filed questionnaire responses. Defendant-Intervenors have not cited any cases that limits the acceptance of untimely responses to narrow corrective information.

Defendant-Intervenors' attempts to distinguish the court's holding in *Artisan* are also unavailing. *Def-Int. Br.* at 32-33. As Celik Halat explained in its opening brief, the key premise of the Court's holding in *Artisan* was that Commerce imposed a disproportionate response by rejecting the respondent's separate rate application and imposing AFA for a relatively minor compliance error, i.e., the late filing of a Q&V response that was not even one working hour late. *Celik Opening Br*. at 20-21 (*citing Artisan Mfg. Corp. v. United States*, 978 F. Supp. 2d 1334, 1344 (Ct. Int'l Trade 2014)). As in this case, the Court in *Artisan* concluded that the record did not support a conclusion that the brief delay in the availability of the Q&V questionnaire would have resulted in any delay in the investigation. *Artisan Mfg. Corp.*, 978 F. Supp. 2d at 1347. The Court also concluded that the consequences of the unexcused late filing was "particularly severe" for an inadvertent mistake by Plaintiff's counsel. *Id.*

As established in our opening brief, Commerce does not have unfettered discretion in the administration of its proceedings. *Celik Opening Br*. at 16. Commerce contends that it reasonably rejected Celik Halat's response in its entirety because its deadlines are "to allow the agency to analyze and verify such information within the statutorily mandated timeframe for completing an

investigation." *DOC Br.* at 8. Commerce could not have lost any time of its statutorily mandated timeframe for its investigation, when it already had Celik Halat's entire filing, with the final BPI and public versions of the response filed just 87 minutes after the bracketing deadline and before the start of the following business day. *Celik Opening Br.* at 22. In the *Final Determination,* Commerce did not allude to or cite any difficulties or burden it would have encountered had it accepted the 87-minute late filing. *Decision Memo* (PR 370).

### 2. Commerce's Decision to Reject Celik Halat Section III Questionnaire Response was Not Supported by Substantial Evidence and was Arbitrary and Capricious

Commerce's decision to reject Celik Halat's Section III questionnaire response was not supported by substantial evidence and - as arbitrary and capricious – was not in accordance with law. Celik Halat established in the opening brief that the extraordinary case of medical circumstances – [                                    ] - caused Celik Halat to miss the filing deadline by less than two hours. *Celik Opening Br.* at 32. Commerce calls the argument that counsel's medical condition was the cause of the untimely submission as "unsupported by the facts." *DOC Br.* at 14. But Commerce did not reasonably address the record evidence.

Celik Halat's counsel took all reasonable precautions to file the final BPI and public versions of the Section III response by 5:00 p.m. ET on August 10, 2020, but due to medical circumstances, the final BPI and public responses were filed 87 minutes late. Under [                                    ], although counsel set alarms to make the timely filing, the alarms were inadvertently set to the wrong time. *Celik Opening Br.* at 32. Counsel promptly filed after the alarms, not realizing in the [                    ] the time-zone difference. *Id*.

Celik Halat established in its opening brief that Commerce failed to provide a reasoned explanation for its decision. *Celik Opening Br.* at 28. Commerce insists that it "provided a

PUBLIC VERSION

reasoned explanation for rejecting Celik Halat's untimely filed response, namely that Celik Halat's late filing was "entirely of its own making" and not due to an "unexpected event" or an "extraordinary circumstance." *DOC Br.* at 7-8. Commerce blames Celik Halat's counsel for choosing "to set the alarms for late in the day – what he thought was an hour before the filing deadline – rather than at an earlier time that would ensure a timely filing." *DOC Br.* at 8.

Commerce's explanation is not reasonable given the facts of the case. The manner in which Commerce characterizes the late filing is that it was late due to a mistake or inadvertence of counsel. However, the facts demonstrate that counsel's medical condition was the cause of counsel's wrong setting of the alarm clocks. The undisputed record evidence is that counsel had undergone emergency surgery, and was [                                                       ] immediately prior to and at the time of the filing deadline. As a result, counsel had to [

                                                                              ]. While counsel took reasonable precautions by setting two alarm clocks to awaken in time for the filing on August 10, 2020, the [                                                                    ] caused counsel to set the alarm clocks at the wrong time. Commerce conclusorily alleges that "plaintiff's failure was not the result of a medical emergency or counsel's medical situation, but inattentiveness – setting the alarm for the wrong time." *DOC Br.* at 15 (citing *Decision Memo* at 36 (PR 370)). In reaching this conclusion, Commerce turned a blind eye to the record evidence regarding medical circumstances of Celik Halat's counsel and how that factored into the late setting of the alarm clocks.

**3.  Commerce's Inconsistent Treatment of Celik Halat's Untimely Filing When it Has Granted Extensions for Other Minor Errors is Arbitrary and Capricious**

Commerce's application of its extension regulation is arbitrary and capricious. In the

underlying investigation and again in its opening brief, Celik Halat demonstrated that

Commerce's actions are arbitrary and capricious, given that it has previously granted out of time

extension requests for cases involving similar medical circumstances as well as minor mistakes

of counsel. Commerce attempts to fault Celik Halat for not providing "further context" on these

cases. *DOC Br.* at 15. However, Commerce should be aware of the relevant information in its

own decisions. Further, in the *Final Determination,* Commerce cursorily acknowledges that

"there have been instances in prior cases (although not all) in which Commerce has accepted

certain late filings resulting from law firm mistakes." *Decision Memo* at 36 (PR 370). However,

Commerce is silent on why it was reasonable for it to reject Celik Halat's questionnaire response

despite the emergency medical circumstances of counsel, when it has granted other parties out of

time extensions for minor errors. In its response brief, Commerce also did not rebut the fact that

it granted Petitioners an out of time extension for the filing of new subsidy allegations, after

Petitioners filed its submission with typographical errors, which was subsequently rejected by

ACCESS. Commerce also did not dispute that it had granted an out of time extension to

Petitioners in the *Metal Lockers* investigation for a minor formatting issue. Because Commerce

did not address Celik Halat's arguments regarding these other cases, Commerce should be

deemed to have conceded those points.

Commerce claims that "Celik Halat fails to acknowledge that Commerce has consistently

rejected untimely filed submissions." *DOC Response Br.* at 16. However, Celik Halat has not

done so because Commerce has in fact accepted untimely filed submissions. *Celik Opening Br.*

at 35-36. Moreover, the cases cited by Commerce are not factually similar to the facts here. *See*

*Certain Hot-Rolled Carbon Steel Flat Products from Ukraine*, 66 Fed. Reg. 50,401, 50,401-

50402 (Dep't of Commerce Oct. 3, 2001) (Zaporizhstal filed three additional questionnaire

response submissions on June 28, June 29, and July 6, 2001, respectively, well past the deadline of May 18, 2001); *Wooden Bedroom Furniture from the People's Republic of China*, 69 Fed. Reg. 67,313, 67,320 (Dep't of Commerce Nov. 17, 2004) (Hong Yu's supplemental Section A questionnaire response was due on May 21, 2004, but was not received until June 8, 2004, and rejected as untimely).

Defendant-Intervenors incorrectly argue that the cases cited by Celik Halat did not demonstrate an agency practice and that Commerce's actions were arbitrary and capricious. *Def-Int. Br.* at 22. The cases that Celik Halat cited are not isolated incidents but rather a demonstrated practice of granting respondents out of time extensions for minor and inadvertent errors by counsel. Further, these cases establish that Commerce has treated Celik Halat inconsistently in these circumstances. The court may review Commerce's decision to ensure that it is not "treating similar situations in dissimilar ways." *Celik Halat ve Tel Sanayi A.S.*, 483 F. Supp. 3d at 1379 .

Defendant-Intervenors fail in their attempt to further explain Commerce's finding with regard to prior cases where Commerce has granted untimely extension requests for minor errors. Defendant-Intervenors' explanations are also impermissible *post hoc* rationalizations, and the court cannot rely on them for Commerce's decision. *Seah Steel Vina Corp. v. United States*, 182 F. Supp. 3d 1316, 1337 (Ct. Int'l Trade 2016).[1]

---

1 With regard to Celik Halat's allegation that Commerce accepted petitioners' untimely filing of new subsidy allegation information in the CVD investigation, Defendant-Intervenors claimed that they notified Commerce as soon as they received the email at 4:55 pm from ACCESS. However, there is no indication in the Commerce memo that this notification occurred prior to the 5:00 pm deadline. Defendant-Intervenors also did not submit a written extension request. *Def-Int. Br*. at 25-26. Commerce has not rebutted Plaintiff's arguments with regard to this case in its response brief. Accordingly, the Court should reject Defendant-Intervenors' *post-hoc* out of record rationalizations.

Defendant-Intervenors fault Celik Halat for filing an untimely extension request 10 days

after its untimely filing and one day after Commerce rejected its response as untimely." *Def-Int*

*Br.* at 19. However, Commerce never raised the issue of filing an untimely extension request in

the *Final Determination*, and Celik Halat's counsel explained that he was not even aware that the

filing was late.[2]  In addition to being irrelevant, Defendant-Intervenors' arguments are

impermissible *post-hoc* rationalization and should be rejected by the Court.

Finally, Defendant-Intervenors wrongly speculate about Celik Halat's counsel's

awareness of the time zone at his "home" in Utah and that he had "*three full days*" to complete

the final BPI and public submissions. *Def-Int Br.* at 20. Commerce never made these findings,

and this is impermissible *post-hoc* rationalization. *Seah Steel*, 182 F. Supp. 3d at 1337.

Furthermore, while putting their own speculative "spin" on the facts, Defendant-Intervenors fail

to acknowledge the evidence regarding the medical emergency of counsel or the [

                                                                              ] to meet Commerce's filing

deadlines.

**B.  COMMERCE'S APPLICATION OF TOTAL ADVERSE FACTS AVAILABLE
AGAINST CELIK HALAT IS NOT SUPPORTED BY SUBSTANTIAL
EVIDENCE OR IN ACCORDANCE WITH LAW**

Commerce's application of total adverse facts available to Celik Halat due to the

inadvertent late filing of the final BPI and public Section III questionnaire response was not

supported by substantial evidence or in accordance with law. There is no dispute that Celik Halat

---

2 Defendant-Intervenors are mistaken that Celik Halat "does not challenge the framework
established by Commerce's regulations." *Def-Int Br.* at 19, n.8. Celik Halat is challenging
Commerce's arbitrary and capricious actions in applying one interpretation of "extraordinary
circumstances" to Celik Halat while applying a more lenient interpretation of "extraordinary
circumstances" to other third parties, including petitioners.

timely filed its one-day lag BPI Section III questionnaire response by the August 7, 2020

deadline. The final BPI and public responses were filed 87 minutes late on the due date to

counsel's medical circumstances. Despite the minimal delay after working hours and that

Commerce had all of the substantive information by the deadline of August 7, 2020, Commerce

improperly applied adverse facts available to Celik Halat.

Commerce argues that Celik Halat failed to cooperate by not acting to the best of its

ability to meet the established deadline to submit its questionnaire responses. *See DOC Br.* at 18.

Commerce argues that Celik Halat "fully knew of its responsibilities to meet the established

deadline, but "failed to exert its maximum effort to submit its response in a timely manner."

*DOC Br.* at 19. Commerce cites only the untimely filing regarding Celik Halat's failure to exert

its maximum effort. This cursory rationale is insufficient for an adverse facts available finding.

*Nippon Steel Corp. v. United States*, 24 Ct. Int'l Trade 1158, 1170, 118 F. Supp. 2d 1366, 1377

(2000) ("Commerce must reach its finding through a reasoned inquiry into the facts. It is not

sufficient for Commerce to simply assert this legal standard of not acting to the best of one's

ability as its conclusion").

Commerce did not provide a reasoned explanation for its adverse facts available finding.

In order for its finding to be supported by substantial evidence, "Commerce needs to articulate

why it concluded that a party failed to act to the best of its ability, and explain why the absence

of this information is of significance to the progress of its investigation." *Id.* at 1378. Simple

inadvertence is insufficient for application of an adverse inference. *Mannesmannrohren-Werke*

*AG & Mannesmann Pipe & Steep Corp. v. United States*, 77 F. Supp. 2d 1302,1316 (Ct. Int'l

Trade 1999).

Moreover, Commerce may not draw an adverse inference based on a simple mistake, i.e.,

PUBLIC VERSION

the filing of the final BPI and public response 87 minutes after the deadline. "It is difficult to draw such an inference from a simple mistake. Second, in various ways the statute, regulations and Commerce's practices permit correction of simple errors." *Nippon Steel Corp.,* 118 F. Supp. 2d 1366 at 1378.

Commerce complains that Celik's challenge "fails to acknowledge Celik Halat's own burden to prepare and provide Commerce with an accurate submission by the prescribed deadline." *DOC Br.* at 20. Celik Halat did prepare and timely file a responsive submission. Only counsel's medical circumstances resulted in the final BPI and the redacted versions to be filed 87 minutes late. Commerce asserts that if Celik Halat had provided the response by the deadline, it could have "calculated a CVD rate." *DOC Br.* at 20. However, Commerce already had complete information with the timely-submitted bracketing-not-final BPI version, and Commerce is silent as to why it would have been unable to calculate a rate had it accepted the response.

Defendant-Intervenors argue that Commerce is not required to estimate the CVD margin had Celik Halat cooperated. *Def-Int Br.* at 29. But Defendant-Intervenors ignore Commerce's responsibility under section 1677e(d)(2) to assess the circumstances of the alleged failure to cooperate before determining the AFA rate, and thus cannot apply the most punitive AFA rates for something as minor as an 87-minute delay in filing the final BPI and redacted versions, as contrasted with the highest AFA rate for intentionally misrepresenting facts to Commerce. *BMW of N. Am. LLC v. United States*, 926 F.3d 1291, 1301 (Fed. Cir. 2019) (holding that appropriate AFA rate depends on particular facts and reflects seriousness of non-cooperating party's conduct).

Contrary to Defendant-Intervenors' contention, the case of *Bebitz Flanges*, which Defendant-Intervenors cite for the proposition that Commerce is not required to justify its

rejection of untimely submissions, is not factually analogous to this case. *Def-Int Br.* at 31-32. In *Bebitz Flanges,* the Court upheld Commerce's rejection of a supplemental response filed the following morning after the deadline, due to Bebitz having received multiple opportunities to provide the information in the late filed submission. *Bebitz Flanges Works Private Ltd. v. United States*, 433 F. Supp. 3d 1297, 1308 (Ct. Int'l Trade 2020). The Court held that Commerce had provided Bebitz an opportunity to remedy a deficient response, as provided in 19 U.S.C. § 1677m(d), via the issuance of the Supplemental Questionnaire, which satisfied that requirement. *Id.* at 1307. In contrast, Commerce did not give Celik Halat any such opportunity to remedy the deficiency.

### 1. Commerce is Engaged in Impermissible Post-Hoc Rationalizations

Commerce claims that Celik Halat's failure to submit its response by the established deadline "constitutes a 'reckless disregard for compliance standards.'" *DOC Br.* at 19. This argument should be rejected because Commerce never referred to Celik Halat's actions as "reckless" in the *Final Determination*. Commerce's claim now in its response brief that Celik Halat was "reckless" is impermissible *post-hoc* rationalization and cannot be considered by the Court.

A *post hoc* rationalization is an impermissible justification for a determination supplied by counsel for the Department in judicial proceedings. *Timken Co. v. United States*, 894 F.2d 385, 389 (1990) ("The first mention of these justifications appears in Commerce's appeal brief before the CIT. '{A}gency action cannot be sustained on *post hoc* rationalizations supplied during judicial review.'"); *Hiep Thanh Seafood Joint Stock Co. v. United States*, 34 Ct. Int'l Trade 1428, 1434, 752 F. Supp. 2d 1330, 1335-36 (2010) (refusing to affirm based on counsel's justification for Commerce's determination not articulated in final results).

Commerce's explanation does not mention or characterize Celik Halat's actions as a "reckless disregard for compliance standards." *Decision Memo* at 35-36 (PR370). Commerce's explanation focused on the lack of extraordinary circumstances demonstrated by Celik Halat. *Decision Memo* at 35-36 (PR 370). Accordingly, the Court cannot consider Commerce's *post hoc* claims. *Al Tech Specialty Steel Corp. v. United States*, 20 Ct. Int'l Trade 1344, 1347, 947 F. Supp. 510, 514 (1996) (evidence presented by Commerce amounts to post hoc rationalization which cannot support a finding for Commerce).

### 2. Commerce failed to Provide Celik Halat a Statutorily Required Opportunity to Remedy the Untimely Filed Exhibit

Commerce failed to provide Celik Halat the statutorily required opportunity to remedy the untimely filed final BPI and public versions of the response. 19 U.S.C. § 1677m(d) ("section 1677m(d)") governs the conduct by Commerce in the event of a deficient submission from a respondent. 19 U.S.C. § 1677m(d). Commerce argues that Celik Halat did not submit timely information or act to the best of its ability in accordance with 19 U.S.C. § 1677m(e)(4), so Commerce was not required to provide the company an opportunity to correct or explain deficiencies. *DOC Br.* at 21.

Commerce is incorrect. If Commerce determines that a submission is deficient, Commerce "shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits. . ." 19 U.S.C. § 1677m(d).

Subsection 1677m(d) states that, in certain circumstances involving a person's submission attempting to cure an earlier failure to "comply with {an information} request," if Commerce finds the submission "not satisfactory," it "may, subject to subsection (e), disregard

all or part of the original and subsequent responses." 19 U.S.C. § 1677m(d). *Diamond Sawblades Mfrs. Coalition v. United States*, 986 F.3d 1351, 1357 & footnote 2 (Fed. Cir. 2021). The purpose of section 1677m(d) is to provide a party that submitted a deficient response with an opportunity to correct the "deficiency," to the extent practicable. *See* 19 U.S.C. § 1677m(d). Nor does section 1677m(d) require that Commerce analyze section 1677m(e) before Commerce acts under section 1677m(d). *Ferrostaal Metals Gmbh v. United States*, No. 20-00018, 2021 Ct. Int'l. Trade LEXIS 54, at *15 (Ct. Int'l Trade May 4, 2021).

Commerce claims that *Shelter Forest* and *China Kingdom* are inapplicable, but its arguments are premised on its erroneous characterization of Section 1677m(d). *DOC Br.* at 22. In *Shelter Forest,* the Court found that Commerce abused its discretion by rejecting Shelter Forest's submission as untimely when it had not provided the required § 1677m(d) notice. *Shelter Forest*, 497 F. Supp. 3d at 1400. Similarly, in *China Kingdom Import & Export Co., Ltd. v. United States*, 507 F. Supp. 2d 1337(Ct. Int'l Trade 2007), the Court held that Commerce did not comply with 19 U.S.C. § 1677m(d) by rejecting deficiency submissions when the respondents discovered the deficiency and tried to correct it well before the preliminary determination. *Id.* at 1352.

Defendant-Intervenors claim that section 1677m(d) is not triggered because Celik Halat's submission was not timely filed. *Def-Int. Br.* at 35-36. This claim is wrong and misses the point. Celik Halat's initial bracketing-not-final BPI version was timely filed, and Commerce was obligated under section 1677m(d) to provide Celik Halat the opportunity to remedy any bracketing deficiency, or to accept Celik Halat's attempt to remedy that deficiency with its final BPI and public submissions 87 minutes late.

### 3. Celik Halat Did Exhaust Its Administrative Remedies

PUBLIC VERSION

Celik properly raised its argument about section 1677m(d). In its Request for Reconsideration and in Case Brief, Celik Halat made repeated requests to be given the opportunity to remedy the untimely filing by asking Commerce to accept the response. *Celik Halat Case Brief to Commerce* ("*CH Case Br.*") (PR 358 / CR 253-254). While Celik Halat may now have filled out the argument, the applicable law and the remedy sought are the same: the statutory right under section 1677m(d) to be given the opportunity to remedy a deficiency before application of adverse facts available.

Defendant-Intervenors claim that Celik Halat failed to exhaust its administrative remedies with regard to its section 1677m(d) arguments. *See Def-Int Br.* at 34. Commerce has not claimed that Celik Halat failed to exhaust its administrative remedies, instead addressing the substance of Celik Halat's arguments. Commerce has waived any claim that Plaintiff has failed to exhaust its administrative remedies, and the Court should reject Defendant-Intervenors' assertions.

The Federal Circuit considers a party's argument to be on the record before Commerce where a party has set forth its position in its comments before the agency. *Itochu Building Products v. United States*, 733 F. 3d 1140, 1146 (Fed. Cir. 2013). For exhaustion to be satisfied, a party is procedurally required to raise its objection at the time that Commerce is addressing the issue. *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1383-84 (Fed. Cir. 2008). In this case, Celik Halat exhausted its administrative remedies because it made its request evident to Commerce at the time that the agency could have determined to issue the deficiency request. *Itochu Building Products* 733 F. 3d at 1146-47. Notwithstanding the foregoing, the question of whether Commerce adopted an interpretation of 1677m(d) that is contrary to its very terms is a pure question of law that is not subject to administrative exhaustion requirements. The Federal

PUBLIC VERSION

Circuit has recognized the pure question of law exception to the exhaustion requirement where "statutory construction alone" is sufficient to resolve the merits of the argument. *See Agro Dutch Indus.*, 508 F.3d at 1029. Resolving this legal question would not involve further delving into the record or the requirement of additional information. *See China Kingdom Import & Export Co., Ltd.* 507 F. Supp. 2d at 1353-1354 ("statutory provision is so plain that statutory interpretation remains a *Chevron* step one analysis"). Commerce was on notice of Plaintiff's argument and the relief sought throughout the underlying investigation.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, and those stated in other papers filed herein, Plaintiff Celik Halat respectfully requests this Court to grant Plaintiff's Motion for Judgment on the Agency Record and to order the relief requested.

Respectfully submitted,

<u>/s/Irene H. Chen</u>
Irene H. Chen
CHEN LAW GROUP, LLC.
200-A Monroe St., Ste. 100
Rockville, MD 20850
Tel (301) 760-7393

Date: August 24, 2021                    *Counsel to Plaintiff Celik Halat ve Tel Sanayi A.S.*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the guidelines set forth in the Standard Chambers Procedures. The brief contains **6,961** words on numbered pages (that is, excluding only the Cover Page, the Table of Contents, and the Table of Authorities, the signature block, and the present certificate).

2. This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 12-point font.

Dated: August 24, 2021                         /s/ Irene H. Chen
                                               Irene H. Chen

                                               *Counsel to Plaintiff Celik Halat ve Tel Sanayi A.S.*