Slip Op. No. 22-13

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **CELIK HALAT VE TEL SANAYI A.S.,** | |
| Plaintiff, | |
| v. | |
| **UNITED STATES,** | **Before: Timothy C. Stanceu, Judge** |
| Defendant, | **Court No. 21-00050** |
| and | |
| **INSTEEL WIRE PRODUCTS COMPANY, SUMIDEN WIRE PRODUCTS CORPORATION, AND WIRE MESH CORP.,** | |
| Defendant-Intervenors. | |

## OPINION AND ORDER

[Granting plaintiff's motion for judgment on the agency record in an action contesting a final determination in a countervailing duty investigation.]

Dated: February 15, 2022

*Irene H. Chen*, Chen Law Group LLC, of Rockville, MD, for plaintiff Celik Halat ve Tel Sanayi A.S.

*Miles K. Karson*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant United States. With him on the submission were *Brian M. Boynton,* Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Tara K. Hogan*, Assistant Director. Of counsel on the submission was *Reza Karamloo*, Senior Counsel, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

*Kathleen W. Cannon*, Kelley Drye & Warren LLP, of Washington, DC, for defendant-intervenors Insteel Wire Products Company, Sumiden Wire Products Corporation, and Wire Mesh Corp. With her on the submission were *Paul C. Rosenthal*, *R. Alan Luberda*, *Brooke M. Ringel*, and *Joshua R. Morey*.

Stanceu, Judge: Plaintiff Celik Halat ve Tel Sanayi A.S. ("Celik Halat") contests a final determination by the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") in a countervailing duty ("CVD") investigation of certain prestressed concrete steel wire strand ("PC strand") from the Republic of Turkey ("Turkey"), and the associated countervailing duty order. Commerce determined an estimated net CVD subsidy rate of 158.44%, and imports of Celik Halat's merchandise are now subject to cash deposits at this *ad valorem* rate.

The high countervailing duty rate resulted from the Department's decision to reject, as untimely filed, Celik Halat's response to "Section III" of the Department's initial questionnaire ("Initial Questionnaire"), for an inadvertent filing error by Celik Halat's counsel. Although a version of the Initial Questionnaire response was timely filed on the due date, Celik Halat's counsel electronically filed the "final" business proprietary version, and the public version, of the document on the following business day, as the Department's regulations allowed, but counsel erroneously made the filing 87 minutes after the 5:00 p.m. filing deadline.

The court sets the contested determination aside because certain findings of fact on which Commerce relied, and which were essential to that determination, are not

supported by substantial evidence on the record and also because Commerce abused its

discretion when imposing a drastic and disproportionate penalty for a technical error

by plaintiff's counsel that had no appreciable effect on the investigation.  The court

remands the decision to Commerce for corrective action.

## I. BACKGROUND

### A.  The Contested Decision and the Countervailing Duty Order

The contested countervailing duty determination (the "Final Determination") is

*Prestressed Concrete Steel Wire Strand From the Republic of Turkey: Final Affirmative*

*Countervailing Duty Determination and Final Negative Critical Circumstances Determination*,

85 Fed. Reg. 80,005 (Int'l Trade Admin. Dec. 11, 2020) ("*Final Determination*").  The Final

Determination incorporates by reference an "Issues and Decision Memorandum"

containing explanatory discussion.  *Decision Memorandum for the Final Determination of*

*the Countervailing Duty Investigation of Prestressed Concrete Steel Wire Strand from the*

*Republic of Turkey* (Dec. 7, 2020) (P.R. Docs. 370–72) ("*Final I&D Mem.*").[1]

Commerce published the countervailing duty order (the "Order") on February 3,

2021.  *Prestressed Concrete Steel Wire Strand From the Republic of Turkey: Countervailing*

*Duty Order*, 86 Fed. Reg. 7,990 (Int'l Trade Admin.) ("*Order*").  The Order applies to

PC strand that is "produced from wire of non-stainless, non-galvanized steel."  *Id.* at

---

[1] All information disclosed in this Opinion and Order was obtained from the
public record.  Public documents in the administrative record are cited as "P.R.
Doc. __."

7,991.  PC strand "consists of multiple steel wires (non-stainless and non-galvanized) wound together to produce a strong, flexible product that is used to strengthen prestressed concrete structures."  *Prestressed Concrete Steel Wire Strand from Argentina, Colombia, Egypt, Indonesia, Italy, Malaysia, Netherlands, Saudi Arabia, South Africa, Spain, Taiwan, Tunisia, Turkey, Ukraine, and United Arab Emirates – Petition for the Imposition of Antidumping and Countervailing Duties* 12 (Apr. 16, 2020) (P.R. Docs. 1–10).

### B.  The Parties

Plaintiff is a Turkish producer and exporter of PC strand and was a mandatory respondent in the investigation that resulted in the Final Determination.  *See* Compl. ¶¶ 1, 3, 7 (Feb. 3, 2021), ECF No. 2.

Defendant is the United States.  Defendant-intervenors Insteel Wire Products Company, Sumiden Wire Products Corporation, and Wire Mesh Corp. are U.S. domestic producers of PC strand that were the petitioners in the countervailing duty investigation.  Consent Mot. to Intervene as of Right 2 (Feb. 25, 2021), ECF No. 8.

### C.  Proceedings Before Commerce and the International Trade Commission

On May 13, 2020, Commerce published an initiation notice for a countervailing duty investigation "to determine whether imports of PC strand from Turkey benefit from countervailable subsidies" conferred by the government of Turkey.  *Prestressed Concrete Steel Wire Strand From the Republic of Turkey: Initiation of Countervailing Duty Investigation*, 85 Fed. Reg. 28,610, 28,612 (Int'l Trade Admin.).

On June 4, 2020, Commerce selected Güney Çelik Hasir ve Demir and Hasçelik

Halat Sanayi Ticaret A.S. ("Hasçelik") as mandatory respondents for the countervailing

duty investigation. *Countervailing Duty Investigation of Prestressed Concrete Steel Wire*

*Strand from the Republic of Turkey: Respondent Selection* 2 (June 25, 2020) (P.R. Doc. 58)

("*Respondent Selection*"). Commerce sent an Initial Questionnaire to the Turkish

government on June 9, 2020, and requested that the government forward copies of the

Initial Questionnaire to the mandatory respondents. *Investigation of Prestressed Concrete*

*Steel Wire from the Republic of Turkey: Countervailing Duty Questionnaire* 1 (P.R. Doc. 49).

On June 25, 2020, Commerce revised its selection of mandatory respondents,

determining that Celik Halat would be the second mandatory respondent in the

investigation and suspending Hasçelik's obligation to participate. *Respondent Selection*

at 2, 5.

On August 5, 2020, the three petitioners submitted to Commerce "allegations of

possible new subsidies" alleged to have been provided by the government of Turkey to

Turkish producers of PC strand. *Prestressed Concrete Steel Wire Strand from the Republic of*

*Turkey—Petitioners' New Subsidy Allegations* 1 (P.R. Doc. 180). On September 1, 2020,

Commerce initiated a supplemental investigation of two programs (Exemption of

Exchange Tax for Foreign Exchange Transactions and Provision of Steel Wire Rod for

Less Than Adequate Remuneration ("LTAR")) that were identified in the petitioners'

allegations. *Countervailing Duty Investigation of Prestressed Concrete Steel Wire Strand from the Republic of Turkey: Post-Preliminary Analysis* 1 (Nov. 19, 2020) (P.R. Doc. 352).

On September 21, 2020, Commerce published its Preliminary Determination, in which it preliminarily determined an estimated net countervailable subsidy rate of 135.06% for Celik Halat. *Prestressed Concrete Steel Wire From the Republic of Turkey: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Critical Circumstances Determination, in Part*, 85 Fed. Reg. 59,287, 59,288 (Int'l Trade Admin.). In the Preliminary Determination, Commerce announced that it would instruct U.S. Customs and Border Protection ("Customs") to collect cash deposits at the rate of 135.06% on entries of subject merchandise exported by Celik Halat, on and after the September 21, 2020 date of publication of the Preliminary Determination. *Id*. The Preliminary Determination incorporated by reference the "Preliminary Decision Memorandum." *Decision Memorandum for the Preliminary Determination of the Countervailing Duty Investigation of Prestressed Concrete Steel Wire from the Republic of Turkey* (Int'l Trade Admin. Sept. 14, 2020) (P.R. Doc. 253) ("*Prelim. Decision Mem.*"). For purposes of the Preliminary Determination, Commerce deferred examination of five programs (Investment Incentive Scheme Program—Value-Added Tax ("VAT") programs, Natural Gas for LTAR, Güney Çelik Hasir ve Demir's Unknown Tax Program, Export Buyer's Credits, and Renewable Energy Mechanism) in addition to the two programs identified in the petitioners' new subsidy allegations. *Id.* at 33. The Final

Determination was published on December 11, 2020, establishing the final estimated net

countervailable subsidy rate of 158.44% for Celik Halat. *Final Determination*, 85 Fed.

Reg. at 80,006.

On January 25, 2021, the U.S. International Trade Commission ("ITC") notified

Commerce that it had reached an affirmative final determination that an industry in the

United States was materially injured by reason of imports of PC strand from Turkey.

*Order*, 86 Fed. Reg. at 7,991.  Commerce announced that it would direct Customs to

collect cash deposits at the increased rate of 158.44% for each entry of subject

merchandise exported by Celik Halat made on or after the date of publication of the

ITC's affirmative final injury determination.  *Id*.  The ITC published its determination

four days later.  *Prestressed Concrete Steel Wire Strand From Argentina, Colombia, Egypt,*

*Netherlands, Saudi Arabia, Taiwan, Turkey, and the United Arab Emirates*, 86 Fed. Reg. 7,564

(Int'l Trade Comm'n Jan. 29, 2021).  Publication of the Order followed thereafter.  *Order*,

86 Fed. Reg. at 7,990.

### D.  Proceedings Before the Court

Plaintiff brought this action to contest the Final Determination on February 3,

2021.  Summons, ECF No. 1; Compl., ECF No. 2.  On February 25, 2021, Insteel Wire

Products Company, Sumiden Wire Products Corporation, and Wire Mesh Corp. filed a

consent motion to intervene as defendant-intervenors.  Consent Mot. to Intervene as of

Right, ECF No. 8.  The court granted defendant-intervenors' motion on February 26,

2021.  Order, ECF No. 13.

Pending for decision by the court is plaintiff's Rule 56.2 Motion for Judgment on

the Agency Record, with accompanying memorandum.  Pl.'s Rule 56.2 Mot. for J. on the

Agency R. (May 28, 2021), ECF Nos. 19 (conf.), 20 (public) ("Pl.'s Mot").  Defendant

responded on July 27, 2021.  Def.'s Resp. to Pl.'s Mot. for J. on the Agency R., ECF

No. 22 ("Def.'s Resp.").  Defendant-intervenors responded on July 27, 2021.  Def.-

Intervenors' Resp. in Opp'n to Pl.'s Mot. for J. on the Agency R., ECF Nos. 21 (conf.),

23 (public) ("Def.-Intervenors' Resp.").  Plaintiff replied on August 24, 2021.  Reply Br.

of Pl. Celik Halat ve Tel Sanayi A.S., ECF Nos. 24 (conf.), 25 (public).

On September 13, 2021, plaintiff filed an unopposed motion for oral argument on

their Rule 56.2 motion.  Mot. for Oral Argument, ECF No. 28.

## II. DISCUSSION

### A.  Jurisdiction and Standard of Review

The court exercises jurisdiction under section 201 of the Customs Courts Act of

1980, 28 U.S.C. § 1581(c), pursuant to which the court reviews actions commenced

under section 516A of the Tariff Act of 1930 (the "Tariff Act"), *as amended*, 19 U.S.C.

§ 1516a, including an action contesting a final determination that Commerce issues to

conclude a CVD investigation.[2]

     In reviewing a final determination, the court "shall hold unlawful any

determination, finding, or conclusion found . . . to be unsupported by substantial

evidence on the record, or otherwise not in accordance with law."  19 U.S.C.

§ 1516a(b)(1)(B)(i).  Substantial evidence refers to "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *SKF USA, Inc. v.*

*United States*, 537 F.3d 1373, 1378 (Fed. Cir. 2008) (quoting *Consol. Edison Co. v. NLRB*,

305 U.S. 197, 229 (1938)).

     Decisions that an agency makes in the enforcement and administration of its

regulatory requirements that call for an exercise of discretion are examined according to

an abuse of discretion standard.  *See*, *e.g.*, *Brennan v. Dep't of Health & Human Servs.*, 787

F.2d 1559, 1564 (Fed. Cir.), *cert. denied*, 479 U.S. 985 (1986).

### B.  Prior Related Litigation Between the Parties

     Celik Halat initiated an action in this Court in November 2020, after Commerce

issued the Preliminary Determination and before it issued the Final Determination.  *See*

*Celik Halat ve Tel Sanayi A.S. v. United States*, 44 CIT __, __, 483 F. Supp. 3d 1370, 1376

(Dec. 6, 2020).  Celik Halat brought this action pursuant to 28 U.S.C. § 1581(i), which

---

[2] All citations to the United States Code herein are to the 2018 edition and all
citations to the Code of Federal Regulations herein are to the 2020 edition.

provides residual jurisdiction over matters not otherwise covered by 28 U.S.C.

§ 1581(a)–(h), arguing that "[j]urisdiction is proper under 28 U.S.C. § 1581(i) because

Commerce's decision to reject Celik Halat's submissions at this stage of the

investigation will result in immediate injury and irreparable harm, making relief under

28 U.S.C. § 1581(c) manifestly inadequate" when Celik Halat would need to wait until

the completion of the CVD investigation to bring an action under 28 U.S.C. § 1581(c).

Compl. ¶¶ 24, 26 (Nov. 19, 2020), Ct. No. 20-03848, ECF No. 2.

Celik Halat moved for a temporary restraining order and a preliminary

injunction to enjoin Commerce from continuing to reject its Section III responses to the

Department's Initial Questionnaire in the CVD investigation of PC strand from Turkey.

*Celik Halat ve Tel Sanayi A.S.*, 44 CIT at __, 483 F. Supp. 3d at 1374–76.  The government

argued that Celik Halat lacked subject matter jurisdiction, that the claim was not ripe,

that it intended to file a motion to dismiss, and that Celik Halat therefore was unlikely

to succeed on the merits.  *Id.*, 44 CIT at __, 483 F. Supp. 3d at 1377–78.  This Court

agreed with the government's argument and explained that, although Celik Halat had

"styled" the action as one under 28 U.S.C. § 1581(i), the "true nature" of Celik Halat's

claim arose under 28 U.S.C. § 1581(c) because the ultimate relief Celik Halat sought—a

remand order directing Commerce to reconsider its rejection of Celik Halat's Section III

Initial Questionnaire responses—is available under 28 U.S.C. § 1581(c).  *Id.*  Concluding

that plaintiff would not succeed in establishing jurisdiction, this Court denied Celik

Halat's motion for a temporary restraining order and preliminary injunction. *Id.*, 44 CIT

at __, 483 F. Supp. 3d at 1381.  While denying Celik Halat's motion, this Court, in *dicta*,

expressed concerns regarding the Department's actions in the underlying investigation:

> Plaintiff submits that Commerce abused its discretion in rejecting
> its questionnaire responses because Commerce has granted extensions for
> reasons less severe than the circumstances surrounding the alleged 87-
> minute delay that gives rise to this action.  Plaintiff's allegations raise
> serious concerns regarding Commerce's justification for rejecting
> Plaintiff's requests for reconsideration; however, these concerns are
> insufficient to establish that Plaintiff is likely to succeed in light of the
> jurisdictional and ripeness concerns.

*Id.*, 44 CIT at __, 483 F. Supp. 3d at 1379 (citation omitted).

Shortly thereafter, the government filed a motion to dismiss for lack of

jurisdiction, Def.'s Mot. to Dismiss the Compls. (Dec. 10, 2020), Ct. No. 20-03848, ECF

No. 22, which was granted by this Court on March 24, 2021.  Order, Ct. No. 20-03848,

ECF No. 26; Judgment, Ct. No. 20-03848, ECF No. 27.

### C.  Celik Halat's Claims in This Litigation

In applying the 158.44% subsidy rate to exports of Celik Halat's subject

merchandise, Commerce invoked its authority under section 776(a) of the Tariff Act,

19 U.S.C. § 1677e(a), to use "the facts otherwise available" and its authority under

section 776(b) of the Tariff Act, 19 U.S.C. § 1677e(b), to use an "adverse inference," to

reject as untimely Celik Halat's response to Section III of the Department's Initial

Questionnaire in the investigation.  Plaintiff claims that this determination was

unlawful because it was "a severe abuse of discretion," Pl.'s Mot. 15–24, was

unreasonable, *id*. at 27–28, and was unsupported by substantial evidence on the record,

*id*. at 28–30.

### 1. The Department's Use of "the Facts Otherwise Available" under 19 U.S.C. § 1677e(a)

In the Preliminary Decision Memorandum, Commerce preliminarily found as a

fact that "Celik Halat filed an untimely response to Commerce's initial CVD

questionnaire." *Prelim. Decision Mem.* at 9. As a second preliminary finding, Commerce

added that "[t]herefore, we preliminarily find that, by not timely responding to

Commerce's questionnaire, Celik Halat withheld information that had been requested

and failed to provide information within the deadlines established." *Id*. The

Department's third preliminary finding was that "[b]y not responding to the initial

CVD questionnaire, Celik Halat significantly impeded this proceeding." *Id*. Based on

these three findings of fact, Commerce stated that "[t]hus, in reaching a preliminary

determination, pursuant to sections 776(a)(2)(A), (B), and (C) of the [Tariff] Act

[19 U.S.C. § 1677e(a)(2)(A), (B), and (C), respectively, which apply to use of "the facts

otherwise available"], we based the CVD rates for Celik Halat on facts available." *Id*.

Commerce then reached a preliminary finding based on section 776(b) of the

Tariff Act, 19 U.S.C. § 1677e(b), which provides for Commerce to use an inference

adverse to a non-cooperating party when selecting from among the facts otherwise

available: "Moreover, we preliminarily determine that an adverse inference is

warranted, pursuant to section 776(b) of the Act [19 U.S.C. § 1677e(b)] because, by not

timely responding to the initial CVD questionnaire, Celik Halat failed to cooperate to

the best of its ability to comply with the requests for information in this investigation."

*Id*.  When invoking both sections 776(a) and (b) of the Tariff Act, Commerce applies

what it terms "adverse facts available," or "AFA."  The Preliminary Decision

Memorandum states that "as AFA, Commerce preliminarily finds that Celik Halat and

its cross-owned affiliates from which we would attribute subsidies received to Celik

Halat under our attribution rules, pursuant to 19 CFR 351.525, received and benefited

from certain subsidies."  *Id*. (footnote omitted).

　　　　After summarizing and citing its discussion in the Preliminary Decision

Memorandum, *Final I&D Mem.* at 34, Commerce adopted, without change, its analysis

for its use of facts otherwise available and an adverse inference, *id.* at 35 ("For the

purposes of this final determination, we find no basis to alter our use of AFA pursuant

to section 776(b) of the [Tariff] Act [19 U.S.C. § 1677e(b)] . . . .").  In so doing, Commerce

implicitly adopted its four preliminary findings as final findings of fact upon reaching

the Final Determination.  The court examines, first, the three findings upon which

Commerce based its decision to reject Celik Halat's Initial Questionnaire response and

substitute for it "the facts otherwise available."

　　　　Under 19 U.S.C. § 1677e(a), Commerce is directed to use "the facts otherwise

available" in specifically defined circumstances.  Here, in resorting to the use of the

facts otherwise available, Commerce relied upon the three circumstances defined in

subparagraphs (2)(A), (2)(B), and (2)(C) of § 1677e(a), respectively.  Under

subparagraph (2)(A), Commerce is directed to use the facts otherwise available "[i]f . . .

an interested party . . . withholds information that has been requested by the

administering authority . . . [i.e., Commerce] under this subtitle."  The record does not

support a finding of fact that Celik Halat withheld "information that has been

requested" by Commerce.

Section 351.303 of the Department's regulations provides, generally, for the filing

of documents such as questionnaire responses in at least two versions, "business

proprietary" and "public."  *See* 19 C.F.R. §§ 351.303(b), 351.304.  A document in the

former category contains within single brackets business proprietary information that

may be released only to persons authorized to receive submissions under an

administrative protective order.[3]  *See id.*  The public version of a business proprietary

document is a document from which the bracketed information has been redacted.  *See

id*. §§ 351.303(b)(4)(iv), 351.304(c).

Under the Department's regulations, Celik Halat was required to file its response

to the Initial Questionnaire electronically on the Department's automated "ACCESS"

system, by "5 p.m. Eastern Time" on the due date, which in this instance was Friday,

August 7, 2020.  *See id.* § 351.303(b)(1) ("An electronically filed document must be

---

[3] The regulations also provide for submissions to contain another category of proprietary information, set forth in double brackets, that may not be released under an administrative protective order.  *See* 19 C.F.R. § 351.303(b)(4)(ii).

received successfully in its entirety by the Department's electronic records system,

ACCESS, by 5 p.m. Eastern Time on the due date"), (b)(2)(i) ("A person must file all

documents and databases electronically using ACCESS . . . .").  In submitting its

response, Celik Halat had the option of filing both a business proprietary version and a

public version of its Initial Questionnaire response on the due date.  Alternatively, Celik

Halat could choose to avail itself of an optional procedure in the Department's

regulations (the "one-day lag rule"), under which it could file only a business

proprietary version and take an extra business day to refile its business proprietary

version, making any changes it found necessary in its bracketing of business

proprietary information, and the public version of the document, with redactions

consistent with the final bracketing.  *See id.* § 351.303(c).  The regulations specify that

"the public version" must be filed "[s]imultaneously with the filing of the final business

proprietary document."  *Id.* § 351.303(c)(2)(iii).

Celik Halat chose the option of using the one-day lag rule, which required that

the document it was to file on Friday, August 7, 2020 include on each page containing

business proprietary information the notation "Business Proprietary Treatment

Requested" and the warning "Bracketing of Business Proprietary Information Is Not

Final for One Business Day After Date of Filing."  *See id.* § 351.303(d)(2)(v).  The

regulations setting forth the one-day lag rule require that "[a] person must file a

business proprietary document with the Department within the applicable time limit."

*Id*. § 351.303(c)(2)(i).  As to the initial filing, Celik Halat complied with this requirement:

it is uncontested that Celik Halat timely filed, on ACCESS, a business proprietary

document responding to the Initial Questionnaire on Friday, August 7, 2020.

The regulations setting forth the one-day lag rule require that "[b]y the close of

business one business day after the date the business proprietary document is filed . . . a

person must file the complete final business proprietary document with the

Department."  *Id*. § 351.303(c)(2)(ii).  The regulations require, further, that:

> The final business proprietary document must be *identical in all respects* to
> the business proprietary document filed on the previous day except for
> any bracketing corrections and the omission of the warning "Bracketing of
> Business Proprietary Information Is Not Final for One Business Day After
> Date of Filing" in accordance with paragraph (d)(2)(v) of this section.

*Id*. (emphasis added).

The Department's regulations did not permit Celik Halat to make any changes to

the business proprietary document it filed on Friday, August 7, 2020, other than to add

or delete any brackets it considered necessary to its compliance with the procedures for

protection from public disclosure of business proprietary information under the

applicable administrative protective order and the deletion of the "warning."  The

regulations required that the version Celik Halat timely filed on August 7, 2020, be final

in almost every respect and that the *only* aspect of Celik Halat's response to Section III

of the Initial Questionnaire that was *not* final was the "Bracketing of Business

Proprietary Information."  *Id.*  In other words, it was only the "bracketing" of business

proprietary information—not the information itself—that Celik Halat could alter when

it later filed the final version of the business proprietary version, and the public version,

of the August 7, 2020 document.  Because Celik Halat was not permitted to alter the

business proprietary information itself, or any other information, that had been

contained in the August 7, 2020 document when it later filed the "one-day lag"

versions, the "information" that document provided in response to the Department's

Initial Questionnaire could not be expanded upon, reduced, or modified in any way.

        Based on the Department's regulations, the court disallows the Department's

factual finding that Celik Halat "withheld requested information."  Under the ordinary

meaning of subparagraph (2)(A) of § 1677e(a), Celik Halat did not withhold

information.  By 5:00 p.m. on August 7, 2020, the Department possessed all the

information Celik Halat was permitted to provide in response to the Initial

Questionnaire.  The technical fact that the bracketing of the proprietary information in

that document was subject to change by the close of the next business day was not

evidence supporting a finding that Celik Halat "withheld" from Commerce any

"information" Commerce requested, and no other evidence is available on the record to

support such a finding.  Commerce reasoned, nevertheless, that "[t]he missing

information in this case is not the [*sic*] minor or incidental to Commerce's subsidy rate

calculation; instead, [it was] the section III initial questionnaire response that would

have established benefit and usage information for all of the initiated programs in an

investigation." *Final I&D Mem*. at 37.  This finding was impermissible and nonsensical:

the information Commerce characterized as "missing" is information Commerce itself

removed from the record, i.e., Celik Halat's timely-filed submission of August 7, 2020.

The purpose of the one-day lag rule is not to provide a mechanism for a party to

file, or for Commerce to obtain, information in addition to the information presented in

the original submission.  Instead, as practitioners before the Department are well aware,

the purpose of the procedure is to allow counsel to review their bracketing so as to

ensure that business proprietary information is not inadvertently released to the public

when the public version (which must correspond precisely to the final business

proprietary version, except for the redaction of the bracketed information) is released.

Counsel are subject to serious sanction should a bracketing error be made that results in

disclosure of business proprietary information.  Thus, the one-day lag rule serves a

valid purpose.  It is unrelated to, and cannot justify, the action Commerce took to

punish Celik Halat for a technical violation of the filing requirement for the final

business proprietary and public versions of its timely-filed August 7, 2020 submission.

The Department's factual finding under subparagraph (2)(B) of 19 U.S.C.

§ 1677e(a) that "[b]y not responding to the initial CVD questionnaire, Celik Halat

significantly impeded this proceeding," *Prelim. Decision Mem.* at 9, also lacked any

support in the record evidence.  Plaintiff asserts that its counsel accomplished the

electronic filing at 6:27 p.m. Eastern Time ("ET") on August 10, 2020.  Pl.'s Mot. 3–4.

Defendant does not dispute this assertion. The only consequence of the missed deadline was that Commerce was delayed by 87 minutes from knowing the final bracketing treatment Celik Halat would apply to its claim of business proprietary treatment for the business proprietary information in its response to the Initial Questionnaire. This technical violation could not conceivably have impeded the investigation. Nothing prevented Commerce from beginning to use the information contained in the August 7, 2020 version of Celik Halat's Initial Questionnaire response (which could not permissibly be modified by the later submission), even had Commerce chosen to do so between 5:00 p.m. ET and 6:27 p.m. ET on the evening of Monday, August 10, 2020. Therefore, the record evidence does not support a finding that Celik Halat "significantly impeded" the proceeding, and the court must disallow this finding as well.

Because two of the three critical findings of fact upon which Commerce based its decision to use "the facts otherwise available" in place of Celik Halat's response to the Initial Questionnaire lack any support in the evidentiary record, the court must remand the Final Determination for reconsideration and redetermination. Nevertheless, the court also examines the remaining finding. While the issue presented by this finding is not as straightforward, the Department's resolution of it is also unsatisfactory.

Subparagraph (2)(B) of 19 U.S.C. § 1677e(a) provides that if an interested party fails to provide the requested "information by the deadlines for submission of the

information or in the form and manner requested, subject to subsections (c)(1) and (e) of

section 1677m of this title," Commerce "shall, subject to section 1677m(d) of this title,

use the facts otherwise available in reaching the applicable determination under this

subtitle."  As discussed above, the evidence does not establish that Celik Halat failed to

provide the information Commerce requested in the Initial Questionnaire.  Moreover,

that information, which was contained in the August 7, 2020 submission, was provided

"by the deadlines for submission of the information," the August 7, 2020 submission

having been timely filed.  19 U.S.C. § 1677e(a)(2)(B).  The authority provided by

subparagraph (2)(B), therefore, was availing only if there was information that was not

timely submitted or not submitted "in the form and manner requested," and only if the

Department's refusal to use that information, and its resort to the facts otherwise

available, were not contrary to 19 U.S.C. § 1677m(c)(1), (d), or (e).

        The information in the August 7, 2020 submission is not within the scope of

19 U.S.C. § 1677e(a)(2)(B) because it was timely submitted on that date and because the

record evidence does not show that it failed to meet any of the Department's

requirements as submitted on that date.  As the court discussed previously, the

information itself, as distinct from the final bracketing along which that information

was presented in the text, must be deemed to have been submitted in full on August 7,

2020, because the final business proprietary and public versions of the August 7, 2020

document were not permitted to make any changes to that information.

The only "information" that conceivably could be considered to be described by § 1677e(a)(2)(B) was the final location of the brackets surrounding business proprietary information in the Initial Questionnaire response. To be sure, Celik Halat was required by 19 C.F.R. § 351.303 of the Department's regulations to inform Commerce of the final location of its brackets by 5:00 p.m. on Monday, August 10, 2020, by means of filing the final business proprietary and public versions of the August 7, 2020 document, and the final location of the brackets serves an important purpose in the protection of business proprietary information. The uncontested fact is that Celik Halat, through its counsel's inadvertence, did not inform Commerce of the final location of its brackets until 6:27 p.m. on that date. But the court is seriously troubled by an interpretation of § 1677e(a)(2)(B) under which Commerce could reject Celik Halat's response to the Initial Questionnaire on the facts and circumstances presented by this case. Here, the only "information" that was untimely, or was not submitted "in the form and manner requested," 19 U.S.C. § 1677e(a)(2)(B), was not the information requested in the Initial Questionnaire *per se* but instead was the final location of the brackets in the text of the Initial Questionnaire response, and even this deficiency went unremedied for only an insignificant period of time. Commerce was not in a position, legally or practically, to use "the facts otherwise available" as a remedy for this minor error. The Department's decision to invoke § 1677e(a)(2)(B) as a basis to reject the entire Initial Questionnaire response for this deficiency imposed a drastic and disproportionate penalty upon Celik

Halat for what was, essentially, noncompliance with a technical filing requirement

under 19 C.F.R. § 351.303 that had no appreciable effect on the Department's

investigation.[4]   The Department's action elevated "form over substance" and, in light of

all the relevant circumstances, constituted a misuse and misinterpretation of the "facts

otherwise available" procedure as it related to § 1677e(a)(2)(B).

## 2.  The Department's Use of an Adverse Inference under 19 U.S.C. § 1677e(b)

Based on the untimeliness of the filings on August 10, 2020, Commerce found

that "Celik Halat failed to submit its response to section III of the questionnaire by the

established deadline" and on that basis further found that "Celik Halat failed to

cooperate to the best of its ability to comply with Commerce's request for information,

within the meaning of section 776(b)(1) of the Act [19 U.S.C. § 1677e(b)(1)]."  *Final I&D*

*Mem*. at 34.

Commerce published its Final Determination on December 11, 2020, and, as it

had in the Preliminary Determination, resorted to facts otherwise available and an

adverse inference, determining a final estimated net countervailable subsidy rate of

158.44% for exports of Celik Halat's subject merchandise.  *Final Determination,*

---

[4] Commerce notified Celik Halat of the error on August 19, 2020, nine days after it occurred.  *Commerce Letter Re: Countervailing Duty Investigation of Prestressed Concrete Steel Wire Strand from the Republic of Turkey* 1 (P.R. Doc. 198).  It appears that by the time anyone discovered the error, it had been corrected within 87 minutes of the untimely filing on the evening of August 10, 2020.  From all indications in the record, no one could have been prejudiced by this error.

85 Fed. Reg. at 8,006.  Explaining how its decision differed from the Preliminary

Determination, which preliminary found a subsidy rate of 135.06%, Commerce stated

that "we preliminarily determined to use an adverse inference when selecting from

among the facts otherwise available to assign subsidy rates to Celik Halat, in

accordance with section 776(b) of the Act [19 U.S.C. § 1677e(b)]."  *Final I&D Mem.* at 34

(citing *Prelim. Decision Mem*. at 9).  Commerce added that "[w]e included all programs

upon which Commerce initiated an investigation to determine the AFA rate, other than

those programs we deferred to our post-preliminary analysis."  *Id*. (footnote omitted).

"In our post-preliminary analysis, we applied AFA to assign subsidy rates to Celik

Halat for those programs we deferred from our *Preliminary Determination*, other than

those we found did not provide a countervailable benefit."  *Id*. at 35 (footnote omitted).

"For the programs on which we initiated based on the New Subsidy Allegations (NSA

programs), we calculated Celik Halat's subsidy rates based on Celik Halat's timely

response to our NSA questionnaire."  *Id.* (footnote omitted).

      There is no dispute that Celik Halat, through the inadvertence of its counsel,

missed a filing deadline for the final business proprietary and public versions of its

response to the Initial Questionnaire.  As a general matter, an attorney's inadvertently

missing a filing deadline can be described as a failure to cooperate that is attributed to

the client.  But in this circumstance, the fact of the missed deadline, standing alone, did

not justify the Department's use of an adverse inference when determining the subsidy

rate for Celik Halat's exports of subject merchandise.  Not every failure to comply with

a filing deadline will result in authority to use an adverse inference against an

interested party.

If Commerce finds that "an interested party has failed to cooperate by not acting

to the best of its ability to comply with a request for information from the administering

authority," then "the administering authority . . . may use an inference that is adverse to

the interests of that party *in selecting from among the facts otherwise available*."  19 U.S.C.

§ 1677e(b)(1) (emphasis added).  As the court has concluded, Commerce erred in

making the decision under § 1677e(a) to remove timely-submitted information from the

record and substitute for it "the facts otherwise available."  Under § 1677e, a valid

finding under § 1677e(a) is a statutory prerequisite for the use of an adverse inference

under § 1677e(b).  Here, no such valid finding was made.  On this record, the

Department's use of an adverse inference to determine the subsidy rate for Celik Halat

was, therefore, beyond the Department's statutory authority.

Defendant argues that Celik Halat's missing the 5:00 p.m. filing deadline

constituted a "failure to cooperate" that justified the Department's use of what it

describes as "adverse facts available."  Def.'s Resp. 17–21.  In making this argument,

defendant asserts that "Commerce's decision was in accordance with law and

supported by substantial evidence."  *Id*. at 17.  Defendant-intervenors make essentially

the same argument.  Def.-Intervenors' Resp. 13–18.  The court disagrees.  Commerce

erroneously decided, based on unsupported findings and a misuse of its authority, that it had a valid basis to use "the facts otherwise available" under 19 U.S.C. § 1677e(a). Defendant-intervenors assert that "[i]t is not disputed that [Celik] Halat's Section III questionnaire response—containing virtually all information necessary for Commerce to calculate a subsidy rate—was not filed by the applicable 5:00 p.m. Eastern Time deadline." *Id.* at 1. Defendant-intervenors' assertion, if not false, is at best misleading. Commerce was provided, in a timely manner, the substantive information necessary to calculate a subsidy rate on the previous Friday, August 7, 2020. The 87-minute delay in the Department's knowing Celik Halat's final bracketing had no conceivable effect on that calculation. Defendant-intervenors argue, further, that "the courts have repeatedly affirmed Commerce's authority to enforce its own deadlines and rules requiring the rejection of untimely factual information." *Id*. at 2. This argument is also misleading. The "factual information" contained within Celik Halat's Initial Questionnaire response was timely filed in its August 7, 2020 submission.

### D.  The Department's Reliance on Certain Filing and Filing Extension Procedures in its Regulations

In addition to its reliance on 19 U.S.C. § 1677e (which was misplaced for the reasons the court discussed above), Commerce based its decision to reject the Initial Questionnaire response on 19 C.F.R. § 351.302(c), under which it will grant "untimely" requests for extensions of filing deadlines only in "an extraordinary circumstance." Commerce further relied upon other, related regulatory provisions. The court

concludes that the regulatory provisions upon which Commerce relied do not suffice to

sustain the Department's Final Determination given all the circumstances presented by

this case.  Below, the court presents in detail the circumstances surrounding Celik

Halat's extension requests, its submissions of Initial Questionnaire response documents,

and the actions Commerce took under its regulations.

Celik Halat's response to Section III of the Initial Questionnaire originally was to

be submitted to Commerce by Monday, August 3, 2020.  *Investigation of Prestressed*

*Concrete Steel Wire from the Republic of Turkey: Countervailing Duty Respondent Selection* 2

(June 26, 2020) (P.R. Doc. 60).  On the previous Monday, July 27, 2020, Celik Halat

requested that Commerce grant a two-week extension of the filing date, to Monday,

August 17, 2020.  *Prestressed Concrete Steel Wire Strand from Turkey (C-489-843): Extension*

*Request of Celik Halat ve Tel Sanayi A.S." ("Celik Halat") for Section III Response in the CVD*

*investigation* 2 (P.R. Doc. 88).  The request mentioned four circumstances.  "First . . . the

global COVID-19 pandemic has impacted Turkey particularly hard.  The entire country

has been under near-total lockdown for nearly three months."  *Id*.  "Second, Celik

Halat's offices are closed, with only minimal essential exceptions made for certain

essential workers.  The accounting and sales staff that are required to respond to the

Department's questionnaires are required to work from home" and "[s]ince few of the

company's staff can access the office, identification of the essential documents and

databases that are required to respond to the questionnaire has been almost completely

impossible." *Id*. "Third, unlike many offices in the United States, Celik Halat does not

have a robust work from home infrastructure." *Id*. "Not all of the company's staff has

the necessary home computers and home internet connections that make work from

home viable, so that only some of the staff have been able to work remotely." *Id*. As the

fourth circumstance, the request stated that "[f]inally, starting July 30th (Thursday) half

day, until August 4th (Tuesday), it is [a] religious holiday (Sacrifice Feast) in Turkey and

everywhere is literally closed," adding that "[m]ost people take the week of August 3rd

off and go to visit their families" and that "[t]his is the fact for some of the Celik Halat

staff who works on CVD." *Id*. at 3.

Commerce responded to Celik Halat's request for a two-week extension by letter

dated July 27, 2020. *Investigation of Prestressed Concrete Steel Wire from the Republic of*

*Turkey: Partial Extension for Initial Questionnaire Response* (P.R. Doc. 121). In it,

Commerce allowed Celik Halat only a four-day extension, to 5:00 p.m. ET on Friday,

August 7, 2020, for the submission of the response to Section III. *Id*. at 1. Commerce

gave as the reason for limiting the extension the "statutory deadlines, which are

mandatory, not optional, in nature," adding that "[t]herefore, we may not be able to

grant further extension of this deadline." *Id*.

Celik Halat submitted another extension request on Tuesday, August 4, 2020, this

time requesting an extension of the then-looming August 7, 2020 deadline until the

following Friday, August 14, 2020. *Pre-stressed Concrete Steel Wire Strand from Turkey*

*(C-489-843): Extension Request of Celik Halat ve Tel Sanayi A.S." ("Celik Halat")* for *Section III Response in the CVD investigation* 2 (Aug. 4, 2020) (P.R. Doc. 176). Celik Halat's representative again mentioned the religious holiday but added that "CELIK HALAT's finance manager had a minor traffic accident on his return to work from his family visit" and that "[n]ow, he is on sick leave and resting at his home." *Id.* Mentioning also that "the counsel for CELIK HALAT in this investigation[] had a knee surgery in the U.S.A. and he is still at the hospital to recover," *id.*, the request stated that "[o]bviously, these two incidents have affected the ability of CELIK HALAT in preparing the responses to the Section III of [the] CVD questionnaire." *Id.* On the same day, Commerce denied this request in the entirety, again citing "statutory deadlines." *Investigation of Prestressed Concrete Steel Wire from the Republic of Turkey: Denial of Extension for Initial Questionnaire Response* 1 (Aug. 4, 2020) (P.R. Doc. 177).[5]

On Wednesday, August 19, 2020—nine days after Celik Halat filed the final business proprietary and public versions of its Initial Questionnaire response—

_____

[5] Although stressing its statutory deadlines in communicating with Celik Halat, Commerce appears to have been more lenient when ruling on petitioners' extension requests during the CVD investigation. Commerce granted petitioners' extension requests in connection with its new subsidy allegations three times during this period. *See Investigation of Prestressed Concrete Steel Wire from the Republic of Turkey: Partial Extension for New Countervailable Subsidy Allegation* (July 31, 2020) (Dep't of Commerce ACCESS Barcode 4008665-01); *Investigation of Prestressed Concrete Steel Wire from the Republic of Turkey: Second Extension for New Countervailable Subsidy Allegations* (Aug. 11, 2020) (Dep't of Commerce ACCESS Barcode 4014739-01); *Investigation of Prestressed Concrete Steel Wire from the Republic of Turkey: Third Extension for New Countervailable Subsidy Allegations* (Aug. 14, 2020) (Dep't of Commerce ACCESS Barcode 4015711-01).

Commerce notified Celik Halat's counsel by letter of its finding that "[o]n August 10, 2020, you filed the final business proprietary and public versions of the initial questionnaire response on behalf of your client . . . after the 5:00 p.m. deadline." *Commerce Letter Re: Countervailing Duty Investigation of Prestressed Concrete Steel Wire Strand from the Republic of Turkey* 1 (P.R. Doc. 198) (footnote omitted).  After reciting the reasons why these submissions were required to be filed by 5:00 p.m. on August 10, 2020, the letter concludes by stating that "[t]herefore, because your request [*sic*] was submitted after 5:00 p.m. on August 10, 2020, it was untimely filed.  As such, consistent with 19 CFR 351.302(d)(1), Commerce is rejecting your initial questionnaire response based on your untimely submission." *Id*. at 2.  Commerce added that "[m]oreover, pursuant to 19 CFR 104(a)(2)(iii), we will not retain a copy of the rejected response on the record of this investigation." *Id*.

The Department's August 19, 2020 letter, by referring to "your initial questionnaire response," did not clearly state that Commerce was rejecting *all* versions of Celik Halat's Initial Questionnaire response including, in particular, the timely-filed August 7, 2020 submission.  *Id*.  If that was the Department's intent, the August 19, 2020 letter did not explain why Celik Halat's August 7, 2020 Initial Questionnaire submission was being rejected even though the only untimely filings referenced in the letter were the August 10, 2020 filings of "the final business proprietary and public versions of the initial questionnaire."  *Id*. at 1.  Commerce cited two provisions of its regulations,

19 C.F.R. §§ 351.302(d)(1) and 351.104(a)(2)(iii), but neither addresses the issue of

whether the regulations required, or authorized, Commerce to reject the August 7, 2020

submission.  Section 351.302(d)(1) provides, in pertinent part, that "the Secretary will

not consider or retain in the official record of the proceeding . . . [u]ntimely filed factual

information, written argument, or other material that the Secretary rejects, except as

provided under § 351.104(a)(2)."  The provision does not speak to the issue of whether

Commerce will reject a timely-filed document, such as a questionnaire response, in

response to an untimely filing of the final business proprietary and public versions of

the same document.  Nor does § 351.104(a)(2)(iii) resolve this issue; it merely clarifies

that "in no case will the official record include any document that the Secretary rejects

as untimely filed."

On August 20, 2020, the day following the Department's rejection of the Initial

Questionnaire response, Celik Halat requested, by means of a letter from the attorney

who had made the filing, that Commerce reconsider the action taken in the

Department's August 19, 2020 letter.  *Pre-Stressed Concrete Steel Wire Strand from Turkey:*

*Request for Reconsideration of the Department's Rejection of the CVD Response of Celik Halat*

(P.R. Doc. 202) ("*Request for Reconsideration*").  The request informed Commerce, *inter*

*alia*, that counsel had set two alarm clocks to awaken him at 4:00 p.m., had awoken then

and uploaded the documents onto the Department's ACCESS system, believing the

filing was timely, that he had received on his email a notice that the filing had been

accomplished, and that the email was "time stamped at 4:27 pm." *Id*. at 4.  The letter

identified as "the fatal flaw in the plan" the "fact that he was recuperating at his home

in Utah, and that the Mountain Daylight Time Zone is two hours behind Eastern

Daylight Time," adding that "[t]hus, what appeared to be a timely filing at 4:27 pm in

Utah was actually a late filing at 6:27 pm in Washington, D.C." *Id*.

Commerce rejected Celik Halat's August 20, 2020 request for reconsideration on

September 4, 2020. *Commerce Letter Re: Countervailing Duty Investigation of Prestressed

Concrete Steel Wire Strand from the Republic of Turkey* (P.R. Doc. 245) ("*Rejection of

Reconsideration Request*").  In its rejection letter, Commerce told Celik Halat's counsel

that "[a]s noted in Commerce's August 19 Letter, Commerce requires strict adherence to

deadlines and it is important that our procedures be as dependable, predictable, and

timely as possible." *Id.* at 3.

The September 4, 2020 letter treated Celik Halat's August 20, 2020 request for

reconsideration as an "untimely" request for an extension of the August 10, 2020 filing

deadline. *Id.*  Commerce reiterated its earlier finding, stating that "[a]s noted in

Commerce's August 19 Letter, your final business proprietary and public versions of

your questionnaire response were submitted after the August 10, 2020 5:00 p.m. Eastern

Daylight Time deadline." *Id*. at 1.  It then gave two reasons for its denial of the request

for reconsideration: (1) "We also note that a timely request to extend that deadline was

not submitted," and (2) "While we are sympathetic to your circumstances as described

in your letter, we do not find that them [*sic*] to be extraordinary circumstances as described by Commerce's regulations at 19 CFR 351.302(c)." *Id*. at 1–2.

The regulation Commerce cited provides that "[a]n extension request will be considered untimely if it is received after the applicable time limit expires or as otherwise specified by the Secretary [of Commerce]." 19 C.F.R. § 351.302(c)(1). "An untimely filed extension request will not be considered unless the party demonstrates that an extraordinary circumstance exists." *Id*. § 351.302(c). "An extraordinary circumstance is an unexpected event that: (i) Could not have been prevented if reasonable measures had been taken, and (ii) Precludes a party or its representative from timely filing an extension request through all reasonable means." *Id*. § 351.302(c)(2). In the preamble accompanying the promulgation of this regulation in 2013, Commerce provided additional guidance on what would constitute an "extraordinary circumstance," stating that it may include "a natural disaster, riot, war, *force majeure*, or medical emergency." *See Extension of Time Limits*, 78 Fed. Reg. 57,790, 57,793 (Sept. 20, 2013). In denying the request for reconsideration, Commerce stated that "the cause of the late filing was not a medical emergency or counsel's medical situation. Rather, counsel set an alarm reminding him to file a submission to Commerce, but the alarm was set at the wrong time—after the deadline had already expired." *Rejection of Reconsideration Request* at 2.

Commerce denied the request for reconsideration after finding that "a timely request to extend that deadline was not submitted." *Id.* at 1. The request for reconsideration, which Commerce treated as an "untimely request" for an extension, indeed was submitted after the time limit expired on August 10, 2020. But in its rejection of that request, Commerce made no mention of the record fact that Celik Halat had submitted not one, but two requests to extend the deadline for submission of its response to Section III of the Initial Questionnaire.[6]

Although Celik Halat's counsel theoretically could have submitted a third extension request on Monday, August 10, 2020, for a brief extension for the filing of the final business proprietary and public versions of the Initial Questionnaire response, the circumstances counsel described in the request for reconsideration demonstrate why, as a practical matter, he did not have the opportunity to do so after overlooking the consequence of making his filing from a different time zone. Specifically, the request for reconsideration noted that "[o]n August 19, 2020, the Department posted a notice on

---

[6] As the court recounted earlier in this Opinion and Order, Celik Halat requested that Commerce extend the original, August 3, 2020 filing deadline to August 17, 2020, and in response Commerce allowed only a four-day extension, to August 7, 2020. On August 4, 2020, i.e., before that deadline had passed, Celik Halat, anticipating that it would have difficulty meeting the filing deadline due to certain unusual circumstances, filed a second request, this time for a one-week extension to August 14, 2020. Commerce denied this request in its entirety, leaving intact the deadline of Friday, August 7, 2020, for the filing of the Initial Questionnaire response and the consequent deadline of August 10, 2020, for the follow-up submissions of the final business proprietary and public versions of the document filed on August 7, 2020.

Access rejecting Celik Halat's CVD response, because the public version and the final

BPI version were filed after the deadline, i.e., 5:00 pm on August 10, 2020, the next

business day after the initial BPI version was timely filed." *Request for Reconsideration*

at 1.  Counsel for plaintiff explained that while he was "routinely checking the docket in

this investigation for updates via Access in the morning of August 19, 2020, counsel

discovered the notice posted on Access that Celik Halat's CVD response had been

rejected because the public and final BPI versions were filed late." *Id.* at 2.  Counsel

submitted that he "immediately contacted the Department's case analysts and sought to

understand how a late filing could have happened." *Id.*  Counsel stated that he was

"surprised and distressed to learn of the late filing, since he had personally taken

specific measures to ensure a timely filing." *Id.*  Counsel claimed that he only realized

the circumstance of his having missed the filing deadline after his conversation with

one of the Department's case analysts. *Id.*

      The Department's September 4, 2020 letter concludes by stating that

"[a]ccordingly, Commerce finds no basis to reconsider its rejection of your untimely-

filed August 10, 2020 final business proprietary and public versions of your initial

questionnaire response." *Rejection of Reconsideration Request* at 3.  Significantly, the letter

made no mention of rejecting Celik Halat's timely submission of August 7, 2020.  Thus,

it implied that Commerce, both in its August 19, 2020 and September 4, 2020 letters to

Celik Halat's counsel, was *not* rejecting or removing that submission from the record of the investigation.

In contrast to the Department's letter dated September 4, 2020, the Preliminary Determination and the Final Determination describe Celik Halat's Initial Questionnaire response as having been excluded from the record in the entirety, including the timely-filed version. As to both the Preliminary and Final Determinations, Commerce found that "Celik Halat failed to submit its response to section III of the questionnaire by the established deadline" and on that basis further found that "Celik Halat failed to cooperate to the best of its ability to comply with Commerce's request for information, within the meaning of section 776(b)(1) of the Act [19 U.S.C. § 1677e(b)(1)]." *Final I&D Mem.* at 34. As the record demonstrates, and defendant does not dispute, it was only the final business proprietary and public versions of the Initial Questionnaire response that were untimely filed.

The Department's regulation addressing "untimely" requests for filing extensions, 19 C.F.R. § 351.302(c), is not a basis upon which the court may sustain the Department's decision. Even if Commerce were justified in concluding that Celik Halat's counsel had not described what Commerce would consider an "extraordinary circumstance"—and the court need not decide that issue—nothing in that regulation justified the Department's misuse of 19 U.S.C. § 1677e. In exercising that authority, Commerce abused its discretion when it made several findings of fact that were

unsupported by record evidence and imposing a draconian sanction for what

essentially was a minor and technical violation that had no discernible effect on the

investigation.  Commerce is not free to apply its regulations in a way that exceeds its

statutory authority.  Nor is it justifiable to do what it has done here, which is to apply

its "extraordinary circumstance" rule in such a way as to produce a manifestly

unwarranted and unjust result.  In applying that rule and related regulations on the

filing of, and rejection of, responses to requested information, Commerce must be

mindful of the limitations on the exercise of its statutory and regulatory powers.

Moreover, in viewing in the entirety the facts and circumstances surrounding the filings

of the three versions of the Initial Questionnaire response, the court concludes that

Commerce abused its discretion when applying such an extreme sanction for an

inconsequential violation of a technical filing requirement.[7]

The court does not imply that Commerce could not have taken some action in

response to a missed deadline, such as a warning.  However, at this point in the

litigation, as this Court states in *Celik Halat ve Tel Sanayi A.S. v. United States*, 46 CIT __,

Slip. Op. 22-12 (Feb. 15, 2022) (which arose from the concurrent antidumping duty

---

[7] "An agency abuses its discretion where, inter alia, 'the decision . . . represents an unreasonable judgment in weighing relevant factors.'"  *Brenner v. Dep't. of Veteran Affairs*, 990 F.3d 1313, 1324 (Fed. Cir. 2021) (*quoting Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005)).

investigation),[8] the court's concern is to remedy the damage done by the Department's

unfair treatment of Celik Halat, particularly in light of the record fact that Celik Halat

continued to participate and fully cooperated throughout the remainder of the

investigation.  Further, given that Commerce had instructed Customs to collect

unwarranted cash deposits from Celik Halat, Commerce should not be given the

opportunity here to levy another type of sanction.  Therefore, the court is ordering

Commerce to determine, expeditiously, a new estimated net CVD subsidy rate for Celik

Halat that does not resort to 19 U.S.C. § 1677e with respect to the filing of the response

to the Initial Questionnaire, so that the court may fashion an appropriate remedy on an

expedited basis.

## III.  CONCLUSION AND ORDER

The contested Final Determination rests upon invalid findings of fact and

constitutes a misuse of the Department's statutory authority under 19 U.S.C. § 1677e.

The facts and circumstances considered on the whole constitute an abuse of agency

discretion that imposed an unjust and draconian penalty upon Celik Halat for an

inadvertent technical error by its counsel that had no appreciable effect on the

countervailing duty investigation.  The court will allow only a limited period of time for

Commerce to correct the serious and prejudicial consequences of its error.

---

[8] Celik Halat was confronted with the need to comply, simultaneously, with the Department's questionnaires in the parallel antidumping and countervailing duty investigations.

Therefore, upon consideration of all papers and proceedings herein, and upon

due deliberation, it is hereby

**ORDERED** that plaintiff's Rule 56.2 Motion for Judgment on the Agency Record (May 28, 2021), ECF Nos. 19 (conf.), 20 (public), be, and hereby is, granted; it is further

**ORDERED** that Commerce, within 45 days from the date of issuance of this Opinion and Order, shall submit a redetermination upon remand ("Remand Redetermination") that complies with this Opinion and Order; it is further

**ORDERED** that plaintiff and defendant-intervenors shall have 20 days from the filing of the Remand Redetermination in which to submit comments to the court; it is further

**ORDERED** that should plaintiff or defendant-intervenors submit comments, defendant shall have 10 days from the date of filing of the last comment to submit a response; and it is further

**ORDERED** that plaintiff's Motion for Oral Argument (Sept. 13, 2021), ECF No. 28, is denied.

/s/ Timothy C. Stanceu
Timothy C. Stanceu, Judge

Dated: February 15, 2022
        New York, New York