NONCONFIDENTIAL
VERSION

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY C. STANCEU, JUDGE

| | |
|---|---|
| CELIK HALAT VE TEL SANAYI A.S., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | )   Court No. 21-00050 |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| INSTEEL WIRE PRODUCTS COMPANY, | ) |
| SUMIDEN WIRE PRODUCTS CORPORATION, | ) |
| AND WIRE MESH CORP., | ) |
| | ) |
| Defendant-Intervenors. | ) |
| | ) |

## DEFENDANT-INTERVENORS' COMMENTS
## IN SUPPORT OF REMAND REDETERMINATION

KATHLEEN W. CANNON
PAUL C. ROSENTHAL
R. ALAN LUBERDA
BROOKE M. RINGEL
JOSHUA R. MOREY
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
(202) 342-8400

Counsel to Defendant-Intervenors Insteel
Wire Products Company, Sumiden Wire
Products Corporation, and Wire Mesh Corp.

May 5, 2022

NONCONFIDENTIAL
VERSION

**Table of Contents**

                                                                                    Page

STATEMENT OF FACTS ...................................................................................1

SUMMARY OF ARGUMENT .............................................................................6

I.    THE DEPARTMENT'S APPLICATION OF PARTIAL AFA WAS
      LAWFUL ...............................................................................................7

      A.    The Court Did Not Constrain the Department's Authority to Resort
            to Adverse Facts Available .........................................................7

      B.    The Department's Application of Partial Adverse Facts Available
            Is Supported By Substantial Evidence and Otherwise In
            Accordance With Law ................................................................10

            1.    The Subsidy Program at Issue and the Legal Framework for
                  Attribution..................................................................10

            2.    Celik Halat Did Not Provide All Necessary Information in
                  Its Initial Questionnaire Response ...............................13

            3.    Celik Halat Did Not Provide All Necessary Information in
                  Its Supplemental Questionnaire Response, Despite the
                  Department's Repeated Instructions ...........................15

                  a.    Celik Halat Did Not Demonstrate that the GIIS
                        Certificate Was Affirmatively Tied to Specific Non-
                        Subject Merchandise.........................................16

                  b.    Celik Halat Refused to Provide Necessary
                        Information for the Department to Calculate a
                        Program Benefit .................................................20

            4.    The Department's Application of Partial Adverse, Rather
                  Than Neutral, Facts Available Is Appropriate .............22

      C.    Celik Halat Should Not Be Rewarded, and Defendant-Intervenors
            Should Not Be Punished, for Celik Halat's Failure to Timely File
            Questionnaire Responses ...........................................................25

II.   THE DEPARTMENT'S SELECTION OF THE PROGRAM-SPECIFIC
      AFA RATE WAS REASONABLE...............................................................27

III.  CONCLUSION ...........................................................................................29

NONCONFIDENTIAL
VERSION

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

ABB, Inc. v. United States,
   355 F. Supp. 3d 1206 (Ct. Int'l Trade 2018) ...................................................... 23-24

Celik Halat ve Tel Sanayi A.S. v. United States,
   Ct. No. 21-00050, Slip Op. 22-13 (Feb. 15, 2022) ("Court Op.")
   (ECF No. 30) ................................................................................................................2, 8

Essar Steel Ltd. v. United States,
   678 F.3d 1268 (Fed. Cir. 2012)............................................................................25

Essar Steel Ltd. v. United States,
   721 F. Supp. 2d 1285 (Ct. Int'l Trade 2010) ......................................................24

Guizhou Tyre Co. v. United States,
   523 F. Supp. 3d 1312 (Ct. Int'l Trade 2021) .............................................. 24, 27-28

Hyundai Elec. & Energy Sys. Co. v. United States,
   15 F.4th 1078 (Fed. Cir. 2021) .......................................................................10, 26

Nan Ya Plastics Corp. v. United States,
   810 F.3d 1333 (Fed. Cir. 2016)............................................................................21

New Mexico Garlic Growers Coal. v. United States,
   352 F. Supp. 3d 1281 (Ct. Int'l Trade 2018),
   aff'd on other grounds, 953 F.3d 1358 (Fed. Cir. 2020).........................................22

NEXTEEL Co. v. United States,
   28 F.4th 1226 (Fed. Cir. 2022) .............................................................................9

Nippon Steel Corp. v. United States,
   337 F.3d 1373 (Fed. Cir. 2003)............................................................................25

Papierfabrik August Koehler S.E. v. United States,
   7 F. Supp. 3d 1304 (Ct. Int'l Trade 2014),
   aff'd, 843 F.3d 1373 (Fed. Cir. 2016).....................................................................24

Pro-Team Coil Nail Enter., Inc. v. United States,
   419 F. Supp. 3d 1319 (Ct. Int'l Trade 2019) .........................................................24

Steel Auth. of India v. United States,
   149 F. Supp. 2d 921 (Ct. Int'l Trade 2001) ...........................................................24

NONCONFIDENTIAL
VERSION

Taizhou United Imp. & Exp. Co. v. United States,
    2022 Ct. Intl. Trade LEXIS 14 (Feb. 18, 2022) ........................................................ 11-12, 17

Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council,
    Inc.,
    435 U.S. 519 (1978)............................................................................................................9


## Statutes and Regulations

19 U.S.C. § 1677e ...........................................................................................................2, 8

19 U.S.C. § 1677e(a)-(b)...............................................................................................9-10

19 U.S.C. §§ 1677m(d), (i)(1).............................................................................................9

19 C.F.R. § 351.301(c)(1)(v) ..............................................................................................3

19 C.F.R. § 351.525(b)(5)(i) ..............................................................................................11


## Administrative Determinations

Countervailing Duty Investigation of Certain Softwood Lumber Products from
    Canada: Issues and Decision Memorandum for the Final Determination
    (Nov. 1, 2017), ref'd in 82 Fed. Reg. 51,814 (Nov. 8, 2017)
    (final determination) ........................................................................................................11

Decision Memorandum for the Final Determination of the Countervailing Duty
    Investigation of Prestressed Concrete Steel Wire Strand from the Republic of
    Turkey (Dec. 7, 2020) ("I&D Memo") (PR 370) .............................................................1, 28

Decision Memorandum for the Preliminary Determination of the Countervailing
    Duty Investigation of Prestressed Concrete Steel Wire from the Republic of
    Turkey (Sept. 14, 2020) ("Prelim. Decision Memo") (PR 253) ...........................................1-2

Draft Results of Redetermination Pursuant to Court Remand;
    Prestressed Concrete Steel Wire Strand from the Republic of Turkey;
    Celik Halat ve Tel Sanayi A.S. v. United States, Court No. 21-00050
    (Mar. 21, 2022) ("Draft Redetermination") (Remand PR 25) ...................................... passim

Final Results of Redetermination Pursuant to Court Remand;
    Prestressed Concrete Steel Wire Strand from the Republic of Turkey;
    Celik Halat ve Tel Sanayi A.S. v. United States, Court No. 21-00050
    (Apr. 15, 2022) ("Final Redetermination") (ECF No. 34) (Remand PR 30) .................. passim

NONCONFIDENTIAL
VERSION

Issues and Decision Memorandum for the Final Determination in the
    Countervailing Duty Investigation of Certain Aluminum Foil from the
    Republic of Turkey (Sept. 6, 2021), ref'd in 86 Fed. Reg. 52,884
    (Sept. 23, 2021) (final determination)..................................................................................26

Issues and Decision Memorandum for the Final Determination in the
    Countervailing Duty Investigation of Certain Cold-Drawn Mechanical Tubing
    of Carbon and Alloy Steel from India (Dec. 4, 2017), ref'd in
    82 Fed. Reg. 58,172 (Dep't Commence Dec. 11, 2017) (final determination) ......................19

Issues and Decision Memorandum for the Final Determination in the
    Countervailing Duty Investigation of Fine Denier Polyester Staple Fiber from
    India (Jan. 16, 2018), ref'd in 83 Fed. Reg. 3,122
    (Dep't Commerce Jan. 23, 2018) (final determination) ...........................................................12

**Miscellaneous**

Countervailing Duties; Final Rule,
    63 Fed. Reg. 65,348 (Dep't Commerce Nov. 25, 1998) ("CVD Preamble") ....................11, 17

Designations of Developing and Least-Developed Countries Under the
    Countervailing Duty Law,
    85 Fed. Reg. 7,613 (USTR Feb. 10, 2020) ............................................................................29

NONCONFIDENTIAL
VERSION

**DEFENDANT-INTERVENORS' COMMENTS IN SUPPORT OF REMAND RESULTS**

These comments are filed on behalf of Insteel Wire Products Company, Sumiden Wire

Products Corporation, and Wire Mesh Corp., Defendant-Intervenors in this action and petitioners

below, in support of the U.S. Department of Commerce's ("the Department") final

redetermination pursuant to remand in the above-captioned action.  See Final Results of

Redetermination Pursuant to Court Remand; Prestressed Concrete Steel Wire Strand from the

Republic of Turkey; *Celik Halat ve Tel Sanayi A.S. v. United States*, Court No. 21-00050 (Apr.

15, 2022) ("Final Redetermination") (ECF No. 34) (Remand PR 30).[1]

## STATEMENT OF FACTS

In the underlying investigation, the Department rejected Celik Halat ve Tel Sanayi A.S.'s

("Celik Halat") untimely filed response to Section III of the Department's initial countervailing

duty questionnaire.  Decision Memorandum for the Final Determination of the Countervailing

Duty Investigation of Prestressed Concrete Steel Wire Strand from the Republic of Turkey at 34

(Dec. 7, 2020) ("I&D Memo") (PR 370).  Because necessary information was missing from the

record due to Celik Halat's failure to cooperate to the best of its ability to meet the Section III

questionnaire response deadline, the Department assigned Celik Halat a countervailing duty rate

based on total adverse facts available ("AFA").  Id. at 35-37; see also Decision Memorandum for

---

[1]    Documents in the administrative record compiled in connection with the remand proceeding
are cited using the descriptions provided in the Index to the Administrative Record, filed with
this Court on April 28, 2022 (ECF No. 35).  Documents are cited by their confidential record
number ("Remand CR __") and/or their public record number ("Remand PR __"), as
appropriate.  Additionally, documents in administrative record compiled in connection with the
Department's original investigation are cited using the descriptions provided in the Index to the
Administrative Record, filed with this Court on March 15, 2021 (ECF No. 15).  These
documents are cited by their confidential record number ("CR __") and/or their public record
number ("PR __"), as appropriate.

NONCONFIDENTIAL
VERSION

the Preliminary Determination of the Countervailing Duty Investigation of Prestressed Concrete

Steel Wire from the Republic of Turkey at 9-15 (Sept. 14, 2020) ("Prelim. Decision Memo") (PR

253) (describing the selection of program-specific AFA rates applicable to Celik Halat,

consistent with the Department's CVD AFA hierarchy).

On February 3, 2021, Celik Halat appealed the Department's final determination to this

Court (ECF Nos. 1-2).  Based on briefing by the parties, the Court granted Celik Halat's Motion

for Judgment on the Agency Record, holding that the Department abused its discretion by

rejecting Celik Halat's untimely filed Section III questionnaire response, leading to a subsidy

rate based on total AFA.  See Celik Halat ve Tel Sanayi A.S. v. United States, Ct. No. 21-00050,

Slip Op. 22-13, at 35-37 (Feb. 15, 2022) ("Court Op.") (ECF No. 30).  As a result, the Court

ordered "Commerce to determine, expeditiously, a new estimated net CVD subsidy rate for Celik

Halat that does not resort to 19 U.S.C. § 1677e with respect to the filing of the response to the

Initial Questionnaire . . . ."  Id. at 37.  The Court further established a "limited period of time for"

the Department to determine a new estimated subsidy rate – 45 days from the date of the

issuance of the Court's Opinion and Order.  Id. at 37-38.

On remand, the Department instructed Celik Halat to resubmit its Section III initial

questionnaire response.  Letter from USDOC to Interested Parties Re: Remand Redetermination

in the Countervailing Duty Investigation of Prestressed Concrete Steel Wire Strand from the

Republic of Turkey at 1 (Feb. 18, 2022) (Remand PR 1).  The Department also provided

interested parties three business days to submit information to rebut, clarify, or correct

NONCONFIDENTIAL
VERSION

information contained in Celik Halat's response.[2]  Id.  Celik Halat resubmitted its initial

questionnaire response on February 21, 2022.  Letter from Global Consulting to USDOC re:

Resubmission of CVD Questionnaire Response of Celik Halat ve Tel Sanayi A.S., at 1 (Feb. 21,

2022) ("Celik Halat Initial QR") (Remand CR 1; Remand PR 7).  Following Celik Halat's

questionnaire response resubmission, Defendant-Intervenors submitted comments on

deficiencies in Celik Halat's response.  See Letter from Kelley Drye & Warren LLP to USDOC

re: Petitioners' Comments on Celik Halat ye Tel Sanayi A.S.'s Resubmitted Section III

Questionnaire Response (Feb. 25, 2022) (Remand CR 4; Remand PR 9).

The next business day, the Department issued to Celik Halat a supplemental

questionnaire.  See Letter from USDOC to Celik Halat re: Supplemental Questionnaire (Feb. 28,

2022) ("Supplemental Questionnaire") (Remand PR 10).  Of relevance for these comments, the

Department required the following of Celik Halat in a supplemental response:

> In response to III. Program Specific Questions, question M., at
> page 23, you stated that Celik Halat received an investment
> incentive certificate under the General Investment Incentive
> Scheme that was open during the POI. Provide a response to all
> questions in the Standard Questions Appendix and the Tax
> Program Appendix, as instructed.

Supplemental Questionnaire at 3 (Remand PR 10).

In response to a request from Celik Halat, the Department granted the company an

extension for its supplemental questionnaire response from March 3, 2022 to March 7, 2022, and

for translations of certain documents in that supplemental response to March 10, 2022.  See

---

[2]    Normally, interested parties have fourteen business days to submit information to rebut,
clarify, or correct information contained in a respondent's initial questionnaire responses. See 19
C.F.R. § 351.301(c)(1)(v).

NONCONFIDENTIAL
VERSION

Letter from USDOC to Celik Halat re: Request for Extension to Respond to Supplemental Questionnaire – Errata (Mar. 3, 2022) (Remand PR 14); Letter from USDOC to Celik Halat re: Request for Extension to Respond to Supplemental Questionnaire (Mar. 2, 2022) (Remand PR 13).  Celik Halat submitted its supplemental questionnaire response on March 7, 2022.  Letter from Global Consulting to USDOC re: Resubmission of CVD Questionnaire Response of Celik Halat ve Tel Sanayi A.S. (Mar. 7, 2022) ("Celik Halat Supplemental QR") (Remand CR 5; Remand PR 15).

On March 11, 2022, the Department issued Celik Halat a questionnaire in lieu of verification.  See Letter from USDOC to Celik Halat re: In Lieu of Performing an On-Site Verification Questionnaire (Mar. 11, 2022) (Remand PR 21).  Celik Halat responded to the verification questionnaire on March 16, 2022.  Letter from Global Consulting to USDOC re: CVD Verification Questionnaire Response of Celik Halat ve Tel Sanayi A.S. (Mar. 16, 2022) (Remand CR 9; Remand PR 22).

The Department then issued a draft redetermination pursuant to court remand.  See Draft Results of Redetermination Pursuant to Court Remand; Prestressed Concrete Steel Wire Strand from the Republic of Turkey; Celik Halat ve Tel Sanayi A.S. v. United States, Court No. 21-00050 (Mar. 21, 2022) ("Draft Redetermination") (Remand PR 25).  The Department calculated a net countervailable subsidy rate for Celik Halat of 2.59 percent based on the company's questionnaire responses.  Id. at 2.  In the Draft Redetermination, the Department concluded that Celik Halat had "failed to provide the requested necessary information that would allow {the Department} to assess the benefit conferred under the GIIS Customs Duty Exemption program, which is part of the Investment Encouragement Program (IEP)," notwithstanding the Department having requested that information for a second time in the supplemental questionnaire.  Id. at 6-

7. Accordingly, due to Celik Halat's failure to act to the best of its ability, and consistent with the Department's well-established CVD AFA hierarchy, the Department applied a program-specific AFA rate of 2.27 percent. <u>Id.</u> at 6-13.

Defendant-Intervenors and Celik Halat each filed comments on the Department's <u>Draft Redetermination</u>. Defendant-Intervenors urged the Department to assign Celik Halat a program rate based on AFA for its Rediscount Loan Program benefit, as the company failed to provide supporting documentation necessary to confirm the accuracy of its reported loan information. <u>See</u> Letter from Kelley Drye & Warren LLP to USDOC re: Petitioners' Comments on the Department's Draft Remand Redetermination at 2-8 (Mar. 25, 2022) ("Petitioners' Remand Comments") (Remand CR 16; Remand PR 29). Alternatively, Defendant-Intervenors argued the Department should revise the benefit calculation under the Rediscount Loan Program to account for all countervailable loans – the Government of Turkey had reported that Celik Halat received Rediscount Loans through both the Turkish Eximbank and commercial banks – and to revise the loan interest rate benchmarks in a manner consistent with the Department's rules. <u>Id.</u> at 7-11.

Celik Halat argued that the Department should reverse its application of an AFA program rate for the GIIS Customs Duty Exemption Program as contrary to the Court's order and because, according to Celik Halat, the company provided the necessary information. <u>See</u> Letter from Global Consulting to USDOC re: Comments on Draft Redetermination of Celik Halat ve Tel Sanayi A.S., at 3-13 (Mar. 25, 2022) ("Celik Halat Remand Comments") (Remand PR 28). Celik Halat also asserted that the assigned program AFA rate was not reasonable and unfairly outcome-determinative. <u>Id.</u> at 13-16.

Following the parties' submission of comments, the Department issued the <u>Final Redetermination</u> with the Court.

NONCONFIDENTIAL
VERSION

## SUMMARY OF ARGUMENT

Defendant-Intervenors respectfully request that the Court sustain the Department's <u>Final Redetermination</u> in its entirety.

First, the Department's application of partial AFA with respect to the General Investment Incentive Scheme ("GIIS") Customs Duty Exemption Program is supported by substantial evidence and in accordance with law. Contrary to Celik Halat's claim, the Court did not and cannot as a matter of law restrict the Department's statutory authority to apply facts available to the content of Celik Halat's questionnaire response once accepted for examination in the remand proceeding. In fact, Celik Halat's questionnaire response was incomplete, as the company acknowledged.

Although Celik Halat reported using the GIIS Customs Duty Exemption Program during the POI, it failed to provide necessary information in response to the Standard Questions and Tax Program Appendices for the program, as instructed by the Department. The information requested was necessary for the Department to be able to determine the program's countervailability and whether the program was "tied" to non-subject merchandise according to the law on attribution of subsidies. When the Department requested a second time that Celik Halat complete the Standard Questions and Tax Program Appendices, Celik Halat reiterated its belief that the program was not countervailable on the grounds that the equipment imported duty-free under the program could only be used in the production of non-subject merchandise, and provided only some of the required documentation it admitted having in its possession.

The incomplete responses and withheld information prevented the Department from being able to conduct a complete analysis of the program. Celik Halat did not fully cooperate with the Department, withholding information it contended was not relevant according to an

NONCONFIDENTIAL
VERSION

erroneous understanding of the law on the question of countervailability. The law does not support Celik Halat's unilateral decision to provide only what it believed to be relevant to the Department's analysis. Moreover, Celik Halat's reliance on how the program was used (based on its own statements) was misplaced. Instead, the incomplete record impeded the Department's threshold countervailability analysis (i.e., whether the Government of Turkey intentionally tied the bestowal of the subsidy to non-subject merchandise) and ability to calculate a program benefit. By substituting its own judgment for that of the Department on two occasions, despite the Department's clear and repeated requests for information, Celik Halat failed to cooperate to the best of its ability and the application of partial AFA was warranted.

Second, the Department's selection of the AFA rate for the GIIS Customs Duty Exemption Program was reasonable. The Department selected the AFA rate at issue in accordance with its long-standing, well-established, and court-approved CVD AFA hierarchy. Celik Halat's assertion that the Department should have departed from that hierarchy was baseless. Despite Celik Halat's accusation, there is no evidence that the Department selected a rate to achieve a specific outcome, as the determination to apply AFA was itself supported by substantial evidence and the CVD AFA hierarchy was strictly applied.

I.   **THE DEPARTMENT'S APPLICATION OF PARTIAL AFA WAS LAWFUL**

A.   **The Court Did Not Constrain the Department's Authority to Resort to Adverse Facts Available**

Celik Halat claimed in its administrative remand comments that the Department's Draft Redetermination was unlawful because the Court ordered the Department "not to impose adverse facts available *in its calculation of the CVD rate* for Celik Halat." Celik Halat Remand

Comments at 3 (emphasis added) (Remand PR 28). But Celik Halat misunderstood both the Court's remand order and the law.

As a factual matter, the Court did not eliminate the Department's ability to use AFA to determine the company's subsidy rate in appropriate circumstances. The Court ordered "Commerce to determine . . . a new estimated net CVD subsidy rate for Celik Halat that does not resort to 19 U.S.C. § 1677e with respect to *the filing* of the response to the Initial Questionnaire," Court Op. at 37 (emphasis added), but said nothing about the Department's authority to resort to the use of adverse facts available as to *the content* of the initial questionnaire response. See Final Redetermination at 45-46 (Remand PR 30).

Indeed, Celik Halat admitted that it provided "some incomplete information" in responding to the Department. Celik Halat Remand Comments at 5 (Remand PR 28). It argued, however, that the result of its non-compliance should have been for the Department to "fill any gaps or missing information with neutral facts available." Id. at 5. Yet, the Court's order refers generally to section 1677e of the statute, which provides for the application of both neutral and adverse facts available. See Court Op. at 37. Thus, under Celik Halat's reading of the Court's remand order, the Department would also have been precluded from filling gaps in a neutral manner with respect to the information the company acknowledged it failed to provide. Celik Halat's self-serving interpretation of the Court's order – that the Department may apply one type of facts available (neutral), but not the other (adverse) – is unfounded.

More importantly, as a legal matter, an interpretation of the Court's order restricting the Department from resorting to adverse facts available under appropriate circumstances would be contrary to law, as the Court does not possess such authority. As the U.S. Supreme Court held,

>while a court may have occasion to remand an agency decision
>because of the inadequacy of the record, the agency should
>normally be allowed to "exercise its administrative discretion in
>deciding how, in light of internal organization considerations, it
>may best proceed to develop the needed evidence and how its prior
>decision should be modified in light of such evidence as develops."

Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S.

519, 544 (1978) (quoting FPC v. Transcontinental Gas Pipe Line Corp., 423 U.S. 326, 333

(1976)). The U.S. Court of Appeals for the Federal Circuit recently upheld this important tenet.

In NEXTEEL Co. v. United States, the Federal Circuit sustained the Court of International

Trade's substantive analysis, but vacated its remand order because the Court "exceeded its

authority by directing Commerce to reach a particular outcome." 28 F.4th 1226, 1238 (Fed. Cir.

2022).

      The Department's ability to apply adverse facts available in circumstances set forth in the

statute cannot be delimited by the Court before the facts of the case have been developed. The

remand proceeding provided Celik Halat with an opportunity to resubmit its information

notwithstanding its initial untimely filing, and required the Department not to reject that

information, but the Department still needed to examine for completeness and verify the

information pursuant to its statutory obligations. See, e.g., 19 U.S.C. §§ 1677m(d), (i)(1); Final

Redetermination at 46 ("{I}n our supplemental questionnaire, we requested that Celik Halat

provide the bare minimum information to fill certain gaps in the record due to Celik Halat's

failure to respond fully to section III of the initial questionnaire.") (Remand PR 30).

      The statute states that the administering authority "shall" use facts otherwise available,

which may include adverse inferences, where parties withhold information, fail to provide

needed information, or where information submitted cannot be verified, among other reasons. 19

U.S.C. § 1677e(a)-(b).   In applying facts otherwise available, the Department has a duty to ensure uncooperative parties do not benefit from their failure to cooperate.   Hyundai Elec. & Energy Sys. Co. v. United States, 15 F.4th 1078, 1090 (Fed. Cir. 2021) (citing Mukand, Ltd. v. United States, 767 F.3d 1300, 1307 (Fed. Cir. 2014) and citing H.R. Rep. No. 103-316, at 200 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4199).   Here, Celik Halat's apparent view that it had received a pass from the Court and could not be subject to the use of even partial adverse facts available irrespective of what information it submitted or withheld from the agency or whether that information was verifiable was directly inconsistent with the statute.   See Celik Halat Remand Comments at 3 (Remand PR 28).

    **B.**    **The Department's Application of Partial Adverse Facts Available Is Supported By Substantial Evidence and Otherwise In Accordance With Law**

        **1.**    **The Subsidy Program at Issue and the Legal Framework for Attribution**

In the Final Redetermination, the Department applied partial AFA to assign a program-specific rate for the General Investment Incentive Scheme ("GIIS") Customs Duty Exemption Program.   The General Investment Incentive Scheme is one of four separate incentive schemes under the broader Investment Incentive Scheme (also described as the Investment Encouragement Program, or IEP).   Final Redetermination at 15, 23 (Remand PR 30).   The purpose of the IEP, according to the Government of Turkey, is to reduce regional disparities by encouraging regional, large scale, and strategic investments.   Id. at 15.   Under the GIIS Customs Duty Exemption Program, a company applies to the Turkish Customs Authority for an investment incentive certificate, or IIC, to import machinery and equipment duty free.   Id. at 16. The importing company holding the IIC remains liable for the unpaid duty until it is waived upon the Government of Turkey's issuance of a "completion visa."   Id. at 16-17.

NONCONFIDENTIAL
VERSION

The primary finding underlying the Department's partial AFA determination was that Celik Halat did not provide the information necessary to allow the Department to analyze the countervailability of the GIIS Customs Duty Exemption Program. See Final Redetermination at 21-22, 46-47 (Remand PR 30). The Department previously determined the GIIS Customs Duty Exemption program to be generally countervailable. Id. at 16 (citing Prelim. Decision Memo at 23-247 (PR 253)). In assessing the countervailability of the GIIS Customs Duty Exemption Program for a specific user, however, the Department will attribute the subsidy to a particular product – e.g., non-subject merchandise – only if the subsidy is "tied to the production or sale of a particular product." 19 C.F.R. § 351.525(b)(5)(i). The Department determines whether a subsidy is tied by examining "the purpose of the subsidy based on information available at the time of bestowal," not how a firm actually uses the subsidy. See Countervailing Duties; Final Rule, 63 Fed. Reg. 65,348, 65,403 (Dep't Commerce Nov. 25, 1998) ("CVD Preamble"). The Department "must evaluate the bestowal documents, e.g., application, contract, or approval that explicitly indicates that an intended link *to the particular products or operations was known to the government authority and so acknowledged* prior to, or concurrent with, conferral of the subsidy." Countervailing Duty Investigation of Certain Softwood Lumber Products from Canada: Issues and Decision Memorandum for the Final Determination, at Comment 65 (Nov. 1, 2017) (emphasis added), ref'd in 82 Fed. Reg. 51,814 (Dep't Commerce Nov. 8, 2017) (final determination); see also Final Redetermination at 21 (citing Maverick Tube Corp. v. United States, Slip Op. 16-16, Consol. Ct. No. 14-00229 (Ct. Int'l Trade Feb, 22, 2016), aff'd 857 F.3d 1353 (Fed. Cir. 2017)) (Remand PR 30).

Importantly, benefits do not need to be specifically tied to subject merchandise to be countervailable; a subsidy that generally confers a benefit to the *company* is countervailable. See

NONCONFIDENTIAL
VERSION

Taizhou United Imp. & Exp. Co. v. United States, 2022 Ct. Intl. Trade LEXIS 14, at *21 (Feb. 18, 2022).  For an exception to that finding to apply as Celik Halat claimed here (i.e., for the Department to exclude a subsidy from the benefit calculation as non-countervailable), a respondent like Celik Halat must demonstrate that the conferring government intentionally linked the benefits to a particular *non-subject product or operation*.  See id. at *20-23; Issues and Decision Memorandum for the Final Determination in the Countervailing Duty Investigation of Fine Denier Polyester Staple Fiber from India, at 56 (Jan. 16, 2018) (explaining that it is respondent's burden to produce evidence that benefits are tied to a particular product or market), ref'd in 83 Fed. Reg. 3,122 (Dep't Commerce Jan. 23, 2018) (final determination); Final Redetermination at 47 (Remand PR 30).

Here, and as described further below in sections I.B.2. and I.B.3., Celik Halat erroneously relied on how its GIIS certificate was *used* to claim its benefits from this program were not countervailable and, relatedly, as grounds for not providing complete information to the Department.  Specifically, Celik Halat claimed it did not receive countervailable benefits because the program was used to import equipment for the production of wire rope, which is non-subject merchandise.  See Celik Halat Remand Comments at 6-7 (Remand PR 28).  The Department, however, correctly found that such assertions were not sufficient to demonstrate that the subsidy was granted by the Government of Turkey with the intent of benefitting only non-subject merchandise production (i.e., tied to a particular product), rather than generally bestowed upon Celik Halat as a company.  See Final Redetermination at 21-22, 47 (Remand PR 30).

NONCONFIDENTIAL
VERSION

**2.      Celik Halat Did Not Provide All Necessary Information in Its Initial Questionnaire Response**

In Section III of the initial countervailing duty questionnaire, the Department instructed Celik Halat, for IEP Customs Duty Exemptions, to "provide a detailed description of this program and its workings" and to "respond to all questions in the Standard Questions Appendix and the Tax Program Appendix."  Letter to Government of the Republic of Turkey from USDOC re: Countervailing Duty Questionnaire at Section III, at 11-12 (June 9, 2020) ("CVD Questionnaire") (PR 49).   Celik Halat reported that it received a GIIS certificate under the program that was open during the period of investigation ('POI").   Celik Halat Initial QR at 23 (Remand CR 1; Remand PR 7); see also Final Redetermination at 15 (Remand PR 30).   Celik Halat further explained that its open GIIS certificate was "for the production of non-subject merchandise," but did not provide a detailed description of the program and did not provide *any* responses to the Standard Questions Appendix or the Tax Program Appendix as the Department requested.   Celik Halat Initial QR at 23 (Remand CR 1; Remand PR 7); see also Final Redetermination at 18 (Remand PR 30).  Instead, Celik Halat withheld the information requested based on its unilateral and erroneous view that the information was not needed and that benefits must be specifically tied to subject merchandise to be countervailable.  Celik Halat also did not provide any documentation to support its non-subject merchandise claim.[3]  Id.

The information requested in the Standard Questions Appendix and the Tax Program Appendix was necessary to determine if Celik Halat received a countervailable benefit from the

---

[3]   In any event, the obligation to respond to the Standard Questions Appendix and Tax Program Appendix questions was not conditioned on benefits being related to subject merchandise.  Final Redetermination at 18 (Remand PR 30).

GIIS Customs Duty Exemption Program and, if so, how the Department should treat and calculate that benefit (i.e., as an interest-free contingent liability loan or a grant, and in what amount). The Standard Questions Appendix sought information on whether the application or approval for assistance was related to specific merchandise, which was necessary to evaluate Celik Halat's claim in its initial questionnaire response that the GIIS certificate was tied to non-subject merchandise. See CVD Questionnaire at Section III, Standard Questions Appendix (PR 49); Final Redetermination at 17 (Remand PR 30). The Standard Questions Appendix also asked for program documentation such as application, approval letter, contract, claim form, etc., which would have also related to the non-subject merchandise claim and would have permitted the Department to understand if Celik Halat had received a completion visa. See CVD Questionnaire at Section III, Standard Questions Appendix (PR 49); Final Redetermination at 17-18 (Remand PR 30). As described above in section I.B.1., such information and evidence was necessary for the Department to evaluate if the Government of Turkey intentionally restricted the subsidy benefit to non-subject merchandise at the time of bestowal.

In addition, the Tax Program Appendix sought information on how the program operated (e.g., an exemption, credit, or deferral of taxes) and the amount of tax savings, which would have permitted the Department to calculate Celik Halat's benefit from the exemption. See CVD Questionnaire at Section III, Tax Program Appendix (PR 49); Final Redetermination at 18 (Remand PR 30). Without this information, and knowing only that Celik Halat participated in the GIIS Customs Duty Exemption Program, the Department was unable to further examine whether the program provided Celik Halat with a countervailable benefit during the POI. It was not just a matter of filling gaps in the record – any action by the Department one way or the other would have been speculative.

NONCONFIDENTIAL
VERSION

3. **Celik Halat Did Not Provide All Necessary Information in Its Supplemental Questionnaire Response, Despite the Department's Repeated Instructions**

Because Celik Halat did not provide all information necessary for the Department to evaluate use of and benefit from the GIIS Customs Duty Exemption Program, the Department issued Celik Halat a supplemental questionnaire.  In that supplemental questionnaire, the Department *again* asked for responses to "all questions in the Standard Questions Appendix and the Tax Program Appendix, as instructed," as related to the open GIIS certificate Celik Halat had reported.  See Supplemental Questionnaire (Remand PR 10).  Notably, the Department did not reiterate its request for Celik Halat to provide a detailed description of the program even though the company had failed to comply with that instruction in the initial questionnaire response.  The Department was instead seeking "the bare minimum information" necessary to complete the analysis of the program.  Final Redetermination at 46 (Remand PR 30).  In other words, recognizing the condensed remand schedule, the Department gave Celik Halat another opportunity to provide the most basic information required for the agency to do its job.

Celik Halat did not, however, provide the Department with the information the agency needed, despite the agency's clear and reasonable requests.  In its supplemental questionnaire response, Celik Halat repeated its initial answer regarding the GIIS certificate nearly verbatim, stating that it received the GIIS certificate "for the production of non-subject merchandise," and that the certificate "is not relevant to the analysis of potential benefits to the production and sale of subject merchandise by Celik Halat."  Celik Halat Supplemental QR at 2 (Remand CR 5; Remand PR 15).  Further, despite acknowledging that it kept the necessary documents in its possession, Celik Halat did not provide those documents to the Department.  See id. at Exh. 26; see also Final Redetermination at 20 (Remand PR 30).  What Celik Halat provided in its

NONCONFIDENTIAL
VERSION

supplemental questionnaire response continued to be inadequate with respect to (1) whether the GIIS certificate was tied to non-subject merchandise, and (2) the amount of customs duties exempted.

### a.   Celik Halat Did Not Demonstrate that the GIIS Certificate Was Affirmatively Tied to Specific Non-Subject Merchandise

In the Standard Questions Appendix, Celik Halat reported to the Department that it had the requested documentation in its possession, but did not provide all documents to the agency despite the clear request. See Celik Halat Supplemental QR at Exh. 26 (stating that it "kept copies of its application and of the approved certificate, as well as records of its compliance with the program by purchasing the specific machinery") (Remand CR 5; Remand PR 15); Final Redetermination at 20 (Remand PR 30).  Although Celik Halat submitted the approved GIIS certificate, the accompanying list of imported equipment, and a translated copy of the completion visa, Celik Halat did not provide its application[4] or the compliance records it stated were in its possession. See Celik Halat Supplemental QR at Exh. 26.

The incomplete documentation that Celik Halat submitted was inadequate for the Department to evaluate Celik Halat's claim that the GIIS certificate was tied to particular non-subject merchandise.  The approval document at Exhibit 26 provided a very basic description of the  [

                                                                    ] Celik Halat Supplemental

---

[4]    This is apparent from the face of the GIIS certificate approval letter, [
                                                                    ] – a document not included in Exhibit 26.  Supplemental Response at Exh. 26 (Remand CR 5; Remand PR 15).

NONCONFIDENTIAL
VERSION

QR at Exh. 26 (Remand CR 5; Remand PR 15).   Nothing in the GIIS certificate approval

documentation demonstrated that the certificate was granted with an intentional link to non-

subject wire rope products.   In fact, [                                                                          ]

would include subject PC strand manufacturing operations.   See CVD Preamble, 63 Fed. Reg. at

65,403.

        Celik Halat bore the burden of demonstrating that the conferring government intended

and acknowledged that the subsidy benefit specific non-subject product or operations in order for

the Department to exclude that subsidy from its countervailable benefit calculations.   See Final

Redetermination at 21, 47 (Remand PR 30); section I.B.1., supra.   Celik Halat did not meet that

burden.   Instead of providing its GIIS certificate application, as requested by the Department on

two occasions, Celik Halat chose to rely solely on its own assertion that the GIIS certificate was

used to import equipment limited to the production of non-subject merchandise.   Celik Halat

Supplemental QR at 2-3 (Remand CR 5; Remand PR 15).   In Taizhou United, the Court rejected

the exporter's "conclusory statements" that the subsidies bestowed were "tied" to non-subject

merchandise because such statements "failed to engage" with the Department's explanation of

the law on tying in its remand results.   Taizhou United, 2022 Ct. Intl. Trade LEXIS 14, at *15-

16.   Similarly here, Celik Halat's assertion that the GIIS certificate was used to import

equipment for production of non-subject wire rope was not a substitute for evidence that the

Government of Turkey intentionally restricted the subsidy to wire rope operations.

        The premise of the arguments made in Celik Halat's questionnaire responses and

administrative remand comments was fundamentally flawed: a subsidy recipient's use of the

benefit is not sufficient to demonstrate that a subsidy is tied to non-subject merchandise for

purposes of excluding that subsidy as a countervailable benefit.   Celik Halat's reliance on the

NONCONFIDENTIAL
VERSION

type of equipment it claims it imported under the GIIS certificate as a basis for refusing to comply with the Department's repeated requests was in error because the nature of the equipment was insufficient for the Department to assess the Government of Turkey's purpose and intent in providing the subsidy.  See Celik Halat Remand Comment at 6 ("The reason Celik Halat did not respond in detail with respect to this program in its initial CVD response was that it does not involve subject merchandise."), 7-8, 10-12 (asserting the Department should have relied on the company's certified statements that the imported equipment could only be used for non-subject merchandise).

The question for the Department was whether the Government of Turkey *knowingly and intentionally restricted* the subsidy at issue *to non-subject products or operations* at the time it was conferred, not how the recipient actually used it (e.g., electing to import a certain type of equipment, details about that equipment, or how that equipment was used).  As discussed above, the Government of Turkey's intent to support particular non-subject products was not evident within the GIIS certificate approval documentation that the company provided (only after the Department requested such information a second time).  The necessary evidence of tying *might* have been shown in Celik Halat's application, but Celik Halat chose to not provide that document despite the Department's multiple requests.  As the Department found:

> None of the information that Celik Halat provided indicates that the IIC is related exclusively and explicitly to the production of non-subject merchandise, other than statements to that effect by Celik Halat.  Further, the approval documents, i.e., the IIC, does not state that the duty exemptions under this IIC can only be used for the production of wire rope.  Rather, the only information on the record is that an IIC that contained customs duty and VAT exemptions was granted to Celik Halat, the company, of which its business includes the production of the subject merchandise.

Final Redetermination at 21-22 (Remand PR 30).

NONCONFIDENTIAL
VERSION

Celik Halat erred in relying on its own statements while refusing to provide the Department with requested documentation that Celik Halat admitted it had in its possession.[5] "{W}hether the IIC was tied to non-subject merchandise is a matter to be determined by Commerce, not Celik Halat. Thus, a full response from Celik Halat was required even if, in Celik Halat's opinion, the IIC was tied to non-subject merchandise." Id. at 22. By withholding necessary information in both its initial and its supplemental questionnaire responses, Celik Halat's improper "determination to substitute its judgment for the Department's has prevented the Department from conducting a full investigation in order to determine the countervailability of this program" and warrants the application of AFA. Issues and Decision Memorandum for the Final Determination in the Countervailing Duty Investigation of Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from India, at 41 (Dec. 4, 2017), ref'd in 82 Fed. Reg. 58,172 (Dep't Commence Dec. 11, 2017) (final determination) (citing Maverick Tube Corp. v. United States, 857 F.3d 1353, 1360-61 (Fed. Cir. 2017); Issues and Decision Memorandum for the Final Determination in the Countervailing Duty Investigation of Finished Carbon Steel Flanges from India, at 27 (June 23, 2017), ref'd in 82 Fed. Reg. 29,479 (Dep't Commerce June 29, 2017) (final determination)); see also Final Redetermination at 22 (Remand PR 30).

---

[5]   There is no factual dispute about the universe of documentation Celik Halat did, or did not, provide with respect to this program. Despite a contrary statement in the supplemental questionnaire response, Celik Halat later conceded that it did not provide its GIIS certificate application, noting that it only provided "the approval letter for the application and the resulting investment certificate, as well as a detailed list of the equipment authorized under the program." Celik Halat Remand Comments at 7 (Remand PR 28).

NONCONFIDENTIAL
VERSION

> **b.**    **Celik Halat Refused to Provide Necessary Information for the Department to Calculate a Program Benefit**

In the Tax Program Appendix, Celik Halat acknowledged that the GIIS Customs Duty Exemption Program "involves the non-applicability of *certain import duties or VAT* that might otherwise be charged." Celik Halat Supplemental QR at Exh. 26 (emphasis added) (Remand CR 5; Remand PR 15). The company insisted, however, that it "did not use this program to take . . . exemption from taxes owed . . . . Thus, the remaining questions are not relevant." Id. In response to the Department's instruction to "indicate the amount of the tax savings derived from the use of this program," Celik Halat again admitted that it "received an exemption from duties or VAT assessments," but did not provide an amount. Id. As the Department explained,

> Celik Halat admitted that it received an exemption from customs duties; however, despite our Tax Program Appendix's clearly-worded statement that we are seeking information in relation to exemptions from taxes owed, Celik Halat failed twice to respond fully to the questions in our Tax Program Appendix. Instead of providing necessary information that would allow us to assess any benefit conferred under this program, Celik Halat told us that this program involves the "non-applicability of certain import duties" and made the determination itself that certain questions are not relevant and that it need not respond.

Final Redetermination at 19 (Remand PR 30).

In its comments on the Department's draft remand redetermination, Celik Halat alleged that the Department never asked for duty rates or duty amounts exempted under the program. See Celik Halat Remand Comments at 8, 9 (Remand PR 28). That claim is incorrect, considering that the Department asked for "*the amount of tax savings* derived from the use of this program" and Celik Halat responded that it "*received an exemption from duties or VAT assessments*" as a result of the GIIS certificate. Celik Halat Supplemental QR at Exh. 26 (emphases added) (Remand CR 5; Remand PR 15). In other words, the Department *did* ask for

the amount of monies owed that went unpaid, and Celik Halat *did* understand the question to mean duties or VAT (value added *taxes*). See Final Redetermination at 46 ("Clearly, an exemption of any sort provides a benefit in the amount not paid to the government that would otherwise be owed, whether the exemption is for a tax not paid or for duties not paid. Furthermore, a customs duty or a tariff is commonly referred to as a form of tax by governments on imported merchandise." (citing cases)) (Remand PR 30).

Even if there was some lingering confusion about whether the Department meant "duties" when it said "taxes" in the standard questions set forth in the Tax Program Appendix – as Celik Halat indicated may have been the issue (see Celik Halat Remand Comments at 10 (Remand PR 28)) – the company had an obligation to seek clarification before *twice* refusing to answer the Department's inquiries. See CVD Questionnaire at Section I, General Instructions ("If you have questions during the course of this investigation, we urge you to consult with the officials in charge named on the cover page."); Nan Ya Plastics Corp. v. United States, 810 F.3d 1333, 1337-38 (Fed. Cir. Jan. 19, 2016) ("{T}he burden of creating an adequate record lies with interested parties and not with Commerce.") (citation omitted).  As the Department explained in the Final Redetermination, the agency "specifically instructed Celik Halat to complete the Tax Program Appendix with respect to this program" after its initial failure to complete the appendix was identified as a deficiency.  Final Redetermination at 46-47 (Remand PR 30).  In that way, the Department made clear to Celik Halat that the questions in the Tax Program Appendix were, in fact, relevant to the GIIS Customs Duty Exemption Program.

Finally, Celik Halat was incorrect in asserting that verification would have been an appropriate time for the Department to ask the company to provide additional new information, including the amount of duties exempted.  See Celik Halat Remand Comments at 10 (Remand

PR 28).  Celik Halat ignores that the Department had already sought the requested information on two occasions – in the initial and supplemental questionnaire – and Celik Halat had twice refused to comply.  Giving Celik Halat a second opportunity to respond to the Department's requests was sufficient; the agency did not need to do more, especially because Celik Halat stated it believed it did not have to comply (albeit based on a misunderstanding of the law).  See New Mexico Garlic Growers Coal. v. United States, 352 F. Supp. 3d 1281, 1295 (Ct. Int'l Trade 2018) (finding that Commerce is not required "to issue multiple supplemental questionnaires . . . Rather, one supplemental questionnaire is enough.") (citing Maverick Tube Corp. v. United States, 857 F.3d 1353, 1361 (Fed. Cir. 2017)), aff'd on other grounds, 953 F.3d 1358 (Fed. Cir. 2020).  Celik Halat also ignored the well-established principle that verification is a procedure to confirm information *already on the record*, not to obtain new factual information.  Final Redetermination at 47-48 (citing Guizhou Tyre Co. v. United States, 523 F. Supp. 3d 1312, 1350 (Ct. Int'l Trade 2021)) (Remand PR 30).

### 4.     The Department's Application of Partial Adverse, Rather Than Neutral, Facts Available Is Appropriate

Celik Halat's arguments during the administrative remand proceeding that the Department should have only applied neutral facts available were premised on a flawed view of the record.  See Celik Halat Remand Comments at 12-13 (Remand PR 28).  First, the gap in the record is not whether the imported equipment could only be used for the production of non-subject merchandise, as Celik Halat claimed.  See id.  The gap in the record is the lack of evidence – for example, Celik Halat's GIIS certificate application – on which the Department could make a countervailability determination (i.e., whether the subsidy was *knowingly earmarked* for specific non-subject products or operations).  And the lack of evidence was the

direct result of Celik Halat's incorrect view that such information was not necessary to the Department's analysis and unilateral decision to withhold that information from the Department.

Second, the Department did not fail to "ask{} for what it really wanted in a supplemental questionnaire." Id. at 13. On the contrary, the Department sought the information necessary for its analysis in both the initial questionnaire – by instructing Celik Halat to complete the Standard Questions Appendix and the Tax Program Appendix – and again in a supplemental questionnaire, asking for that *same information again* when Celik Halat failed to comply in its initial questionnaire response. Celik Halat's refusal on two occasions to supply the requested information necessary to determine the countervailability of the program and to calculate the benefit from the program prevented the Department from being able to complete its analysis. Final Redetermination at 22-23 (Remand PR 30). As the Department explained,

> We provided Celik Halat a second opportunity to submit a complete response when we issued the supplemental questionnaire, but Celik Halat again provided an incomplete response. Due to the incomplete responses that Celik Halat gave in response to our instructions in the supplemental questionnaire, we are unable to analyze Celik Halat's benefit under this program. . . .
>
> Thus, because Celik Halat withheld requested information, we find it is appropriate to apply facts available, pursuant to section 776(a) of the Act. Additionally, we find it is appropriate to apply an adverse inference, pursuant to section 776(b) of the Act, because Celik Halat did not cooperate to the best of its ability to provide complete information regarding the benefit of this program, despite Commerce's multiple requests and evidence that Celik Halat had this information in its possession.

Id.

Celik Halat cannot pick and choose which information to submit to the Department. The questions asked by the Department are deliberate. ABB, Inc. v. United States, 355 F. Supp. 3d 1206, 1222 (Ct. Int'l Trade 2018) ("Commerce prepares its questionnaires to elicit information

that it deems necessary to conduct a review, and the respondent bears the burden to respond with all of the requested information and create an adequate record.") (citing <u>Nan Ya Plastics</u>, 810 F.3d at 1337; <u>QVD Food Co. v. United States</u>, 658 F.3d 1318, 1324 (Fed. Cir. 2011)); <u>Guizhou Tyre Co. v. United States</u>, 523 F. Supp. 3d 1312, 1340 (Ct. Int'l Trade 2021) (rejecting respondent's contention that certain information was not "necessary" for the investigation because the "Court has also established that it is Commerce, not the respondent, that determines which information to include in the investigation").

Because the Department's questions are intentional and compliance is required, "a respondent must respond to the questionnaire as a whole; it may not choose what information to report based on what it thinks is relevant." <u>Id.</u> at 1222 n.24; <u>see also</u> <u>Essar Steel Ltd. v. United States</u>, 721 F. Supp. 2d 1285, 1299 (Ct. Int'l Trade 2010).  When a respondent elects to provide certain information and withhold other requested information, the Department is not required to rely on only the information deemed *by the respondent* to be relevant, let alone without consequence to the respondent.  <u>Steel Auth. of India v. United States</u>, 149 F. Supp. 2d 921, 928 (Ct. Int'l Trade 2001) ("Moreover, if the Department were forced to use the partial information submitted by respondents, interested parties would be able to manipulate the process by submitting only beneficial information.  Respondents, not the Department, would have the ultimate control to determine what information would be used for the margin calculation.  This is in direct contradiction to the policy behind the use of facts available.") (citation omitted); <u>Pro-Team Coil Nail Enter., Inc. v. United States</u>, 419 F. Supp. 3d 1319, 1339 (Ct. Int'l Trade 2019) (same); <u>Papierfabrik August Koehler S.E. v. United States</u>, 7 F. Supp. 3d 1304, 1314 (Ct. Int'l Trade 2014), <u>aff'd</u>, 843 F.3d 1373, 1379-80 (Fed. Cir. 2016) (same).

NONCONFIDENTIAL
VERSION

Here, the Department's requests were clear, yet Celik Halat on two occasions refused to "put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." Essar Steel Ltd. v. United States, 678 F.3d 1268, 1275-76 (Fed. Cir. 2012) (quoting Nippon Steel Corp. v. United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003)). Celik Halat failed to cooperate by fully responding to the Department's inquiries and providing all requested documents in its possession. That its failure to cooperate was based on an erroneous view of what information was relevant to the Department's analysis is of no moment. See Nippon Steel, 337 F.3d at 1383 ("The statutory trigger for Commerce's consideration of an adverse inference is simply a failure to cooperate to the best of respondent's ability, regardless of motivation or intent."). The Department's determination to apply partial adverse facts available concerning this issue is, therefore, supported by substantial evidence and otherwise in accordance with law.

**C.** **Celik Halat Should Not Be Rewarded, and Defendant-Intervenors Should Not Be Punished, for Celik Halat's Failure to Timely File Questionnaire Responses**

Finally, as a matter of policy, restricting the Department's authority to resort to adverse facts available under the circumstances presented here would punish Defendant-Intervenors, who represent the domestic industry that pursued and invested in this case, and that the U.S. International Trade Commission determined were injured by unfairly trade imports from Turkey and other countries. Celik Halat failed to timely file its initial questionnaire response and the Department ultimately determined that failure warranted application of total adverse facts available. Regardless of the Court's opinion concerning the Department's initial determination, Defendant-Intervenors must not be punished for Halat's failures by permitting Celik Halat to

receive a lower net subsidy rate than it would have received had it been subject to the normal examination undertaken by the Department in the original investigation.

Likewise, the "statement of administrative action on the Uruguay Round Agreements Act provides that 'the purpose of the adverse inference provision is to encourage future cooperation and ensure that a respondent does not obtain a more favorable antidumping rate by failing to cooperate.'" Hyundai Elec., 15 F.4th at 1090 (further citations omitted). Celik Halat should not be rewarded for its failure to timely file questionnaire responses – which, as discussed in section I.B., were also incomplete – by being exempt from the application of partial adverse facts available. Celik Halat should be held to the same standards as other foreign producers of subject merchandise that submitted timely responses to the Department's questionnaires.

In the Department's investigation of Common Aluminum Foil from Turkey, for example, the Department relied on partial adverse facts available concerning the respondent's and the Government of Turkey's failure to provide complete program information necessary for the Department to determine countervailability. See Issues and Decision Memorandum for the Final Determination in the Countervailing Duty Investigation of Certain Aluminum Foil from the Republic of Turkey, at Comment 4 (Sept. 6, 2021), ref'd in 86 Fed. Reg. 52,884 (Sept. 23, 2021) (final determination). There, the respondent provided the Government of Turkey only with the names of certain self-reported grants programs that the respondent believed to be countervailable, and the Government of Turkey did not provide responses for those programs despite the Department's repeated requests. Id. at 21, 23-24. As a result, the Department relied on partial adverse facts available with respect to the respondent's self-reported grants. Id. at 25. As discussed in section I.B., Celik Halat also failed to submit required information by substituting its own judgment regarding countervailability for that of the Department. Celik

Halat should be treated in the same manner as the Turkish respondent in the Aluminum Foil investigation, who submitted timely, yet incomplete, responses to the Department's questionnaires.

Celik Halat is not entitled to more deferential, less probing treatment because of the nature of the proceedings in this case. In the remand proceeding, pursuant to this Court's order, the Department accepted Celik Halat's initial Section III questionnaire response for examination. That the Department examined that response with "fresh eyes" and in the same manner as it would have had the responses been accepted during the original investigation, was appropriate and fair.

## II.   THE DEPARTMENT'S SELECTION OF THE PROGRAM-SPECIFIC AFA RATE WAS REASONABLE

In its administrative comments on the Draft Redetermination, Celik Halat asserted that the AFA rate selected for the GIIS Customs Duty Exemption Program was unreasonable because it was disproportionate to other calculated program rates and improperly designed to "push Celik Halat over the 2 percent de minimis threshold." Celik Halat Remand Comments at 13-16 (Remand PR 28). Both arguments lack merit.[6]

The Department selected the AFA rate at issue in accordance with its long-standing, well-established, and court-approved CVD AFA hierarchy. See Final Redetermination at 10-13, 48 (Remand PR 30); see also Guizhou Tyre, 523 F. Supp. 3d at 1352-54 (explaining prior court

---

[6]   Celik Halat also challenged Defendant-Intervenors' request for application of AFA in the administrative remand proceeding as "bad form." Celik Halat Remand Comments at 17 (Remand PR 28). Celik Halat's argument was misplaced, however, because Defendant-Intervenors did not seek *total* adverse facts available in this remand as Celik Halat claimed, but only partial AFA, consistent with the facts and law, as described above. See id.

approval and statutory codification of the Department's CVD AFA hierarchy, and affirming the Department's application of the hierarchy in selecting the highest non-<u>de minimis</u> rate to avoid providing a benefit to the non-cooperating respondent).  Here, because the other respondent in the original investigation did not use the GIIS Customs Duty Exemption Program, the Department went to step two of the hierarchy to apply the highest non-<u>de minimis</u> rate calculated for a cooperating respondent for the same program or, if an identical program rate was not available, a similar program in another Turkey CVD investigation.  <u>See</u> <u>Final Redetermination</u> at 11-12, 13 (Remand PR 30); <u>I&D Memo</u> at 13-14 (PR 370).  Specifically, the Department matched the GIIS Customs Duty Exemption Program to the Regional Investment Incentive Scheme ("RIIS") Tax Reduction Program.  <u>Final Redetermination</u> at 13 (Remand PR 30).  Celik Halat did not challenge the comparability of that program to the GIIS Customs Duty Exemption Program that Celik Halat used.  <u>See</u> <u>id.</u> at 48.

Further, while Celik Halat pointed generally to "unusual facts" that it claimed would warrant deviation from the hierarchy, it failed to explain how this record is unique.  <u>See</u> Celik Halat Remand Comments at 14-15 (Remand PR 28); <u>Final Redetermination</u> at 48 (Remand PR 30).  Celik Halat's alternative rate suggestions merely reflect its desire for an outcome that is beneficial to Celik Halat, despite its non-cooperation with the agency and failure to submit information that it admitted was in its possession.

Finally, Celik Halat's allegation that the Department engaged in "outcome-determinative margin-shopping" is baseless.  Celik Halat Remand Comments at 15 (Remand PR 28).  As an initial matter, Celik Halat was incorrect that the Department was targeting a two percent <u>de minimis</u> threshold.  <u>See</u> <u>id.</u> at 15-16.  The normal <u>de minimis</u> threshold in a CVD investigation is one percent, unless a subject country is a developing or least-developed country, which does not

-28-

NONCONFIDENTIAL
VERSION

apply to Turkey.   <u>Designations of Developing and Least-Developed Countries Under the</u> <u>Countervailing Duty Law</u>, 85 Fed. Reg. 7,613, 7,614, 7615-16 (USTR Feb. 10, 2020).   More importantly, as demonstrated, the selection of the AFA rate in this case was the result of a strict application of the Department's CVD AFA hierarchy.

## III.   <u>CONCLUSION</u>

For the reasons discussed above, Defendant-Intervenors urge this Court to sustain the Department's <u>Final Redetermination</u> in its entirety.

/s/ Brooke M. Ringel
KATHLEEN W. CANNON
PAUL C. ROSENTHAL
R. ALAN LUBERDA
BROOKE M. RINGEL
JOSHUA R. MOREY
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
(202) 342-8400

Counsel to Defendant-Intervenors Insteel Wire
Products Company, Sumiden Wire Products
Corporation, and Wire Mesh Corp.

May 5, 2022

**CERTIFICATE OF COMPLIANCE**
**WITH COURT OF INTERNATIONAL TRADE**
**STANDARD CHAMBERS PROCEDURES**

Pursuant to the Court of International Trade Standard Chambers procedures, counsel for Defendant-Intervenors Insteel Wire Products Company, Sumiden Wire Products Corporation, and Wire Mesh Corp. certifies that these Comments in Support of the U.S. Department of Commerce's Remand Results contain 8,586 words, including footnotes, tables, and charts. The word count certification is made in reliance on the word-count feature contained in Microsoft Word Office 2013.

/s/ Brooke M. Ringel
KATHLEEN W. CANNON
PAUL C. ROSENTHAL
R. ALAN LUBERDA
BROOKE M. RINGEL
JOSHUA R. MOREY
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
(202) 342-8400

Counsel to Defendant-Intervenors Insteel Wire
Products Company, Sumiden Wire Products
Corporation, and Wire Mesh Corp.

Dated:  May 5, 2022